# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CORPORAL TRINIDAD NAVARRO,     :

                       Plaintiff,     :       C.A. No. 05-565 GMS

                       :

            v.             :       JURY TRIAL DEMANDED

                       :

CHRISTOPHER A. COONS,         :
individually and in his official capacity;    :
GUY H. SAPP, individually and in his    :
official capacity; and NEW CASTLE    :
COUNTY, a municipal corporation,    :

                       :

               Defendants.     :

## OPENING BRIEF OF DEFENDANTS NEW CASTLE COUNTY, CHRISTOPHER A. COONS AND GUY H. SAPP IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Michele D. Allen, Assistant County Attorney (#4359)
Judith A. Hildick, First Assistant County Attorney (#3244)
Megan Sanfrancesco, First Assistant County Attorney (#3801)
New Castle County Law Department
87 Reads Way
New Castle, DE 19720
(302) 395-5130
*Attorneys for New Castle County and Christopher A. Coons and Guy H. Sapp in their Official Capacities*

Jeffrey S. Goddess, Esq.(#630)
Rosenthal, Monhait & Goddess, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899
(302) 656-4433
*Attorney for Christopher A. Coons and Guy H. Sapp in their Individual Capacities*

Dated: July 17, 2006

# TABLE OF CONTENTS

**PAGE**

Table of Contents ................................................................................................................i

Table of Citations ..............................................................................................................iii

I.   NATURE AND STAGE OF THE PROCEEDINGS ....................................................2

II.  SUMMARY OF THE ARGUMENT .............................................................................3

III. STATEMENT OF THE FACTS ....................................................................................4

       A.  The Parties.............................................................................................................4

       B.  County Promotional Process ................................................................................5

       C.  2004 Sergeant's Exam..........................................................................................5

       D.  Plaintiff's Alleged Protected Speech. ..................................................................6

           1.   Conversation with Cris Barrish...................................................................6

           2.   Conversations with Allison Taylor Levine ..................................................6

           3.   Allegiance to McAllister ..............................................................................7

       E.  Fiscal Year 2005 Budget and Available Sergeant Positions................................8

       F.  Sergeant Promotions ..........................................................................................11

IV.  ARGUMENT ...............................................................................................................11

    A.  Summary Judgment Standard ...............................................................................12

    B.  The Claims Against Coons And Sapp In Their Official Capacities Should Be Dismissed. ...............................................................................................13

    C.  Retaliation Claims Under The First Amendment ................................................13

    1.   Plaintiff did not engage in protected activity ...............................................14

        a.   Plaintiff's did not engage in protected speech during his discussion with Barrish and he did not speak to Barrish as a Citizen for First Amendment Purposes ................................................................16

b. Plaintiff did not engage in protected speech during his conversations with Levine and he did not speak to Levine as a citizen for First Amendment purposes........................................................................20

1. Plaintiff's discussion with Levine on June 26 or 27, 2005 ............................20

2. Plaintiff's discussion with Levine on June 29, 2005 ....................................21

2. Even Assuming Plaintiff's Speech Addressed A Matter Of Public Concern, He Cannot Show That It Was A Motivating Factor In Any Alleged Retaliation ....................................................................................22

a. Plaintiff cannot sustain his burden of Showing that defendants took any actions because of his conversations with Barrish and Levine, or speaking out about his allegiance to McAlliste ..................................23

3. Defendants Would Have Taken The Same Action Absent Plaintiff's Allegedly Protected Conduct ....................................................................24

D. The Section 1983 Claim Against The County Must Be Dismissed As It Seeks To Impose Liability Upon The County By Virtue Of *Respondeat Superior*..........................................................................................24

E. The Individual Defendants Are Entitled To Qualified Immunity Against Plaintiff's Retaliation Claims ..........................................................25

F. Plaintiff's Request For Punitive Damages Against The County And Defendants Coons And Sapp Must Be Dismissed................................29

V. CONCLUSION......................................................................................30

## <u>TABLE OF CITATIONS</u>

### <u>CASES</u>

*Ambrose v. Township of Robinson, Pa.,* 303 F.3d, 488, 493 (3d.Cir. 2002) ...................................24

*Anderson v. Creighton,* 483 U.S. 635 (1987) ........................................................................28

*Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986) ........................................................12

*Baldassare v. New Jersey,* 250 F.3d 188, 195 (3d Cir. 2001) .........................................14,20

*Blickling v. Kent General Hosp., Inc.*, 872 F.Supp. 1299 (D.Del. 1994) ...........................12

*Board of Cty. Commr's of Bryan County v. Brown*, 520 U.S. 397, 405 (1997) ................25

*Board of Directors of Rotary International v. Rotary Club of Durarte,* 481 U.S. 537, 544 (1987) .................................................................................................................8

*Busey v. The Board of County Commissioners of Shawnee, Kansas,* 277 F.Supp.2d 1095 (D.Kan. 2003) .......................................................................................................27

*Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986) ..........................................................12

*City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271 (1982) ...................................29

*Coleman v. Kaye,* 87 F.3d 1491, 1497 (3d Cir. 1996) .......................................................29

*Connick v. Myers,* 461 U.S. 138, 146-47 (1983) ........................................................14,19, .........................................................................................................................................26

*Correa v. Fischer,* 982 F.2d 931 (5th Cir. 1993) ...........................................................27

*Correa-Martinez v. Arrillaga-Belendez,* 903 F.2d 49 (1st Cir. 1990) ...........................27

*County Floors, Inc. v. Partnership Composed of Gepner and Ford,* 930 F.2d 1056, 1061 (3d Cir. 1991).........................................................................................................12

*Cuffeld v. Supreme Court of Pennsylvania,* 936 F.Supp.266 (E.D.Pa. 1996)...................27

*Fogarty v. Boles,* 121 F.3d 886 (3d Cir. 1997) ...............................................................18

*Garcetti v. Ceballos,*2006 WL 1458026 (U.S.) ..........................................................15,19, ...................................................................................................................................20,21, ...................................................................................................................................27, 28

*Green v. Phila. Housing Auth.,* 105 F.3d 882, 885 (3d Cir. 1997) .......................................13,18

*Harlow v. Fitzgerald,* 457 U.S. 800, 806 (1982) ...........................................................26

*Holder v. City of Allentown,* 987 F.2d 188 (3d Cir. 1993) ................................................14

*Kentucky v. Graham,* 473 U.S. 159, 165 (1985)............................................................13

*Langlois v. City of Deerfield Beach, Florida,* 370 F.Supp.2d 1233 (S.D.Fla. 2005) .......................27

*Leipziger v. Township of F alls,* 2001 WL 111611, at *9(E.D.P.a.)........................................29

*Malley v. Briggs,* 475 U.S. 335, 341 (1986) ...............................................................26

*Marchese v. Ulmstead,* 110 F.Supp.2d 361, 373 (E.D.Pa. 2000) ..........................................29

*Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986)...............................................................................................12

*McKee v. Hart,* 2006 WL27474, at *5 (3d Cir. Jan. 6, 2006).............................................26

*McKinley v. City of Eloy,* 705 F.2d 1110, 1114 (9th Cir. 1983) .........................................14,21, ...........................................................................................................22

*McLaughlin v. Watson,* 271 F.3d 566, 571 (3d Cir. 2001) ...............................................26

*Monell v.Dept. of Social Services of the City of New York,* 436 U.S. 658 (1978) ...........................13,25

*Mt. Healthy City Sch. Dist. v. Doyle,* 429 U.S. 274 (1977) ...............................................18,24

*Murray v. Gardner,* 741 F.2d 434, 438 (D.C. Cir. 1984) .................................................15

*Pickering v. Board of Educ. Of Twp. High Sch. Dist.,* 391 U.S. 563 (1968)................................14,19

*Rankin v. McPherson,* 483 U.S. 378, 384 (1987) .........................................................19

*Roberts v. United States Jaycees,* 468 U.S. 609, 619 (1984) .................................................8

*Rode v. Dellarciprete,* 845 F.2d 1995, 1204 (3d Cir. 1988) .................................................8

*Saucier v. Katz,* 533 U.S. 194, 200-01 (2001) .........................................................26,27

*Schneck v. Saucon Valley Sch.Dist.,* 340 F.Supp.2d 558, 568 (E.D.Pa. 2004)................................22,23

*Shehee v. City of Wilmington,* 67 Fed.Appx. 692, 693 (3d Cir. 2003) ......................................13

*Springer v. Henry,* 2002 WL 389136..............................................................................27

*Swineford v. Snyder County Pa.,* 15 F.3d 1258, 1270 (3d Cir. 1994) ..............................13

*Thornhill v. Alabama,* 310 U.S. 88, 102 (1940) ..............................................................15

*United States v. Treasury Employees,* 513 U.S. 454, 466 (1995)......................................19

*Waters v. Churchill,* 511 U.S. 661, 668 (1994) ...............................................................14

*Watters v. City of Philadelphia,* 55 F.3d 886, 892 (3d Cir. 1995)....................................14

## FEDERAL STATUTES

42 U.S.C. §1983...........................................................................................................2,18,24
...........................................................................................................................................29

## STATE STATUTES

9 *Del.C.* §1116 ...................................................................................................................4

9 *Del.C.* §1121 ...................................................................................................................4

## COUNTY STATUTES

N.C.C. § 2.05.201 .............................................................................................................4

N.C.C. § 26.03.501 ...........................................................................................................5

N.C.C. § 26.03.505 ...........................................................................................................5

## COUNTY ORDINANCES

New Castle County Ordinance No. 05-123 ........................................................................4

New Castle County Substitute No. 1 to Ordinance No. 05-038 ........................................8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CORPORAL TRINIDAD NAVARRO,    :
    :
       Plaintiff,    :     C.A. No. 05-565 GMS
    :
       v.    :     JURY TRIAL DEMANDED
    :
CHRISTOPHER A. COONS,    :
individually and in his official capacity;    :
GUY H. SAPP, individually and in his    :
official capacity; and NEW CASTLE    :
COUNTY, a municipal corporation,    :
    :
       Defendants.    :

## OPENING BRIEF OF DEFENDANTS NEW CASTLE COUNTY, CHRISTOPHER A. COONS AND GUY H. SAPP IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Michele D. Allen, Assistant County Attorney (#4359)
Judith A. Hildick, First Assistant County Attorney (#3244)
Megan Sanfrancesco, First Assistant County Attorney (#3801)
New Castle County Law Department
87 Reads Way
New Castle, DE 19720
(302) 395-5130
*Attorneys for New Castle County and Christopher A. Coons and Guy H. Sapp in their Official Capacities*

Jeffrey S. Goddess, Esq.(#630)
Rosenthal, Monhait & Goddess, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899
(302) 656-4433
*Attorney for Christopher A. Coons and Guy H. Sapp in their Individual Capacities*

Dated:  July 17, 2006

Pursuant to Fed. R. Civ. P. 56(c), Defendants, New Castle County (hereinafter the "County"), Christopher A. Coons (hereinafter "Coons"), and Guy H. Sapp, (hereinafter "Sapp") submit the following in support of their Motion for Summary Judgment.

## I.    NATURE AND STAGE OF THE PROCEEDINGS

This case arises under 42 U.S.C. § 1983. Plaintiff, a New Castle County police corporal, filed his Complaint on August 4, 2005, alleging First Amendment retaliation by Defendants Christopher Coons, Guy Sapp and New Castle County. Although not clearly stated in the Complaint, Plaintiff appears to contend that Defendants retaliated against him by withholding budgeted sergeant positions resulting in his failure to be promoted. Plaintiff alleges that Defendants took these steps  because he spoke out on matters of public concern including, but not limited to, his allegiance to Colonel David McAllister.[1] Through discovery, however, it has become clear that Plaintiff has no factual basis for his claim of retaliation. Therefore, Defendants move this Court to enter summary judgment in their favor and against Plaintiff on all counts of the Complaint.

---

[1] Although Plaintiff has included two separate counts in his Complaint, the causes of action alleged in these counts are the same – free speech retaliation in the form of failure to promote under 42 U.S.C. § 1983.

## II.    SUMMARY OF ARGUMENT

1.    Defendants Coons and Sapp are entitled to summary judgment because the claims against them in their official capacities are duplicative of the municipal liability claims against the County.

2.    Defendants are entitled to summary judgment because Plaintiff did not engage in activity protected by the First Amendment.

3.    Defendants are entitled to summary judgment because Plaintiff's allegedly protected speech was not a "substantial" or "motivating" factor in any of Defendants' allegedly retaliatory actions.

4.    Defendants are entitled to summary judgment because Defendants would have taken the same actions absent the allegedly protected conduct.

5.    Defendant New Castle County is entitled to summary judgment because Plaintiff cannot sustain a claim of municipal liability by virtue of *respondeat superior*.

6.    Defendants Coons and Sapp, in their individual capacities, are entitled to summary judgment based upon qualified immunity.

7.    Defendants New Castle County, and Coons and Sapp are entitled to summary judgment on Plaintiff's claims for punitive damages.

III.    **STATEMENT OF FACTS**

A.    **The Parties**

Trinidad Navarro ("Plaintiff") began his employment with the County on September 30,

1991. *Trinidad Navarro Deposition ("Navarro Depo.") 13.*[2]  He currently holds the position

of Public Information Officer ("PIO") for the County Police Department (the "Department").

He has held that position since October 28, 1998. *Navarro Depo. 15.*  As the PIO, Plaintiff's

duties and responsibilities include promoting the Police Department and protecting it from

negative press as well as informing the media of day to day operations, arrests and programs.

*Navarro Depo. 21, 44.*

Defendant Coons is the County Executive of New Castle County.  He was sworn in as

County Executive of New Castle County ("the County") and his new administration began on

January 4, 2005.  His duties are prescribed by statute, 9 *Del. C.* §1116, as well as by various

provisions of the County Code.

After a career which included service as Chief of Police for City of Wilmington Police

Department and a Directorship with the State, Defendant Sapp was appointed Director of

Public Safety for New Castle County and began employment with the County on April 18,

2005.  His duties and responsibilities are also prescribed by statute, New Castle County Code

Section 2.05.201.[3] [4]  When Sapp began his employment with the County, the Chief

Administrative Officer ("CAO")[5], David Singleton ("Singleton"), delegated, in part, his

---

[2] Trinidad Navarro deposition excerpts are found at Exhibit A.
[3] Relevant provisions of the New Castle County Code are found at Exhibit B.
[4] On November 30, 2005, County Council passed New Castle County Ordinance No. 05-123.  Exhibit C.  This ordinance established that the Police Department would be placed under the management of the Director of Public Safety.  The ordinance further provides that the Chief of Police shall be supervised by the Director of Public Safety. *Id.*
[5] The CAO's duties are prescribed by statute, 9 *Del. C.* § 1121, as well as by various provisions of the County Code.

authority and responsibilities with respect to the Department of Public Safety to Sapp.  *Guy Sapp Deposition*[6] *("Sapp Depo.") 56; David Singleton Deposition*[7] *("Singleton Depo.") 11,13.*  The CAO was to be kept apprised of significant events within Department.  *Singleton Depo. 15.*

### B.    County Promotional Process

Directive 34 of the County Police Directives provides that the Chief of Police or his or her designee shall perform the function for promotions below the rank of captain and that all promotions shall be made from certified individuals on current promotional lists.  Section 26.03.501 of the New Castle County Code provides that the filling of a vacancy requires a requisition signed by the Chief Human Resources Officer, the Chief Financial Officer and the Chief Administrative Officer.  When a personnel requisition is received, Section  § 26.03.505 provides that the Chief Human Resources Officer shall certify the top five (5) names from the promotional lists.  *Exhibit B.*  When multiple vacancies are to be filled from the same list, an additional name in rank order from the top of the list will be added. *Id.*

### C.    2004 Sergeant's Exam

Since 1996, Plaintiff has taken the sergeant's exam seven times.  *Navarro Ranking Letters.*[8]  However, only once had he scored well enough to be eligible for a promotion, and that was on the exam which was administered in the fall of 2004.  *Complaint* ¶ 8, *Navarro Depo. 185.*  The exam consisted of a written examination and an oral board interview.  *New Castle County Police Directive 34.*[9]  Each portion of the exam was weighted 47.5 percent and 5 percent was awarded based upon seniority.  *Id.*  On December 1, 2004, the results of the

---

[6] Guy Sapp deposition excerpts are found at Exhibit D.
[7] David Singleton deposition excerpts are found at Exhibit E.
[8] Letters from the New Castle County Human Resources Department regarding Plaintiff's ranking on previous Sergeant exams are found at Exhibit F.
[9] New Castle County Police Directive 34 is found at Exhibit G.

2004 Police Sergeant's Eligible List (hereinafter "the eligible list") were certified by the Chief

of Police and the Human Resources Officer. The eligible list was effective and valid for one

year. *2004 Eligible List.*[10]  Plaintiff was ranked twelfth on the eligible list. *Id.*

### D.    Plaintiff's Alleged Protected Speech

#### 1.    Conversation with Cris Barrish.

In his Complaint, Plaintiff alleges that he had a telephone conversation with Cris

Barrish, a reporter for the News Journal, on or about June 26 or 27, 2005. *Complaint* ¶ 18.[11]

Barrish made comments relative to the initials of McAllister in the federal indictment

involving former County Executive Tom Gordon and former CAO Sherry Freebery. *Id.*

Plaintiff notified McAllister of this inquiry, with the intent to advise him that the integrity of

the Police Department was being questioned. Plaintiff asserts that McAllister thereafter

notified Sapp, who, according to Plaintiff, notified Coons. *Id.*

#### 2.    Conversations with Allison Taylor Levine.

Plaintiff has also alleged that conversations he engaged in with the Director of

Communications for New Castle County, Allison Taylor Levine ("Levine"), resulted in

retaliation against him. Levine had been appointed the Director of Communications in March,

2005. *Allison Taylor Levine Deposition*[12] (*"Levine Depo"*) 17. As Director of

Communications, Levine was responsible for handling all media relations for the County as

well as coordinating a communications strategy. *Levine Depo. 20.* In connection with her

responsibilities, Levine "expected [Plaintiff], as [she] expected all of the PIO's to tell [her]

when they had interactions with the media. And [she] had requested that of [Plaintiff]

---

[10] The 2004 Police Sergeant's Eligible List is found at Exhibit H.
[11] The Complaint is located at D.I. 1.
[12] Allison Taylor Levine deposition excerpts are found at Exhibit I.

individually and as part of the group of PIO's, both verbally in person, and in writing." *Levine*

*Depo 35*.

Specifically, Plaintiff has alleged that on or about June 26 and/or 27, 2005, he received a

telephone call from Levine in which she angrily inquired about the telephone call from Barrish,

inquired about an upcoming *Delaware Today* article featuring Dave McAllister and reminded

Plaintiff that he was to advise her of all media communications relating to the Freebery/Gordon

indictment. *Complaint* ¶¶19, 20. During this conversation, Plaintiff alleges that he advised

Levine that he would not disparage McAllister or assist in ruining his reputation. Plaintiff has

also alleged that at a personal meeting with Levine on June 29, 2005, she informed Plaintiff that

he was perceived as being a person who could not be trusted due to his allegiance to McAllister.

*Complaint* ¶21. Further, at his deposition, Plaintiff stated:

> Now, with regard to Allison Levine, on several occasions, we had contact either
> in person or by phone, where we discussed the fact that the administration didn't
> like me. She asked me to notify her about certain inquiries from the media. She
> asked me to notify her about incidents or events of interest that would generate
> media attention. I indicated -- she also asked me to let her and/or the
> administration know if -- what Colonel McAllister was planning with regard to --
> and an example was the Delaware Today article, and I didn't tell her about that.
> And she indicated that it was my duty or my obligation to tell her about media
> inquiries. I told her that I could not in good conscience tell her things that would
> jeopardize my boss' position. As a PIO or a spokesperson for the Police
> Department, m y p rimary c oncern i s t he i ntegrity o f t he P olice Department a nd
> protection of the reputation of the Police Department. Allison and I had had
> several conversations with regard to that. She indicated her displeasure with me
> for not forwarding that information to her.

*Navarro Depo.* at 9-10.

### 3.    Allegiance to McAllister

In his Complaint, Plaintiff alleges that he was retaliated against due to speaking out

about his allegiance to David McAllister ("McAllister"). *Complaint* ¶ 31. However, the

Complaint does not address any discussions he had with anyone regarding his "allegiance" to

McAllister, except that he told Levine that he would not do anything to assist her or the administration to ruin McAllister's reputation. *Complaint* ¶ 20.[13]   Neither Levine or anyone in the Coons Administration asked plaintiff to do anything to ruin McAllister's reputation. *Navarro Depo.* at 114.

### E.    Fiscal Year 2005 Budget and Available Sergeant Positions

In Fiscal Year 2005, running from July 1, 2004 until June 30, 2005, there were 36 recommended sergeant positions. *Sapp Depo. 44.*  In December 2004, McAllister promoted four people to the rank of sergeant for a total of 36 Sergeants, just prior to the changing of County administrations. *New Castle County Position Requisition Forms.*[14]  Additionally, McAllister traded in police officer positions in order to overpromote two sergeant positions, which were also filled in December. *Sapp Depo. 44, 45; David McAllister Deposition ("McAllister Depo")* 70.[15]  McAllister was able to do that because under the County system, the number of sergeant positions or any other ranked positions may be changed based upon staffing needs of the Department at any time without the approval of County Council ("Council") as long as the funds to pay for all positions are within the Department's budget. *Sapp Depo. 44.*  Council, in adopting the budget, does not actually approve a specific number of positions, in any rank; rather, Council adopts an operating budget with a total number of authorized positions and a line item amount for salaries and wages. *Singleton Depo. 54; New*

---

[13] Although not stated in the Complaint, to the extent that Plaintiff claims that Defendants violated his right to freedom of association in connection with his relationship with McAllister, this claim must fail. "[T]he Constitution protects against unjustified government interference with an individual's choice to enter into and maintain certain intimate or private relationships [as well as an] individuals choice to associate for the purpose of engaging in protected speech or religious activities." *Board of Directors of Rotary International v. Rotary Club of Durarte*, 481 U.S. 537, 544 (1987). Plaintiff fails to assert any facts or present any evidence regarding his relationship with McAllister sufficient to invoke constitutional protection under this standard. *See Rode v. Dellarciprete*, 845 F.2d 1995, 1204 (3d Cir. 1988)(*citing Roberts v. United States Jaycees*, 468 U.S. 609, 619 (1984)(finding that intimate human relations types of association are exemplified by familial relations, including marriage, raising children and educating children and cohabiting with one's relatives)).
[14] All New Castle County Requisition Forms for promotions to sergeant are found at Exhibit J.
[15] David McAllister deposition excerpts are found at Exhibit K.

*Castle County substitute No. 1 to Ordinance No. 05-038.*[16]  Therefore, the number of

positions in any rank is not something voted on by Council and does not become part of the

Annual Operating Budget for New Castle County.  *Id.*  Moreover, the only fiscal control is

that designated by the County Code.  *See Section B, supra.*

For the next fiscal year (FY 2006, which began July 1, 2005) 38 sergeant positions had

been recommended in the budget.  However, the need for two additional sergeants was

questionable based on the fact that the budget had reduced the number of patrol officers.

*Singleton Depo. 53, 54*; *Sapp Depo. 45*.  Hence, it was unclear how many sergeant positions

the new Administration was going to fill.  Therefore on May 3, 2005, Detective John

Treadwell, Detective L. Rob Joseph, Officer Patricia Davies, Detective Joseph Trala,

Corporal Trinidad Navarro, and Officer Wendi Feeser, all of whom would have been eligible

for promotion if the two additional sergeant requisitions were released, sent a memorandum to

the Fraternal Order of Police (FOP) seeking assistance in determining the number of sergeant

promotional opportunities.  *May 3, 2005 Memorandum to Fraternal Order of Police*

*("FOP")*[17]; *Navarro Depo. 235*.  As a result of the memo, a meeting was scheduled between

the requesting officers, the President of the FOP, Marge Ellwein ("Ellwein"), McAllister, and

Sapp on May 16, 2005.  At the meeting, Sapp who had only been on the job a month,

communicated his belief that there was one opening in the Fiscal Year 2005 budget and two

openings in the Fiscal Year 2006 budget. *Sapp Depo. 46*.  However, there was concern about

making any promotions due to a $500,000 deficit in the police budget, as well as concern for

the authorized strength within each of the ranks in the Department.  *Sapp Depo. 45, 52*.

During the meeting, McAllister stated and Sapp concurred that they intended to promote three

---

[16] New Castle County Sub. No. 1 to Ord. No. 05-038 is found at Exhibit L.
[17] The May 3, 2005 memorandum to the FOP is found at Exhibit M.

sergeants in Fiscal Year 2006. *Sapp Depo. 46, 47.* The FOP President, Ellwein, memorialized the meeting in a memo to McAllister dated May 20, 2005. *May 20, 2005 Memo from FOP to McAllister.*[18]

After the May 16, 2005 meeting, Sapp continued to hear from both internal and external sources that the need in the Police Department was for patrol officers rather than supervisors. *Sapp Depo. 45.* The general populace and senior County officials had also expressed concern about the need for patrol officers. *Christopher Coons Deposition ("Coons Depo.") 21.*[19] Sapp had also talked with Singleton about this need during the first two to three months of his tenure. *Sapp Depo. 45.* Additionally, a study was commissioned to analyze, among other things, the authorized strength of the Department and the strength within each of the ranks of the Department. *Sapp Depo. 45.* Moreover, the FOP questioned the need for the two additional sergeant positions in their May 20, 2005 memorandum. *Exhibit N.* The FOP suggested that the one vacant sergeant position be filled for a total of 36 sergeants and then determine the level of service being provided and whether or not there is a need for additional sergeants. *Id.* In light of all this information, Sapp's original intention regarding sergeant staffing began to change. *Sapp Depo. 47.* On June 27, 2005, McAllister sent a memo to Sapp requesting that three requisitions be released for sergeant positions. *June 27, 2005 McAllister Memorandum.*[20] In response to this request, Sapp met with Singleton on June 29, 2005, to discuss whether or not additional requisitions for sergeant should be released. *Sapp Depo. 49.* During the meeting, Sapp recommended to Singleton that the requisitions not be released because there was a greater need for patrol officers on the street than additional supervisory sergeant positions and Singleton concurred with his recommendation. *Sapp*

---

[18] The May 20, 2005 McAllister Memorandum is found at Exhibit N.
[19] Christopher Coons Deposition excerpts are found at Exhibit O.
[20] The June 27, 2005 Memorandum regarding Position Requisitions is found at Exhibit P.

*Depo. 47, 50.* Later that day, Sapp sent a memo stating that the staffing requirements of the Police Department had been reviewed, and it was determined that the need to maintain patrol strength was more critical than the need for sergeants, and that therefore, the two requisitions for the sergeants positions would not be released. *June 29, 2005 Sapp Memorandum.*[21]  At the time this decision was made and the memorandum was authored, Sapp was unaware that Plaintiff was eligible to be promoted. *Sapp Depo. 40-41.* Additionally, Coons was not involved in this decision. *Coons Depo. 32, 45-46.*

**F.     Sergeant Promotions**

On August 2, 2005, when one requisition was released McAllister promoted John Treadwell ("Treadwell") to sergeant. Treadwell is an African-American male who was ranked second on the eligible list. *McAllister Depo. 28-29; Exhibits H, J.* At the time of this promotion, Plaintiff was not eligible to be promoted because he was not ranked high enough on the eligible list. *Exhibit H.* Early in Sapp's tenure, he recalls McAllister telling him he intended to promote an African-American, a Hispanic and a female. However, McAllister did not specifically indicate these individuals by name.[22]  *Sapp Depo. 42.*

---

[21] The June 29, 2005 Sapp Memorandum is found at Exhibit Q.
[22] McAllister testified that he told Sapp the names of the individuals he wanted to promote. *McAllister Depo. 26.*

## IV.    **ARGUMENT**

### A.    **Summary Judgment Standard**

Summary judgment should be entered for the County, Coons and Sapp because all material facts have been presented, there is no genuine issue as to any material fact, and they are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986).

On a motion for summary judgment, "the moving party bears the initial burden of showing – that is, point out to the court that there is an absence of evidence to support the non-moving party's case."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  "The moving party is not required to negate the non-movant's claim, but instead must only point out the lack of evidence supporting the non-movant's claim." *County Floors, Inc. v. Partnership Composed of Gepner and Ford,* 930 F.2d 1056, 1061 (3d Cir. 1991); *Blickling v. Kent General Hosp., Inc.,* 872 F. Supp. 1299 (D.Del. 1994).

Once the moving party meets their burden, the non-moving party "may not rest upon the mere allegations or denials of his pleading." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).  The non-moving party instead "must set forth specific facts showing that there is a genuine issue for trial." *Matsushita,* 475 U.S. at 587.  Factual disputes that are irrelevant or unnecessary will not be counted. *Anderson,* 477 U.S. at 248.  The mere existence of a scintilla of evidence in support of the non-moving party will not prevent the grant of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-moving party on that issue. *Id.* at 249.  Mere speculation or conjecture by the non-moving party clearly cannot preclude the granting of summary judgment.

For the reasons set forth herein, when viewed in the light most favorable to the plaintiff, the undisputed facts establish that New Castle County, Coons and Sapp are entitled to summary judgment.

**B.     The Claims Against Coons And Sapp In Their Official Capacities Should Be Dismissed**

As an initial matter, Plaintiff has brought suit against Defendants Coons and Sapp in their individual and official capacities. The official capacity claims against these Defendants are duplicative of the municipal liability claims asserted against the County, as suits against government officials in their official capacities are equivalent to suits against the government entity itself. *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 690 n. 55 (1978). *See also Kentucky v. Graham*, 473 U.S. 159, 165 (1985)("official capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent."). Therefore, the allegations against Defendants Coons and Sapp in their official capacities should be dismissed.

**C.     Retaliation Claims Under The First Amendment**

A claim of First Amendment retaliation "is analyzed under a three-step process." *Green v. Phila. Housing Auth.*, 105 F.3d 882, 885 (3d Cir. 1997) (*citations omitted*). First, Plaintiff must demonstrate that he engaged in protected activity, *i.e.*, exercised his constitutional right to free speech. *Shehee v. City of Wilmington*, 67 Fed. Appx. 692, 693 (3d Cir. 2003). Second, he "must show the protected activity was a substantial or motivating factor in the alleged retaliatory action." *Green*, 105 F.3d at 885 (*citing Swineford v. Snyder County Pa.*, 15 F.3d 1258, 1270 (3d Cir. 1994)). Lastly, Defendants may defeat Plaintiff's claims "by showing that the same actions would have been taken even absent the protected conduct." *Shehee*, 67 Fed. Appx. at 693-94.

1.    **Plaintiff did not Engage in Protected Activity**

Speech is a protected activity only if it relates to a matter of public concern.[23] *Connick v. Myers*, 461 U.S. 138, 146–47 (1983) (holding that a matter of public concern is "any matter of political, social or other concern to the community"); *Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001). The determination of whether speech addresses a matter of public concern is an issue for the Court to decide. *See Waters v. Churchill*, 511 U.S. 661, 668 (1994). The *Connick* Court emphasized that courts should look at the "content, form, and context of a given statement, as revealed by the whole record" to determine whether a public employee's speech constitutes a matter of public concern. *Connick* at 147-149. In *Holder v. City of Allentown*, 987 F.2d 188 (3d Cir.1993), the Third Circuit explained:

> The content of the speech may help to characterize it as relating to a matter of social or political concern of the community if, for example, the speaker seeks to 'bring to light actual or potential wrongdoing or breach of public trust' on the part of government officials. The form and context of the speech may help to characterize it as relating to a matter of social or political concern to the community if, for example, the forum where the speech activity takes place is not confined merely to the public office where the speaker is employed.

*Id.* at 195 (citations omitted).

"Speech by public employees may be characterized as not of 'public concern' when it is clear that such speech deals with individual personnel disputes and grievances and that the information would be of no relevance to the public's evaluation of the performance of governmental agencies." *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir.1983).

---

[23] To qualify as a protected activity, Plaintiff's speech must also satisfy the *Pickering* balancing test. *Green*, 105 F.3d at 885 (*citing Pickering*, 391 U.S. at 568). Thus, the speech must address a matter of public concern. *Id.* (*citing Watters*, 55 F.3d at 892). Also, the public interest favoring Plaintiff's expression "must not be outweighed by any injury the speech could cause to the interest of the [County] as an employer in promoting the efficiency of the public services it performs through its employees." *Id.* Defendants contend that plaintiff's speech did not play any role in any actions they may have taken.

However, "speech that concerns 'issues about which information is needed or appropriate to enable the members of society' to make informed decisions about the operation of their government merits the highest degree of first amendment protection." *Id.* (citing *Thornhill v. Alabama*, 310 U.S. 88, 102 (1940)(*footnote omitted*)). *See also Murray v. Gardner*, 741 F.2d 434, 438 (D.C. Cir. 1984). "In other words, the role of the whistle-blower merits protection; the expressions of personal dissatisfaction by a discontented employee do not." *Murray*, 741 F.2d at 438.

Another aspect of this test requires analysis of the role of the person engaging in the protected speech. In *Garcetti v. Ceballos*, 2006 WL 1458026 (U.S.), the Supreme Court clarified that the First Amendment does not protect public employees with respect to statements made pursuant to their official duties.[24] *Id.* at *21. The plaintiff in *Garcetti* was a deputy district attorney whose responsibility it was to review affidavits used by prosecutors to obtain search warrants. *See id.* at *20-21. In performing this responsibility the plaintiff reviewed a search warrant, found what he felt were "serious misrepresentations" in it, and recommended dismissal of the prosecution. *See id.* at *8. After the criminal defendant unsuccessfully attempted to have the case against him dismissed based upon the plaintiff's testimony in opposition to the warrant, the plaintiff claimed that his superiors subjected him to a "series of retaliatory employment actions," including a reassignment, transfer, and denial of a promotion. *See id.* at *9-10. The Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communication from employer discipline." *See id.* at *21.

In the instant case, Plaintiff has asserted that he engaged in protected speech in connection with a communication he had with a reporter from the News Journal, in

_____

[24] All unreported opinions are attached hereto as Exhibit R.

conversations he had with the Director of Communications for New Castle County, and his conversations regarding his allegiance to McAllister.

> **a.** **Plaintiff did not engage in protected speech during his discussion with Barrish and he did not speak to Barrish as a citizen for First Amendment purposes.**

Plaintiff alleges that on June 26 or 27, 2005, he received a telephone call from News Journal Reporter Barrish, on his office phone at the police department. *Complaint* ¶ 18, *Plaintiff's Interrogatory Response #9.*[25] Plaintiff alleges that Barrish contacted him regarding the alleged initials of McAllister referred to in the federal indictment involving former County Executive Tom Gordon and former Chief Administrative Officer Sherry Freebery. *Complaint* ¶ 18. At the conclusion of this five-minute conversation, Plaintiff alleges that he notified McAllister of the inquiry from Barrish, with the intention to advise McAllister that the integrity of the Police Department and NCC was being questioned. *Complaint* ¶ 18, *Exhibit S.* Plaintiff alleges that McAllister thereafter notified Sapp, who, based upon Navarro's belief, notified Coons. *Complaint* ¶ 18.

In his Complaint, Plaintiff appears to assert that he engaged in protected speech with Barrish, and that this speech was somehow connected with not receiving the promotion to sergeant. *Complaint* ¶ 18, 31. Plaintiff reiterated this assertion at his deposition. *Navarro Depo.* 119. When the attorney for the County asked Plaintiff to elaborate on his conversation with Barrish at his deposition, Plaintiff said the following:

> Q.    Can you tell me what he [Barrish] said?
>
> A.    Well, my best recollection of what he said was he had had information that confirmed that the initials in the document, DM, were in fact Dave McAllister and that he was going to author a story to say that, in effect.
>
> Q.    Did he ask you for confirmation of that?

---

[25] Plaintiff's Interrogatory Responses are found at Exhibit S.

A.    No.

Q.    Was he just giving you a heads up?

A.    No.  Cris is a savvy reporter who has been around for a long time, who will try to make friends with you and then obtain information from you sort of off the record and -- well, I know better than to go off the record with Cris Barrish.  We had a conversation.  The way Cris talks is sort of whispering, hey, you know, what can you tell me about this, what can you tell me about that.  I didn't answer any questions with regard to the investigation.  He asked about the initials.  After answering and then telling him I couldn't help him, I told the chief of police.

Q.    What did you tell –you said you gave no response to the questions about the investigation?

A.    Yes.

Q.    So, essentially, you gave him no answers?

A.    No, I don't believe so.

Q.    When he asked whether or not the initials were DM, did you consider that a matter of public concern?

A.    Sure.

Q.    How so?

A.    Well, the DM is the chief of police.  He's the big toe for the Police Department. He's the face of the Police Department.  Anyone who would try to discredit himself or the Police Department without proof, I believe is a public concern.

*Navarro Depo.* 117-119.

Plaintiff claims that this conversation was a matter of public concern because of McAllister's position within the Police Department, and that anyone who would try to discredit McAllister or the police department without proof  is a public concern.  *Navarro Depo.* 119. Determination of whether Plaintiff's speech addressed a matter of public concern requires the court to examine whether it relates to any matter of political, social, or other concern to the

17

community.  *Green*, 105 F.3d at 885-86 (*quoting Connick*, 461 U.S. at 146).  However, an

examination of the record reveals that Plaintiff did not engage in any protected speech.

     *Fogarty v. Boles*, 121 F.3d 886 (3d. Cir. 1997), addressed a claim that a public school

teacher was punished because the school principal erroneously believed that the teacher had

contacted the press about a matter of public interest at the school.  *See id.* at 887.  The teacher

denied contacting or even attempting to contact the press.  *Id.*  The Court found that because the

teacher did not engage in any speech, that his First Amendment retaliation claim must fail.  *Id.*

In arriving at this decision, the court noted the Supreme Court's holding in *Mt. Healthy City Sch.*

*Dist. v. Doyle*, 429 U.S. 274 (1977) that a plaintiff alleging retaliation based upon the exercise of

First Amendment rights bears the burden of showing, among other things, "'that his conduct was

constitutionally protected.'"  *Id.* at 890 (*quoting Mt. Healthy*, 429 U.S. at 287).  The Court noted

that the teacher could not "sustain that burden of proof because there was no conduct that was

constitutionally protected – indeed, there was no conduct – period."  *Id.*  The instant case is

analogous to *Fogarty* because Plaintiff's own deposition testimony reveals that he did not do or

say *anything* to Barrish  that would constitute speech that is protected by the First Amendment.

Simply talking with Barrish or telling him that he would not answer his questions does not

amount to protected speech.  "The First Amendment does not protect a public employee's right

to talk to the press; rather, it protects the public employee's right to speak on matters of public

concern."  *Fogarty v. Boyles*, 938 F. Supp. 292, 299 (E.D. Pa. 1996).  In the absence of any

speech protected by the First Amendment, Plaintiff has failed to establish a genuine issue of

material fact that he sustained a constitutional violation cognizable under § 1983.  As such, this

claim must fail.

Plaintiff's claim also fails under the standard set forth in *Garcetti* because he was not speaking as a citizen for First Amendment purposes during his conversation with Barrish.  The *Garcetti* court noted that "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."  *Garcetti*, 2006 WL 1458026 at *5 (*citing Pickering*, 391 U.S. at 568; *Connick, supra*, at 147; *Rankin v. McPherson*, 483 U.S. 378, 384 (1987); *United States v. Treasury Employees*, 513 U.S. 454, 466 (1995)).  However, the court also noted that *Pickering* and cases decided since that decision identified two inquiries to interpret the constitutional protections given to public employee speech. *Id.*  The first threshold determination is whether the plaintiff employee was speaking as a citizen on a matter of public concern.  *Id.* (*citing Pickering*, 391 U.S. at 568).  If not, the employee has no First Amendment  cause of action based on his or her employer's reaction to the speech.  *Id.* (*citing Connick*, 461 U.S. at 147).  If the answer is yes, however, then a First Amendment claim is possible.  *Id.*

Even assuming *arguendo* that Defendants knew about and somehow reacted to Plaintiff's "speech" with Barrish, they were permitted to do so because any expressions set forth during that conversation would have been made pursuant to his job duties as the police department's PIO.  "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at  *8.  Plaintiff was not acting as a citizen for First Amendment purposes when he fielded the media inquiry from Barrish.  Rather, he acted as a County employee. *Navarro Depo.* 21, 44.  Therefore, in accordance with *Garcetti*, Plaintiff has no First Amendment cause of action.

**b. Plaintiff did not engage in protected speech during his conversations with Levine and he did not speak to Levine as a citizen for First Amendment purposes.**

Similarly, Plaintiff has alleged that conversations he engaged in with the Director of Communications for New Castle County, Allison Taylor Levine, were protected speech under the First Amendment and that, as a result of these conversations, he was discriminated against and denied a promotion. *Complaint* ¶¶ 19-25, 31; *Navarro Depo.* at 8. Specifically, Plaintiff identified two particular conversations upon which he based his lawsuit: a telephone conversation with Levine on June 26 or 27, 2005 and a face-to-face meeting on June 29, 2005.

### 1) Plaintiff's discussion with Levine on June 26 or 27, 2005

Plaintiff alleges that he was retaliated against when he spoke out about issues of public concern under the First Amendment such as his "allegiance to McAllister." *Complaint* ¶ 31. Plaintiff also alleges that Defendants Coons and Sapp were aware of Plaintiff's speech, and that they withheld the already budgeted sergeant positions because of it. *Complaint* ¶ 34. The only reference in the Complaint (or in the record for that matter) regarding what can be characterized as Plaintiff's allegiance to McAllister is the June 26 or 27, 2005 conversation between Plaintiff and Levine, wherein he told Levine that he would not do anything to assist her or the administration to ruin McAllister's reputation. *Complaint* ¶ 20. Even assuming that Plaintiff in fact made this statement to Levine, it does not address a matter of public concern. This comment does not address a matter of political, social or other concern to the community. *See Baldassare,* 250 F.3d at 195. Instead, it addresses Plaintiff's personal dissatisfaction about possibly influencing McAllister's reputation and has no relevance to the public's evaluation of the

County's performance as a governmental agency.   *See McKinley*, 705 F.2d at 1114.  As a consequence, this expression does not warrant First Amendment protection.

Additionally, during the same conversation Plaintiff alleges that Levine angrily inquired about the telephone call from Barrish, inquired about an upcoming *Delaware Today* article featuring Dave McAllister and reminded Plaintiff that he was to advise her of all media communications relating to the Freebery/Gordon indictment.  *Complaint* ¶¶19, 20.  As stated above, *Garcetti* reaffirmed the principle that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communication from employer discipline." *Garcetti* at *7.  In the conversation between Plaintiff and Levine, it is patently clear that Plaintiff spoke in his capacity as Public Information Officer for the New Castle County Department of Public Safety to Levine as the Director of Communications for New Castle County.  The controlling factor in this case, as in *Garcetti,* is that Plaintiff made his expressions relative to his responsibilities as PIO.  Assuming *arguendo* that any action was taken against Plaintiff for his speech, "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id.*  Under *Garcetti*, the Plaintiff was not speaking as a citizen when he made his allegedly protected statements, but rather as the PIO.  There is no evidence to the contrary.  Accordingly, these expressions do not merit First Amendment protection.

### 2.     **Plaintiff's discussion with Levine on June 29, 2005.**

Plaintiff has also alleged that at a personal meeting with Levine on June 29, 2005, Levine informed Plaintiff that he was perceived as being a person who could not be trusted due to his

allegiance to McAllister. *Complaint* ¶ 21. Also at that meeting, Plaintiff alleges that he told Levine that he was "tired of the politics associated with his position" and that he wanted "out" of the PIO position. *Complaint* ¶ 22. At that time, Levine allegedly suggested that Plaintiff seek a job transfer and Plaintiff interpreted this statement to mean that he should "get away from McAllister and be loyal to Coons." *Complaint* ¶ 22. Again, it is clear that this speech between Plaintiff and Levine dealt with an individual personnel dispute and that any such information would be of no relevance to the public's evaluation of the performance of New Castle County as a governmental agency. *See McKinley*, 705 F.2d at 1114. Furthermore, there is no evidence in the record which supports plaintiff's allegation that the statements made by Levine were attributable to Coons. In fact, Plaintiff stated at his deposition that it was only his opinion that the comments were attributable to Coons. *Navarro Depo.* at 113-114. Moreover, Levine denies that any statements she made came from Coons. *Navarro Depo.* at 114. Once again, Plaintiff has failed to support a claim for First Amendment protection.

### 2. Even Assuming Plaintiff's Speech Addressed A Matter of Public Concern, He Cannot Show That It Was A Motivating Factor In Any Alleged Retaliation

To get beyond the summary judgment stage, Plaintiff must produce enough evidence for a reasonable jury to conclude that his speech, to the extent it is protected under the First Amendment, was a motivating factor in the decision not to authorize requisitions that would increase the number of sergeant positions to 38. Even if the Court were to find that Plaintiff engaged in protected activity, a determination of whether that protected activity was a substantial or motivating factor in the alleged retaliatory action involves "two distinct inquiries: 'did the defendants take an action adverse to the public employee, and, if so, was the motivation for the action to retaliate against the employee for the protected activity.'" *Schneck v. Saucon Valley*

*Sch. Dist.*, 340 F. Supp. 2d 558, 568 (E.D. Pa. 2004)(*citation omitted*).  Assuming for summary judgment purposes that Plaintiff not getting promoted to sergeant as a result of Sapp's decision regarding the requisitions for sergeant constitutes an adverse employment action, Plaintiff nevertheless cannot show that Defendants acted because of anything Plaintiff said to Barrish or Levine or because he spoke out about his allegiance to McAllister.

> **a.    Plaintiff cannot sustain his burden of showing that Defendants took any actions because of his conversations with Barrish and Levine, or speaking out about his allegiance to McAllister.**

There is no evidence of any retaliatory animus on the part of Defendants underlying the decision not to authorize requisitions that would increase the number of sergeant positions to 38. It should be noted that Plaintiff does not allege, nor does the evidence support, any inference that Coons took *any* actions with respect to Plaintiff, the requisition process, or his promotion, aside from his unsubstantiated claims that the statements by Levine were in fact made by Coons.

With respect to Defendant Sapp, Plaintiff appears to allege that Sapp decided not to recommend the at-issue requisitions because of his protected activities.  However, Plaintiff's activities are not protected under the First Amendment in the first place.  Even if they were, there is no evidence in the record that Sapp's recommendation regarding the requisitions was influenced by anything other than his concern for the budget in terms of the operating deficit, as well as the need for more patrol officers on the street versus the need for supervisors.

Similarly, even if Navarro's statement to Levine regarding his allegiance to McAllister was found to constitute speech protected by the First Amendment, there is no evidence, beyond his conclusory allegations, that Levine shared this statement with Coons or Sapp, or that Sapp acted to "withhold" the sergeant positions in the budget because of this statement, as opposed to other concerns.  "[F]or protected conduct to be a substantial or motivating factor in a decision,

the decisionmakers must be aware of the protected conduct." *Ambrose v. Township of Robinson, Pa.*, 303 F.3d 488, 493 (3d. Cir. 2002). Therefore, this claim must fail.

### 3.    Defendants would have taken the same action absent Plaintiff's allegedly protected conduct.

Summary judgment may be granted to Defendants if they can show "by a preponderance of the evidence that [they] would have reached the same decision even in the absence of the [alleged] protected conduct." *Mt. Healthy*, 429 U.S. at 287. In this case, the number of sergeant positions would still remain at 36 regardless of Plaintiff's speech, protected or not, to Barrish or Levine, or his speech in favor of McAllister. Sapp and Singleton determined after serious consideration and evaluation of staffing needs and budget deficits, that there was a greater need for patrol strength rather than supervisors and therefore they would not release the requisitions for the two additional sergeant positions in the 2006 fiscal year. *Sapp Depo. 45-50, Coons Depo. 20, 21; Levine Depo.*, 78-79.[26] At the time the decision was made, Sapp did not even know that Plaintiff was eligible to be promoted, and Coons was not involved in such decisions. *Sapp Depo. 40-41, Coons Depo. 45-46.* Sapp's recommendation was entirely consistent with those expected from public servants and no reasonable juror could find otherwise. He made the recommendation while taking into consideration the needs of the Police Department in terms of patrol strength – a decision which would in turn affect the entire County.

### D.    The Section 1983 Claim Against The County Must Be Dismissed As It Seeks To Impose Liability Upon The County By Virtue Of *Respondeat Superior.*

Plaintiff's Complaint alleges that the County should be liable under 42 U.S.C. § 1983 for the alleged constitutional torts of its employees, Coons and Sapp. (*See generally Complaint*) In fact, when describing the parties, Plaintiff simply refers to the County's municipal status and its

---

[26] The police budget for fiscal year 2007, which runs from July 1, 2006 until June 30, 2007, reduces the number of sergeant positions back down to 36  to appropriately reflect staffing needs for sergeants.

ability to be served, whereas he alleges that Coons and Sapp are being sued because of their retaliatory actions against him. *Complaint* ¶ 2-4.

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State. . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

42 U.S.C. § 1983.  A municipality such as New Castle County, however, cannot be held liable under § 1983 on *respondeat superior* theories for the alleged unconstitutional acts of its employees. *See Monell*, 436 U.S. at 694.  Rather, a municipality can only be held responsible when an official policy or custom of the municipality itself, whether made by lawmakers or those whose acts can fairly be said to represent official policy, causes a Plaintiff's injury. *Id.*  The Supreme Court has reaffirmed that "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of the employee." *Board of Cty. Commr's of Bryan County v. Brown*, 520 U.S. 397, 405 (1997).

Plaintiff simply asserts that Defendants refused to promote Plaintiff to sergeant and that this action caused him injury. *See Complaint generally* and ¶ 35-36, 43, 45.  Plaintiff has not alleged, nor does the record indicate, any evidence of any official County policy or custom that caused any injury to Plaintiff.  Without more, the County cannot be liable.

## E.     The Individual Defendants Are Entitled To Qualified Immunity Against Plaintiff's Retaliation Claims.

Even if the actions taken by Coons and Sapp could be found to be retaliatory against Plaintiff, Defendants are entitled to the defense of qualified immunity for governmental officials. (Fifth Affirmative Defense; D.I. 6.)

As the Supreme Court remarked in its early decisions when crafting the doctrine, the purpose of the qualified immunity defense is to provide government officials "some degree of immunity to avoid unacceptable interference with their duties and the hindrances possibly associated with threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). Qualified immunity provides protection to all but the plainly incompetent or those who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). As most recently enunciated by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001), there is a two-part test for qualified immunity. First, a court must determine whether the facts, when taken in a light most favorable to the plaintiff, are sufficient to show that the individual defendant violated a constitutional right; second, even if a constitutional violation can be made out, nonetheless the immunity still protects individual defendants unless the right allegedly violated was "clearly established" at the time the defendant acted, such that a reasonable official would have known it. *Id.* A right is "clearly established" if its "contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *McKee v. Hart*, 2006 WL 27474, at *5 (3d Cir. Jan. 6, 2006) (quoting *McLaughlin v. Watson*, 271 F.3d 566, 571 (3d Cir. 2001)). In other words "there must be sufficient precedent at the time of the action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited." *Id.* (citation omitted).

Plaintiff's claim fails the first part of the *Saucier* test. As discussed *supra*, the Plaintiff has neither pled nor developed a *prima facie* case that the individual defendants violated his constitutional rights. To briefly review, Plaintiff fails under *Garcetti* and *Connick* to demonstrate 1) that he engaged in public speech, insofar as the speech that forms the basis of Plaintiff's retaliation allegations was made pursuant to his official duties as PIO or 2) that his

speech, protected or otherwise, was a substantial motivating factor in any alleged retaliatory actions.[27]

The record here concerning the non-public nature of Plaintiff's comments is quite in contrast to the public criticism authored and disseminated by the plaintiff physician in *Springer v. Henry*, 2002 WL 389136 (D.Del.), a decision by this Court, reiterated following trial, 2004 WL 2127172 (D.Del.) and affirmed on appeal at 435 F.3d 268 (3d Cir. 2006). Also, in *Springer* there was a *prima facie* record demonstrating retaliation against the plaintiff there, which record is not present here. Here, the threshold question, or test for piercing qualified immunity has not been met and, for that reason alone, the claims against the individual defendants should be dismissed at this stage.

However, assuming *arguendo* that the Plaintiff did present a *prima facie* claim under prong one of *Saucier* against Coons and Sapp, qualified immunity must still be granted based upon prong two of *Saucier*, which requires that the actions of the individual defendants must have violated a "<u>clearly established</u>" constitutional right of the Plaintiff. In the instant case, there was insufficient precedent at the time of the alleged retaliatory actions by Coons and Sapp to put

---

[27] Again, Plaintiff has not pled nor adduced evidence that would support a claim for violation of his freedom of association. Indeed, various courts have dismissed such claims on summary judgment finding the absence of protected activity. *See Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49 (1st Cir. 1990)(Court dismissed attempted First Amendment claim by a judicial administrative officer asserting constructive discharge due to association with a former judge with whom defendants had personal and political differences noting that absence of constitutionally protected 'close relationship' with third party was insufficient to invoke protection); *Correa v. Fischer*, 982 F.2d 931 (5th Cir. 1993)(Court upheld newly installed county attorney's discharge of predecessor's office staff and dismissed plaintiff's First Amendment claim finding that First Amendment did not protect a personal rival, as opposed to employee loyalty toward political party, candidate, or belief); *Busey v. The Board of County Commissioners of Shawnee, Kansas*, 277 F.Supp.2d 1095 (D.Kan. 2003)(Court dismissed First Amendment claim by former deputy sheriff claiming constructive discharge due to perceived political loyalty to recently-ousted sheriff finding that claimed association with a predecessor did not give rise to First Amendment claim); *Langlois v. City of Deerfield Beach, Florida*, 370 F.Supp.2d 1233 (S.D.Fla. 2005)(Court dismissed firefighter's First Amendment retaliation claim based on critical comments of superiors made at a union meeting finding that statements were made pursuant to his status as Fire Department employee and merely addressed circumstances of his own employment); *Cuffeld v. Supreme Court of Pennsylvania*, 936 F.Supp. 266 (E.D.Pa. 1996)(Court dismissed First Amendment claim brought by judge asserting retaliation for opposing court administrator with strong political connections finding absence of cases which extended First Amendment protection of freedom of association to workplace relationships).

them on notice that their alleged conduct was constitutionally prohibited. In fact, neither defendant was clearly on notice regarding the protected parameters of First Amendment speech by a public employee discussing matters within the course and scope of his employment. In reviewing such conduct, the Court must look at both the law and the facts and determine not only whether the legal principle was clearly established, but also whether the defendant's conduct, given the particular facts and circumstances, was plainly proscribed by the established principles. *Anderson v. Creighton*, 483 U.S. 635 (1987).

Under this test, even proceeding hypothetically, it is difficult to determine exactly what actions Plaintiff alleges were taken by Coons that were in violation of clearly established standards. In neither the complaint nor in the factual record is there anything to connect Coons to Plaintiff's failure to be promoted to sergeant.

Further, with respect to Sapp, even assuming that Sapp, with the guidance and approval by the CAO, declined to authorize the promotions in late June, there was no clearly established Supreme Court prohibition against such conduct. In fact, the recently decided Supreme Court decision in *Garcetti, supra,* made it clear that a public employee's speech regarding their duties and responsibilities is not protected by the First Amendment. Moreover, at the time of the alleged action, the *Garcetti* case was pending a decision before the Supreme Court so the contours of the right were not clearly established.

In conclusion, at the time of Sapp and Coons' alleged conduct, there was a dearth of precedent of sufficient specificity, and factual similarity, to this case regarding a public employee's First Amendment right to be free from retaliatory harassment in connection with speech concerning their job responsibilities. The precedent that was available did not clearly establish that Plaintiff's claims, even when considered in their totality, would amount to a

28

constitutional violation. Accordingly, Defendants are entitled to qualified immunity and summary judgment on the Complaint.

**F.    Plaintiff's Request for Punitive Damages Against the County and Defendants Coons and Sapp Must be Dismissed.**

To the extent that Plaintiff seeks punitive damages against the County for alleged violations of § 1983, a municipality cannot be held liable for a claim for punitive damages brought under § 1983. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1982); *Marchese v. Ulmstead*, 110 F.Supp.2d 361, 373 (E.D.Pa. 2000). Similarly, punitive damages are not available against municipal officials in their official capacities under § 1983. *See Leipziger v. Township of Falls,* 2001 WL 111611, at *9 (E.D.Pa.). Accordingly, Plaintiff's claims for punitive damages against the County and Defendants Coons and Sapp in their official capacities must be dismissed as a matter of law.

Similarly, to the extent that Plaintiff attempts to assert claims for punitive damages against Coons or Sapp in their individual capacities, those claims should also be dismissed. Punitive damages may be awarded under 42 U.S.C. § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involved reckless or callous indifference to the federally protected rights of others." *Coleman v. Kaye*, 87 F.3d 1491, 1497 (3d Cir. 1996)(*citation omitted*). However, the record does not reflect any evidence that Coons acted at all with respect to the conduct complained of, or that Coons or Sapp acted with any reckless or evil motive or intent sufficient to enable a jury to award punitive damages. Therefore, this claim must be dismissed.

## V.   CONCLUSION

For the aforementioned reasons, the County, and Defendants Christopher A. Coons and

Guy H. Sapp, in their individual and official capacities, respectfully request that Plaintiff's

claims against them be dismissed.

Respectfully submitted,

/s/ Michele D. Allen
Michele D. Allen, Assistant County Attorney (#4359)
Judith A. Hildick, First Assistant County Attorney (#3244)
Megan Sanfrancesco, First Assistant County Attorney (#3801)
New Castle County Law Department
87 Reads Way
New Castle, DE 19720
(302) 395-5130
*Attorneys for New Castle County and Christopher A. Coons and
Guy H. Sapp in their Official Capacities*

and

/s/ Jeffrey S. Goddess
Jeffrey S. Goddess, Esq.(#630)
Rosenthal, Monhait & Goddess, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899
*Attorney for Christopher A. Coons and Guy H. Sapp in their
Individual Capacities*

Dated:  July 17, 2006