# EXHIBIT R – PART II

Westlaw.

436 F.3d 165

436 F.3d 165, 23 IER Cases 1527, 152 Lab.Cas. P 60,134
**(Cite as: 436 F.3d 165)**

**H**
Briefs and Other Related Documents

United States Court of Appeals,Third Circuit.
Dwight L. MCKEE; Allen L. Jones
v.
Henry HART; Wesley Rish; Albert Masland;
James Sheehan; Daniel P. Sattele Daniel P.
Sattele, Appellant.
**No. 04-1442.**

Argued March 10, 2005.
Jan. 6, 2006.

**Background:** Investigator for the state office of inspector general sued supervisor under § 1983 alleging supervisor had retaliated against him for his refusal to stop voicing his concerns about the pharmaceutical industry, in violation of the First Amendment. The United States District Court for the Middle District of Pennsylvania, 2004 WL 1454108,Richard Caputo, J., denied supervisor's motion for summary judgment on qualified immunity basis, and appeal was taken.

**Holdings:** The Court of Appeals, Ambro, Circuit Judge, held that:

7(1) supervisor's allegedly retaliatory comments to employee did not rise to level of retaliatory harassment under First Amendment, and

8(2) even if supervisor violated employee's First Amendment rights, such rights were not clearly established at time of alleged conduct.

Reversed and remanded.

West Headnotes

**[1] Federal Courts 170B ⇌754.1**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
        170BVIII(K)1 In General
            170Bk754 Review Dependent on Whether Questions Are of Law or of Fact
                170Bk754.1 k. In General. Most Cited Cases
An appellate court exercises plenary review over a district court's conclusions of law in its qualified immunity analysis.

**[2] Federal Courts 170B ⇌763.1**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
        170BVIII(K)1 In General
            170Bk763 Extent of Review Dependent on Nature of Decision Appealed from
                170Bk763.1 k. In General. Most Cited Cases
In reviewing a district court's qualified immunity analysis, an appellate court may review whether the set of facts identified by the district court is sufficient to establish a violation of a clearly established constitutional right, but may not consider whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove.

**[3] Civil Rights 78 ⇌1376(2)**

78 Civil Rights
    78III Federal Remedies in General
        78k1372 Privilege or Immunity; Good Faith and Probable Cause
            78k1376 Government Agencies and Officers
                78k1376(2) k. Good Faith and Reasonableness; Knowledge and Clarity of Law; Motive and Intent, in General. Most Cited Cases
Qualified immunity insulates government officials performing discretionary functions from suit insofar

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

436 F.3d 165, 23 IER Cases 1527, 152 Lab.Cas. P 60,134
**(Cite as: 436 F.3d 165)**

as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.

**[4] Civil Rights 78 ☞1376(1)**

78 Civil Rights
   78III Federal Remedies in General
      78k1372 Privilege or Immunity; Good Faith and Probable Cause
         78k1376 Government Agencies and Officers
           78k1376(1) k. In General. Most Cited Cases

**Civil Rights 78 ☞1376(2)**

78 Civil Rights
   78III Federal Remedies in General
      78k1372 Privilege or Immunity; Good Faith and Probable Cause
         78k1376 Government Agencies and Officers
           78k1376(2) k. Good Faith and Reasonableness; Knowledge and Clarity of Law; Motive and Intent, in General. Most Cited Cases
To determine whether an official has lost his or her qualified immunity, a court must first decide whether a constitutional right would have been violated on the facts alleged, and if the answer to that question is "yes," the court must then consider whether the right was clearly established.

**[5] Constitutional Law 92 ☞90.1(7.2)**

92 Constitutional Law
   92V Personal, Civil and Political Rights
      92k90 Freedom of Speech and of the Press
         92k90.1 Particular Expressions and Limitations
           92k90.1(7) Labor Matters
               92k90.1(7.2) k. Public Employment. Most Cited Cases
A public employee has a First Amendment constitutional right to speak on matters of public concern without fear of retaliation. U.S.C.A. Const.Amend. 1.

**[6] Constitutional Law 92 ☞90.1(7.2)**

92 Constitutional Law
   92V Personal, Civil and Political Rights
      92k90 Freedom of Speech and of the Press
         92k90.1 Particular Expressions and Limitations
           92k90.1(7) Labor Matters
               92k90.1(7.2) k. Public Employment. Most Cited Cases
In determining whether a cognizable First Amendment claim has been stated by a public employee, the effect of the alleged conduct on the employee's freedom of speech need not be great in order to be actionable, but it must be more than de minimis. U.S.C.A. Const.Amend. 1.

**[7] Constitutional Law 92 ☞90.1(7.2)**

92 Constitutional Law
   92V Personal, Civil and Political Rights
      92k90 Freedom of Speech and of the Press
      92k90.1 Particular Expressions and Limitations
         92k90.1(7) Labor Matters
           92k90.1(7.2) k. Public Employment. Most Cited Cases

**States 360 ☞53**

360 States
   360II Government and Officers
      360k53 k. Appointment or Employment and Tenure of Agents and Employees in General. Most Cited Cases
Supervisor's allegedly retaliatory comments to special investigator for Pennsylvania Office of Inspector General (OIG), including telling him to go with the flow and not permitting him to speak to anyone about investigation into pharmacist without supervisor's permission, did not rise to level of harassment, under First Amendment, in retaliation for his speaking out about pharmaceutical industry; comments were aimed at getting investigator to focus on investigation to which he was assigned instead of focusing on his own wide-ranging concerns about pharmaceutical industry as a whole, and investigator suffered no alteration in his employment benefits, pay, or job classification as a result of speaking out about potential corruption in pharmaceutical industry. U.S.C.A. Const.Amend. 1.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

436 F.3d 165

Page 3

436 F.3d 165, 23 IER Cases 1527, 152 Lab.Cas. P 60,134
**(Cite as: 436 F.3d 165)**

**[8] Civil Rights 78 ⇐1376(10)**

78 Civil Rights
 78III Federal Remedies in General
  78k1372 Privilege or Immunity; Good Faith
and Probable Cause
   78k1376 Government Agencies and
Officers
    78k1376(10) k. Employment Practices.
Most Cited Cases
Supervisor of special investigator for Pennsylvania
Office of Inspector General (OIG) was entitled to
qualified immunity from investigator's § 1983 claim
that supervisor retaliated against him, in violation of
First Amendment, for speaking out against
pharmaceutical industry, since constitutional right
allegedly violated was not clearly established;
reasonable official in supervisor's position would
not have been aware that making a few comments
over the course of a few months, the gist of which
was asking an employee to focus on his job, could
violate First Amendment. U.S.C.A. Const.Amend. 1
; 42 U.S.C.A. § 1983.

**[9] Constitutional Law 92 ⇐90.1(7.2)**

92 Constitutional Law
 92V Personal, Civil and Political Rights
  92k90 Freedom of Speech and of the Press
   92k90.1 Particular Expressions and
Limitations
    92k90.1(7) Labor Matters
     92k90.1(7.2) k. Public
Employment. Most Cited Cases
A public employee states a First Amendment claim
by alleging that his or her employer engaged in a
campaign of retaliatory harassment in response to
the employee's speech on a matter of public
concern, even if the employee could not prove a
causal connection between the retaliation and an
adverse employment action. U.S.C.A.
Const.Amend. 1.

**\*166** Charles W. Rubendall, II, (Argued), Donald
M. Lewis, III, Keefer, Wood, Allen & Rahal, LLP,
Harrisburg, PA, for Appellant.
Donald A. Bailey, (Argued), Bailey Stretton &
Ostrowski, Harrisburg, PA, for Appellee.

Before SCIRICA, Chief Judge, ROTH and AMBRO
, Circuit Judges.

OPINION OF THE COURT
AMBRO, Circuit Judge.
Daniel Sattele appeals the District Court's denial of
his summary judgment **\*167** motion seeking
qualified immunity in a suit brought by Allen Jones
alleging that Sattele, among others, had retaliated
against him for exercising his First Amendment
rights. Because Jones did not allege that Sattele
deprived him of a constitutional right-and because
even if he had, that right was not clearly established
at the time Sattele engaged in the alleged
conduct-we conclude that Sattele is entitled to
qualified immunity. We therefore reverse the
decision of the District Court and remand for
further proceedings.

**I. Factual and Procedural History**

In May 2002, Jones was hired as a special
investigator for the Pennsylvania Office of
Inspector General ("OIG").[FN1] The OIG is
responsible for investigating allegations of fraud,
waste, misconduct, and abuse in executive agencies
of the Commonwealth. At the time of the events at
issue in this case, Sattele was an Investigations
Manager at OIG and was Jones's supervisor.

  FN1. Jones had previously been employed
  by OIG. He left that position in 1991.

In mid to late-July 2002, Jones was given a lead
role in the investigation of Steve Fiorello, the chief
pharmacist at Harrisburg State Hospital. There
was only one other person assigned to the
investigation. A few weeks after the investigation
began, Jones told Sattele that he was concerned
about problems in the pharmaceutical industry that
went beyond the Fiorello investigation-specifically
that he believed the industry was routinely bribing
state officials. Jones informed Sattele that he
wanted to broaden the Fiorello investigation to
include the entire pharmaceutical industry.
Thereafter, Jones continued to inform Sattele about
his concerns regarding the industry.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

436 F.3d 165

Page 4

436 F.3d 165, 23 IER Cases 1527, 152 Lab.Cas. P 60,134
**(Cite as: 436 F.3d 165)**

In response, Sattele told Jones to stay focused on the Fiorello investigation and not to investigate corruption in the pharmaceutical industry as a whole. Sattele subsequently removed Jones from his lead role in the Fiorello investigation in September 2002[FN2] because Jones had, in Sattele's words, "lost focus." Sattele based this conclusion on the fact that Jones continued to voice concerns about the entire pharmaceutical industry even after Sattele had told him to concentrate only on Fiorello.

> FN2. Jones was still assigned to that investigation even though his role had changed.

In October 2002, Dwight McKee, one of Jones's colleagues at OIG, filed a complaint against other OIG employees, alleging that they had retaliated against him for exercising his First Amendment rights. In November 2002, an amended complaint was filed, joining Jones as a plaintiff and Sattele as a defendant. Jones brought a cause of action under 42 U.S.C. § 1983, alleging that Sattele and the other defendants had also retaliated against him for exercising his First Amendment rights. Jones claimed generally that he was retaliated against-through intimidation and harassment by his supervisors-for complaining to his supervisors that public corruption investigations were being obstructed and delayed for reasons that were not legitimate.

In particular, at his deposition Jones identified three comments by Sattele that he perceived as harassment in retaliation for his refusal to stop voicing his concerns about the pharmaceutical industry.[FN3] First, he testified that Sattele told him that

> FN3. Jones also identified a fourth incident that he alleged was harassment, involving Henry Hart, another defendant. Hart, however, is not a party to this appeal, and as that incident is not relevant to our decision, we do not discuss it here.

**\*168** Mac [McKee] was torpedoed. Some of the

things that he got maybe he deserved, but a lot of them he didn't. He was torpedoed. You keep your mouth shut.... Mac has been torpedoed, keep your mouth shut or the same thing can happen to you.
In a similar vein, Jones recalled that Sattele told him, in early October 2002, that if Jones could not adjust to the way OIG operated, he would have to leave his employment there.

Second, Jones testified that Sattele told him to "quit being a salmon," by which he meant that Jones should "quit swimming against the current with the pharmaceutical case." (Sattele testified at his deposition that he told Jones to "go with the flow" and not "swim against the current" because he was concerned that Jones was not working with the lawyers in the office and was not operating within a "team concept.")

Third, Jones related an incident that occurred in October 2002, after he had been removed as co-leader of the Fiorello investigation. Jones stated that thereafter he was not allowed to speak to anyone about the investigation without Sattele's permission. He nevertheless went to pick up documents from Fiorello, the target of the investigation, while Sattele and another of his supervisors were out of the office. Jones testified that, when he got back, Sattele met him "first thing," took him into a room with another OIG colleague, " and demanded to know why [he] went ... without [Sattele's] permission to pick up papers." Jones also stated that Sattele and his colleague accused Jones of having had an interview with the Director of the Department of Public Welfare, something Jones denied.

All defendants moved for summary judgment in August 2003, and the District Court granted the motion with respect to all defendants except Sattele in February 2004. As for Jones's claims against Sattele, the District Court determined, based on the three comments identified by Jones, that (1) "with respect to Mr. Sattele, Mr. Jones has presented evidence that could lead a reasonable jury to conclude that his requests to investigate the pharmaceutical industry were a substantial or motivating factor in the retaliatory harassment or intimidation he may have suffered" and (2) it could

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

436 F.3d 165

436 F.3d 165, 23 IER Cases 1527, 152 Lab.Cas. P 60,134
**(Cite as: 436 F.3d 165)**

not decide whether Sattele had qualified immunity absent a factual determination as to whether Sattele's conduct constituted retaliatory harassment. In its decision, the District Court also determined that Jones was not disciplined in connection with voicing his concerns about the pharmaceutical industry and that "[a]t no time during his employment has Mr. Jones's job classification, pay, or benefits been reduced or altered." Sattele now appeals from the denial of summary judgment on qualified immunity grounds.

## II. Jurisdiction & Standard of Review

The District Court had federal question jurisdiction over Jones's 42 U.S.C. § 1983 claim pursuant to 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291 and the collateral order doctrine. *See Doe v. Groody,* 361 F.3d 232, 237 (3d Cir.2004) ("[A] denial of qualified immunity that turns on an issue of law-rather than a factual dispute-falls within the collateral order doctrine that treats certain decisions as 'final' within the meaning of 28 U.S.C. § 1291." (citing, *inter alia, Behrens v. Pelletier,* 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996))); *Forbes v. Twp. of Lower Merion,* 313 F.3d 144, 147 (3d Cir.2002) (" When a defendant moves for summary judgment based on qualified immunity, the denial of the motion may be appealed immediately under the collateral-*169 order doctrine because '[t]he entitlement is an *immunity from suit* rather than a mere defense to liability [ ] and ... is effectively lost if a case is erroneously permitted to go to trial.' " (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)) (alterations, emphasis, and omission in original)). [FN4]

> FN4. Sattele contends that there is no factual dispute preventing us from exercising jurisdiction over this appeal, and Jones does not dispute that position.

[1][2] We exercise plenary review over the District Court's conclusions of law in its qualified immunity analysis. *Doe,* 361 F.3d at 237. In addition, "we

may review whether the set of facts identified by the district court is sufficient to establish a violation of a clearly established constitutional right, but we may not consider whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove." *Forbes,* 313 F.3d at 147 (internal quotation marks omitted).

We note also that at this stage of the litigation we are looking at the facts as presented by Jones, *i.e.,* Sattele's statements were retaliatory, rather than the exercise by Satele of appropriate supervisory limits on Jones's performance of his assignment.

## III. Discussion

[3][4] Qualified immunity insulates government officials performing discretionary functions from suit "insofar as 'their actions could reasonably have been thought consistent with the rights they are alleged to have violated.' " *Id.* at 148 (quoting *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). To determine whether an official has lost his or her qualified immunity, we must first "decide 'whether a constitutional right would have been violated on the facts alleged....' " *Doe,* 361 F.3d at 237 (quoting *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)) (omission in original). If the answer to that question is "yes," we must then " consider whether the right was 'clearly established.' " *Id.* at 238 (quoting *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151). If we also answer "yes" to the second question, we must conclude that the official does not have qualified immunity.

Sattele contends that he is entitled to qualified immunity because (1) his three statements to Jones about his work on the Fiorello investigation did not deprive Jones of his First Amendment rights, and (2) even if Jones did allege a violation of a constitutional right, that right was not clearly established at the time Sattele made the comments. We address each argument in turn.

### A. Did Sattelle Violate a Constitutional Right of Jones?

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

436 F.3d 165, 23 IER Cases 1527, 152 Lab.Cas. P 60,134
**(Cite as: 436 F.3d 165)**

[5] "A public employee has a constitutional right to speak on matters of public concern without fear of retaliation." *Brennan v. Norton*, 350 F.3d 399, 412 (3d Cir.2003) (internal quotation marks omitted). In light of this fundamental principle, we have held that, in certain circumstances, a public employee may bring a cause of action alleging that his or her First Amendment rights were violated by retaliatory harassment for the employee's speech about a matter of public concern even if he or she cannot prove that the alleged retaliation adversely affected the terms of his or her employment. *See Suppan v. Dadonna*, 203 F.3d 228, 234-35 (3d Cir.2000). In *Suppan*, we indicated that when the "plaintiffs' complaint allege[d] a campaign of retaliatory harassment culminating in ... retaliatory rankings [low ratings on promotion lists]," then a "trier of fact could *170 determine that a violation of the First Amendment occurred at the time of the rankings on the promotion lists and that some relief [was] appropriate even if plaintiffs [could not] prove a causal connection between the rankings and the failure to promote." *Id.* This holding is premised on the idea that being the victim of petty harassments in the workplace as a result of speaking on matters of public concern is in itself retaliation-even if the employee cannot prove a change in the actual terms of his or her employment-and thus could be actionable under the First Amendment. *Id.* at 235.

[6] In this context, the key question in determining whether a cognizable First Amendment claim has been stated is whether "the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights ...." *Id.* at 235 (internal quotation marks omitted). The effect of the alleged conduct on the employee's freedom of speech " 'need not be great in order to be actionable,' " but it must be more than *de minimis. Id.* (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir.1982) (Posner, J.)); *see also Brennan*, 350 F.3d at 422 n. 17 (noting that "incidents of what might otherwise be trivial 'harassment' " may be actionable through their "cumulative impact ... even though the actions would be *de minimis* if considered in isolation"). As stated earlier, the District Court determined that Jones's allegation that Sattele retaliated against him for speaking out

about the pharmaceutical industry met the standards set out in *Suppan.*

[7] Sattele does not dispute the District Court's conclusion that Jones sufficiently alleged that he was speaking out on a matter of public concern. Sattele does argue, however, that the District Court's conclusion (by pointing to the three statements Sattele made to Jones, the latter alleged a retaliatory harassment claim under the First Amendment) was incorrect. In particular, Sattele contends that his three allegedly retaliatory comments were trivial and insufficient to deter a person of ordinary firmness from exercising his First Amendment rights. We agree.

Despite our holding in *Suppan* that a plaintiff's allegation of a "campaign of retaliatory harassment" by a public employer as a result of the plaintiff's speech created a cognizable First Amendment claim even without an alleged causal connection to a change in the plaintiff's terms of employment, not every critical comment-or series of comments-made by an employer to an employee provides a basis for a colorable allegation that the employee has been deprived of his or her constitutional rights. *See Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir.2000) (stating that "not every reaction made in response to an individual's exercise of his First Amendment right to free speech is actionable retaliation"); *Bart*, 677 F.2d at 625 (holding that plaintiff had alleged an actionable First Amendment claim when she claimed that "an entire campaign of harassment[,] which though trivial in detail may have been substantial in gross," had been mounted against her, but cautioning that "[i]t would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise"). We have noted that " 'courts have declined to find that an employer's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands.' " *Brennan*, 350 F.3d at 419 (quoting *Suarez*, 202 F.3d at 686) (holding that allegations that a supervisor stopped using the plaintiff's*171 job title and did not capitalize the plaintiff's name as a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

436 F.3d 165                                                                              Page 7

436 F.3d 165, 23 IER Cases 1527, 152 Lab.Cas. P 60,134
**(Cite as: 436 F.3d 165)**

result of plaintiff's speech, even if true, did not rise to the level of a constitutional violation because they were *de minimis*). The comments made by Sattele fall into this category.

Sattele's statements to Jones in the fall of 2002 were all aimed at getting Jones to focus on the investigation to which he was assigned-looking into the activities of a particular person in a particular state agency-instead of focusing on Jones's own wide-ranging concerns about the pharmaceutical industry as a whole, something that OIG was not investigating. There is no question Sattele's statements were critical of Jones's job performance, and they may be construed as reprimands for Jones's continued expressions of concern about potential corruption in the pharmaceutical industry. However, even looking at the record in the light most favorable to Jones (as we must at this stage in the proceedings), we cannot conclude that Sattele's comments, taken together, would have deterred a person of ordinary firmness from exercising his First Amendment rights.

In *Suppan,* the plaintiffs allegedly were subjected to repeated chastisements and threats from their superiors over a period of more than a year based on their membership in a union negotiating team, and they alleged that they were given low ratings on their promotion eligibility evaluations in retaliation for those activities. 203 F.3d at 230-31. By contrast, Jones was admonished a few times for straying from the scope of the task he was assigned. The District Court explicitly found that, despite Jones's changed role in the Fiorello investigation, he suffered no alteration in his employment benefits, pay, or job classification as a result of speaking out about potential corruption in the pharmaceutical industry. Based on the set of facts identified by the District Court, Jones's allegations about Sattele's conduct simply do not rise to the level of a retaliatory harassment claim under the First Amendment.

Because Jones has not alleged the deprivation of a constitutional right, Sattele is entitled to qualified immunity. For the sake of completeness however, we now turn to the second prong of the qualified immunity analysis and determine whether-assuming

that Jones had sufficiently alleged the violation of a constitutional right-that right was clearly established at the time of Sattele's alleged conduct.

*B. Assuming Sattele Violated a Constitutional Right of Jones, Was that Right Clearly Established at the Time of the Alleged Conduct?*

[8] " '[C]learly established rights' are those with contours sufficiently clear that a reasonable official would understand that what he is doing violates that right." *McLaughlin v. Watson,* 271 F.3d 566, 571 (3d Cir.2001). Put another way, "there must be sufficient precedent at the time of the action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited." *Id.* at 572. The Supreme Court has recently reiterated this point, stating that "[i]t is important to emphasize that this [clearly established] inquiry 'must be undertaken *in light of the specific context of the case,* not as a broad general proposition.' " *Brosseau v. Haugen,* 543 U.S. 194, 125 S.Ct. 596, 599, 160 L.Ed.2d 583 (2004) (*per curiam*) (quoting *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151) (emphasis added).

[9] Before Sattele allegedly engaged in the conduct at issue in this case, we held, as discussed at Section III(A), *supra,* that a public employee states a First Amendment claim by alleging that his or her *172 employer engaged in a "campaign of retaliatory harassment" in response to the employee's speech on a matter of public concern, even if the employee could not prove a causal connection between the retaliation and an adverse employment action. *Suppan,* 203 F.3d at 234-35. We then reiterated, in *Baldassare v. New Jersey,* 250 F.3d 188 (3d Cir.2001), that "[a] public employee has a constitutional right to speak on matters of public concern without fear of retaliation." *Id.* at 194 (citing, *inter alia, Rankin v. McPherson,* 483 U.S. 378, 383-84, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) ). Jones contends that *Suppan* and *Baldassare,* taken together, were sufficient precedent to put Sattele on notice that his conduct-making harassing comments to Jones arising out of Jones's voicing of concerns about corruption in the pharmaceutical industry-was constitutionally prohibited.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

436 F.3d 165

Page 8

436 F.3d 165, 23 IER Cases 1527, 152 Lab.Cas. P 60,134
**(Cite as: 436 F.3d 165)**

In *Suppan,* however, we gave little guidance as to what the threshold of actionability is in retaliatory harassment cases. Instead, we merely held that such a claim existed. *Suppan,* 203 F.3d at 235. Moreover, the alleged conduct in *Suppan* spanned more than a year and involved the supposed lowering of ratings on employees' promotion evaluations and the admonishment of employees because of their union activities and support for a particular mayoral candidate. *Id.* at 230-31. Based only on our acknowledgment of a retaliatory harassment cause of action in *Suppan* and the facts of that case, a reasonable official in Sattele's position would not have been aware that making a few comments over the course of a few months (the gist of which was asking an employee to focus on his job) might have run afoul of the First Amendment.

*Baldassare* also does not further Jones's argument that his First Amendment right to be free from retaliatory harassment was clearly established at the time of Sattele's alleged conduct. That case involved a straightforward retaliation claim brought under the First Amendment in which the plaintiff alleged a direct causal connection between his speech on a matter of public concern and his demotion, *see Baldassare,* 250 F.3d at 194 (plaintiff claimed he was demoted because of his statements regarding his investigation and report about conduct of his co-workers), not that he was subject to a campaign of retaliatory harassment such as the one involved in *Suppan* and alleged by Jones in this case. Thus, *Baldassare* would not have helped Sattele understand that his conduct might be constitutionally prohibited.[FN5]

FN5. Moreover, we note that even if *Baldassare* were relevant to determining whether Jones's right to be free from retaliatory harassment was clearly established at the time of Sattele's alleged conduct, that case would not necessarily put a reasonable official in Sattele's position on notice that making comments such as Sattele's would violate the First Amendment. Under the traditional retaliation analysis articulated in

*Baldassare,* the second inquiry, after the plaintiff has established that he or she was engaging in activity protected by the First Amendment, is whether the plaintiff's " interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees." 250 F.3d at 195. We have stated that, in determining the interest of the employer for purposes of this balancing test, "we must consider 'whether the [expression] impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.' " *Id.* at 198 (quoting *Rankin,* 483 U.S. at 388, 107 S.Ct. 2891) (alteration in original). The District Court determined in this case that there was no evidence that OIG's interest in conducting an efficient investigation was impaired by Jones's speech. However, given our precedent on this issue, a reasonable official in Sattele's position could have *understood* his actions toward Jones as being justified because the need to maintain efficient working relationships and to improve Jones's performance of his duties on the Fiorello investigation outweighed his interest in speaking generally about potential corruption in the pharmaceutical industry, a matter outside the scope of the investigation OIG was conducting. *Cf. Sprague v. Fitzpatrick,* 546 F.2d 560, 565 (3d Cir.1976) (holding that, even though speech leading to public employee's discharge "concerned matters of grave public import," the balance weighed against finding that speech protected by the First Amendment when it had " completely undermined" the effectiveness of the employer-employee relationship).

**\*173** We did touch on the retaliatory harassment theory again in our *Brennan* decision, noting once

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

436 F.3d 165

Page 9

436 F.3d 165, 23 IER Cases 1527, 152 Lab.Cas. P 60,134
**(Cite as: 436 F.3d 165)**

more that "a plaintiff may be able to establish liability under § 1983 based upon a continuing course of conduct even though some or all of the conduct complained of would be *de minimis* by itself or if viewed in isolation." 350 F.3d at 419 n. 16. *Brennan* provided some additional guidance about what types of conduct would support such a claim, holding that some of the plaintiff's allegations (that he had been taken off the payroll for some time and given various suspensions as a result of his speech) would support a retaliation claim, whereas other of his allegations (including his claim that his supervisor stopped using his title to address him) would not because of their triviality. *Id.* at 419. However, *Brennan* was not decided until 2003, after Sattele's alleged conduct, which occurred in the fall of 2002, had already taken place. Thus, to the extent that *Brennan* added some specificity to the contours of the retaliatory harassment cause of action, an employee's First Amendment right to be free from such harassment was still not clearly established at the time of Sattele's conduct. *See Brosseau,* 125 S.Ct. at 600 n. 4 (noting that the parties had pointed the Court to "a number of ... cases ... that postdate the conduct in question" and that "[t]hese decisions, of course, could not have given fair notice to [the official] and are of no use in the clearly established inquiry").

Moreover, as discussed at Section III(A), *supra,* we also stated in *Brennan* that courts have not found violations of employees' First Amendment rights " where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands." 350 F.3d at 419 (internal quotation marks omitted). *Brennan* therefore lends support to Sattele's argument that his critical comments to Jones did not violate Jones's First Amendment rights.

Accordingly, because of the dearth of precedent of sufficient specificity (and factual similarity to this case) regarding a public employee's First Amendment right to be free from retaliatory harassment by his or her employer at the time of Sattele's conduct, we cannot say that the constitutional right Jones alleged Sattele violated was clearly established. Sattele is therefore entitled to qualified immunity under the second, as well as the first, prong of our *Saucier* analysis.

## IV. Conclusion

The three comments made by Sattele in response to Jones's voicing of his concerns about potential corruption in the pharmaceutical industry, although critical of Jones's speech, were all intimately related to Jones's job performance and would not have deterred a person of ordinary firmness from exercising his or her First Amendment rights. As the District Court found, the comments were also unaccompanied by any change in Jones's employment benefits or wages. We cannot conclude, based on this factual situation, that **174** Jones alleged a deprivation of a constitutional right.

Moreover, even if there had been such a deprivation, Jones's constitutional right to be free from a campaign of retaliatory harassment was not clearly established at the time of Sattele's alleged conduct. *Suppan* (and *Baldassare* to the extent it is applicable), although they were decided before the events at issue in this case, did not define the bounds of a retaliatory harassment cause of action with sufficient specificity, nor were their facts sufficiently similar to those alleged here, such that Sattele would have been on notice that his conduct was constitutionally prohibited.

Accordingly, Sattele is entitled to qualified immunity, and we reverse the contrary decision of the District Court and remand for further proceedings.

C.A.3 (Pa.),2006.
McKee v. Hart
436 F.3d 165, 23 IER Cases 1527, 152 Lab.Cas. P 60,134

Briefs and Other Related Documents (Back to top)

• 04-1442 (Docket) (Feb. 23, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2001 WL 111611 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
Robert LEIPZIGER and Rob's Automotive &
Collision Center, Inc.
v.
TOWNSHIP OF FALLS, et al.
No. CIV.A. 00-1147.

Feb. 1, 2001.

*MEMORANDUM AND ORDER*
BECHTLE.
**\*1** Presently before the court are defendants the Township of Falls, *et al.*' s (collectively "Defendants ") Motion to Dismiss Plaintiffs' Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) or, Alternatively, Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56; [FN1] plaintiffs Robert Leipziger's and Rob's Automotive & Collision Center, Inc.'s (collectively "Plaintiffs") Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56; the memoranda in support of said motions and the responses thereto. For the reasons set forth below, the court will grant the motions in part and deny them in part.

> FN1. Because Defendants have submitted evidence beyond the pleadings that the court will consider, the court will treat Defendants' motion as a motion for summary judgment.

*I. BACKGROUND*

Plaintiffs Robert Leipziger ("Leipziger") and Rob's Automotive & Collision Center, Inc. ("Rob's Automotive") brought suit under 42 U.S.C. § 1983 and Pennsylvania common law, alleging that Defendants violated Plaintiffs' constitutional and contractual rights by removing Rob's Automotive

from the Township of Falls' ("Township") list of approved towing companies. (Pls.' Mem. of Law in Supp. of Mot. for Summ. J. ("Pls.' Mot. for Summ. J.") at 1.) Specifically, Plaintiffs assert causes of action for violations of due process (Counts I & II) and equal protection (Count III), as well as pendent state causes of action for breach of contract (Count V) and tortious interference with contract (Count VI). Plaintiffs also seek punitive damages (Count IV). [FN2]

> FN2. The parties have stipulated that the proper party-plaintiff in this action is Rob's Automotive, and not Leipziger, the company's sole shareholder. *See* Defs.' Mot. to Dismiss Pls.' Compl. Pursuant to Fed.R.Civ.P. 12(b)(1) and (6) or, Alternatively, Mot. for Summ. J. Pursuant to Fed.R.Civ.P. 56 ("Defs.' Mot. for Summ. J.") Ex. H at 13-16; *see also Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1278 (3d Cir.1994) (holding that individual shareholders have no standing to sue under § 1983 for injury to corporation); *Kelly v. Thomas,* 234 Pa. 419, 83 A. 307 (Pa.1912) (holding that shareholder has no standing to assert cause of action for injuries to corporation); *Kehr Packages v. Fidelity Bank, N.A.,* 710 A.2d 1169, 1176 (Pa.Super.1998) (same). Accordingly, summary judgment will be entered in favor of Defendants on all claims asserted by Leipziger.

Defendants include: the Township; Township Manager Wayne Bergman ("Bergman"); Phillip A. Szupka, William Dayton, and Richard Otto, who are current members of the Township's Board of Supervisors ("Board"); and former Board member James P. Rhein.[FN3] (Defs.' Mot. for Summ. J. at 2.)

> FN3. Szupka, Dayton, Otto and Rhein will

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 111611 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

be referred to collectively as the "Supervisors."

To facilitate the free flow of traffic, the Township uses a list of "licensed" towing companies to call when disabled vehicles need to be removed from streets. (Defs.' Mem. of Law in Supp. of Defs.' Answer to Pls.' Mot. for Summ. J. ("Defs.' Resp.") at 2.) There are a maximum of seven companies on the list at any one time. Township of Falls Code § 206-3(B). The towers are put on a rotating schedule, and the Township may call only towers on the list to perform removal services. *Id.* § 206-3(A). However, a vehicle owner still has the right to select any tower, regardless of whether it is on the list. *Id.* § 206-12.

The ordinance establishes a specific procedure for appointment to the list. This procedure requires public notice of a vacancy, solicitation of applications, qualification of the applicants, and a lottery among eligible participants. *Id.* § 206-15. To determine whether an applicant meets the eligibility requirements, which include having a registered place of business within the Township and a minimum amount of storage space, the police are required to investigate an applicant within 5 days of receiving an application. *Id.* § 206-6. The Board appoints a selected applicant to the list by amendment to the ordinance.

Once awarded, a license continues annually so long as the licensee fulfills all of the requirements of the original application. *Id.* § 206-15. A tower can only be removed from the list upon 10 days written notice and a hearing at which the Township Manager finds as a fact that the tower committed a disqualifying offense enumerated under § 206-11. *Id.* § 206-11.

**\*2** Certain facts are not disputed. From 1992 through 1999, Leipziger submitted applications on behalf of Rob's Automotive. (Pls.' Mot. for Summ. J. at 1.) On November 10, 1999, the Board finally approved Leipziger's application and placed Rob's Automotive on the list. *Id.* at 1-2. Defendant supervisors Otto and Rhein were absent from that meeting, although Rhein supported Rob's Automotive's appointment. (Defs.' Resp. at 3-4.)

Later that year, a new Board was elected. (Pls.' Mot. for Summ. J. at 2.) On January 3, 2000, the new Board held a meeting at which it voted 4-1 to remove Rob's Automotive from the towing list. *Id.;* Defs.' Resp. at 3-4. Dayton, Szupka, Otto and Rhein were the supervisors who voted for removal.[FN4] (Defs.' Resp. at 4.)

> FN4. Dayton and Szupka took office on January 3, 2000, and thus did not participate in the November 1999 appointment of Rob's Automotive to the list. *Id.*

All parties acknowledge that the removal procedure set forth by the ordinance was not followed. (Pls.' Mot. for Summ. J. at 2; Defs.' Resp. at 3.) For example, there was: no public notice; no ten days notice and hearing provided to Rob's Automotive; no solicitation of applications; no qualification of applicants; no lottery; and no ordinance amendment advertised and adopted. (Pls.' Mot. for Summ. J. at 2; Defs.' Resp. at 3.) Rob's Automotive asserts, and Defendants concede, that it was not removed because it violated a provision of the ordinance. Rather, Rob's Automotive was removed because the former Board did not follow proper procedures when it placed Rob's Automotive on the list. (Pls.' Mot. for Summ. J. at 3; Defs.' Resp. at 4-5.)

Defendants argue that the action of the prior "lame-duck" Board was an improper attempt to control the new Board, and that this action was a nullity because proper procedures were not followed. (Defs.' Resp. at 9.) They assert that there was no vacancy on the list when Rob's Automotive was appointed and that Rob's Automotive does not meet the ordinance's standards. *Id.* at 11. Defendants contend that the current vacancy will be filled at the conclusion of this litigation by following the procedures set forth in the ordinance, and that Rob's Automotive is free to apply for inclusion. *Id.* at 5, 9, & 12. Lastly, they argue that the former board never received a completed application from Rob's Automotive or Leipziger in November 1999 or conducted the requisite investigation of Rob's Automotive.[FN5] *Id.* at 5-8.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 3

Not Reported in F.Supp.2d, 2001 WL 111611 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

FN5. Although Defendants assert that the police did not investigate Rob's Automotive because they never received a completed application, they admit that the Township maintains no central filing system for these applications and keeps no updated list of potential applicants. (Defs.' Resp. at 8.)

Rob's Automotive contends that a proper application was submitted prior to the November 1999 Board meeting. (Pls.' Mot. for Summ. J. at 4.) It asserts that it meets all of the standards set forth by the ordinance, that all but one of the towers currently on the list do not meet those standards, and that there has been an ongoing pattern of discrimination against it. *Id.* at 6-8. Accordingly, Rob's Automotive requests an order of summary judgment on the due process and equal protection claims. *Id.* at 8-9. Rob's Automotive suggests that if summary judgment on these claims is granted in its favor, then it should be ordered back on the list and the issues remaining to be litigated would be an assessment of damages. *Id.* at 9.

## II. *LEGAL STANDARD*

**\*3** Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute is material only if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Whether a genuine issue of material fact is presented will be determined by asking if "a reasonable jury could return a verdict for the non-moving party." *Id.* In considering a motion for summary judgment, " [i]nferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992) (citation omitted).

## III. *DISCUSSION*

Rob's Automotive claims that the Board's actions violated the due process and equal protection guarantees of the Fourteenth Amendment, as well as state common law. Defendants assert defenses based on, *inter alia,* absence of a constitutionally protected interest, absolute immunity, qualified immunity, sovereign immunity, the statute of limitations, and absence of a contract. FN6 The court will address Rob's Automotive's claims and the Township's and Supervisors' defenses seriatim.

FN6. Defendants also assert that because Rob's Automotive failed to pursue established state procedure for challenging local government decisions, its claim is not ripe and the court lacks subject matter jurisdiction. Specifically, Defendants point out that Rob's Automotive has not filed an appeal in the Court of Common Pleas or otherwise made any effort to obtain review or reconsideration of the January 3, 2000 decision. (Defs.' Mot. to Dismiss at 16.) However, the cases cited by Defendants in support of this argument either concern the narrow issue of regulatory takings or do not address ripeness at all. In the absence of citation to contrary authority, the court concludes that the Township's decision to remove Rob's Automotive from the towing list was a sufficient final action to make the instant dispute ripe, regardless of whether Rob's Automotive pursued state remedies for its federal claims. *See McNeese v. Bd. of Educ.,* 373 U.S. 668, 671, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963) and *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (setting forth general rule that relief under § 1983 may not be defeated because relief was not first sought under state law).

### A. *Plaintiffs' Due Process and Equal Protection Claims*

The Civil Rights Act provides civil redress for plaintiffs injured by persons or entities acting under

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 111611 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

color of state law in violation of the Constitution or laws of the United States. 42 U.S.C. § 1983. To prevail on a § 1983 claim, Rob's Automotive must prove that: (1) Defendants acted under color of state law; (2) depriving Rob's Automotive of a right secured by federal law; and (3) damages. *Samerik v. City of Philadelphia,* 142 F.3d 582, 590 (3d Cir.1998); *Kelly v. Borough of Sayreville,* 107 F.3d 1073, 1077 (3d Cir.1997); *Mark v. Borough of Hatboro,* 51 F.3d 1137, 1141 (3d Cir.1995).

It is undisputed that Defendants acted under color of state law in taking every action that is relevant to the instant dispute.[FN7] However, Defendants contend that Rob's Automotive has suffered no constitutional deprivation.

> FN7. As an initial matter, the court concludes that no cause of action lies against defendant Bergman. His only involvement in the relevant events was writing the letter that informed Rob's Automotive of the Board's decision to remove it from the list. He had no role in the Board's decision or the actual removal of Rob's Automotive. Plaintiffs cite no authority for the proposition that a public official's mere act of informing someone of the actions taken by a public body of which he is not a member, even if those actions are unconstitutional, can give rise to a cause of action under § 1983. Accordingly, summary judgment will be entered in favor of defendant Bergman. For the remainder of the court's opinion, the term "Defendants" will refer to all named defendants except Bergman.

### 1. Substantive Due Process

"Substantive due process refers to and protects federal rights." *Nicholas v. Pa. State Univ.,* 227 F.3d 133, 141 (3d Cir.2000) (citations omitted). To prevail on his substantive due process claim, a plaintiff must first establish that he has "a protected property interest to which the Fourteenth Amendment's due process protection applies." *Id.* at 139 (citations omitted). Although it is settled that

state-created property interests are entitled to protection under procedural due process, "not all property interests worthy of procedural due process protection are protected by the concept of substantive due process." *Id.* (internal quotations and citations omitted). Accordingly, to state a substantive due process claim, a plaintiff must have been deprived of "a particular quality of property interest." *Id.* (quotations and citations omitted). " [W]hether a certain property interest embodies this particular quality ... depends on whether that interest is fundamental under the United States Constitution." *Id.* (quotations and citations omitted).

As Defendants point out, it is unclear whether Rob's Automotive is asserting a substantive due process claim. (Defs.' Resp. at 10.) Additionally, Rob's Automotive cites no authority for the proposition that a mere license to tow disabled vehicles falls within the narrow definition of a fundamental property interest. *See, e.g., Nicholas,* 227 F.3d at 142-43 (holding that public employment not fundamental property interest for purpose of substantive due process); *Homar v. Gilbert,* 63 F.Supp.2d 559 (M.D.Pa.1999) (loss of service contract does not warrant substantive due process protection); *Holt Cargo Systems, Inc. v. Delaware River Port Auth.,* 20 F.Supp.2d 803 (E.D.Pa.1998) (loss of customers, profits, bids or breach of lease do not constitute substantive due process claims). Thus, to the extent that Rob's Automotive asserts such a claim, the court will grant Defendants' motion for summary judgment.

### 2. Procedural Due Process

*4 The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law." To establish a cause of action for a violation of procedural due process, a plaintiff must prove that a person acting under color of state law deprived him of a protected interest and that the state procedure for challenging the deprivation does not satisfy the requirements for procedural due process. *Homan v. City of Reading,* 15 F.Supp.2d 696, 699 (E.D.Pa.1998) ("*Homan II* ") (citing *Midnight Sessions, Ltd. v. City of Philadelphia,* 945 F.2d 667, 680 (3d Cir.1991)). A

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 5

Not Reported in F.Supp.2d, 2001 WL 111611 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

property interest protected by the due process clause results from a "legitimate claim of entitlement created by an independent source such as state law." *Id.* (citing *Midnight Sessions, Ltd.,* 945 F.2d at 679). If such a property interest is deprived, due process requires notice and a meaningful opportunity to be heard. *Id.* (citing *Midnight Sessions, Ltd.,* 945 F.2d at 680).

The license issued to Rob's Automotive is clearly an entitlement warranting the protections of procedural due process. As the Supreme Court noted with regard to a driver's license in *Bell v. Burson:*
Once licenses are issued ... their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.

*Bell,* 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (citations omitted). As far as this court is aware, every federal court that has addressed the instant question-whether a rotational towing list established pursuant to a state statute or local ordinance creates a property right entitling the licensee to due process protection-has answered in the affirmative. *Pritchett v. Alford,* 973 F.2d 307, 317 (4th Cir.1992); *Abercrombie v. City of Catoosa,* 896 F.2d 1228, 1232 (10th Cir.1990); *Crownhart v. Thorp,* Civ. No. 92-20227, 1992 WL 332298, at *2-3 (N.D.Ill.1992); *Gregg v. Lawson,* 732 F.Supp. 849, 853 (E.D.Tenn.1989)); *see also Henson v. City of Syracuse,* 559 N.Y.S.2d 1064, 1066 (N.Y.Sup.Ct.1990) (towing company had protected property interest in continuing to have name on rotational towing list so as to have Fourteenth Amendment due process right to pre-removal hearing).

Defendants cite *Garner v. Township of Wrightstown* for the proposition that it is not clearly established that there is a protected property right to be included on a towing list. *Garner,* 819 F.Supp. 435 (E.D.Pa.1993). In *Garner,* the court found that the plaintiff tower did not have a constitutionally protected property right in an *informal* towing agreement with the township. *Id.* at 444. In the absence of a formal license, Judge Brody stated that at most, termination of the informal agreement could give rise to a claim for breach. *Id.* However, she opined that had the plaintiff's state salvor's license been revoked, she "would be inclined to agree that *Bell* would apply." *Id.* Thus *Garner* supports the proposition that the formal licensing system adopted by the Township's ordinance in the instant case created an entitlement warranting due process protection.

*5 Defendants, rather interestingly, contend that Rob's Automotive's claims are insupportable *because* the former Board never properly appointed it to the list. (Defs.' Resp. at 4-5.) Thus, Defendants claim that because Rob's Automotive was never properly appointed, the procedures for removal set forth in the ordinance never came into effect. *Id.*

This argument is meritless.[FN8] Once Rob's Automotive was put on the list, it had a protected property interest entitling it to a pre-removal hearing. Whether the Board followed proper procedures in appointing Rob's Automotive is irrelevant to the issue of whether a pre-removal hearing was required. The Township appears to have recognized the need for such a hearing by providing for a removal hearing in the ordinance. If the Township believes that the proper procedures were not followed in appointing Rob's Automotive to the list, that issue should have been addressed at a pre-removal hearing after notice to Rob's Automotive and an opportunity for it to present objections. Accordingly, Rob's Automotive has demonstrated that the Defendants violated its procedural due process rights. The court will address Defendants' immunity defenses *infra.*

> FN8. If the court were to accept Defendants' argument, the Township could purposefully fail to follow proper appointment procedures in order to ensure that it need not provide any type of procedure whatsoever when removing a tower from the list. Such a result would be ludicrous.

3. Equal Protection

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 111611 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

"The Equal Protection Clause prevents governments from making *improper* classifications and from applying proper classifications in such a way as to indicate that improper classifications are being drawn in the administrative process." *Mohammed v. Mathog,* 635 F.Supp. 748, 752 (E.D.Mich.1986). A plaintiff who asserts an equal protection claim based on selective enforcement of the law must show that: (1) the plaintiff, compared with others similarly situated, was selectively treated; and (2) the selective treatment was motivated by an intent to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. *Homan II,* 15 F.Supp.2d at 702 (citations omitted). Each prong of the test is to be applied separately and "failure to satisfy either inquiry [is] fatal to the plaintiff's claim." *Id.* (citations omitted); *see Anderson v. Douglas County,* 4 F.3d 574, 577 (8th Cir.1993) (party claiming equal protection violation must establish that it is "similarly situated" to other applicants for the license, permit or other benefit being sought, particularly with respect to same time period); *Mohammed,* 635 F.Supp. at 752 (dismissing equal protection claim for failure to allege that discrimination infringed fundamental right or was based on improper criteria such as race, age, sex, national origin, religion, or disability). A demonstration that persons similarly situated were treated differently does not, without more, establish malice or bad faith. *Crowley v. Courville,* 76 F.3d 47, 53 (2d Cir.1996).

As an initial matter, Rob's Automotive alleges and presents some evidence that other similarly situated towers were treated differently. For example, Rob's Automotive contends that all but one of the listed towers fails to meet the ordinance's qualifications. *See* Pls.' Mot. for Summ. J. at 6 (citing as support testimony by Leipziger, Harkins, Bergmen and Dillon).

**\*6** Even assuming, *arguendo,* that this contention is true, Defendants are entitled to summary judgment on the equal protection claim. Rob's Automotive has neither alleged nor proffered any evidence indicating that the Board's treatment of it infringed

a fundamental right or was based on an impermissible criteria such as race, religion, or ethnicity. Furthermore, there is no evidence that the Board's action was motivated by a malicious or bad faith intent to injure Rob's Automotive or Leipziger. All of the Supervisors testified that they did not know Leipziger or Rob's Automotive and thus had no motivation to injure either of them. (Defs.' Mot. for Summ. J. at 23-24 & Exs. A-F.) Furthermore, Leipziger testified that he does not know any of the Supervisors personally and that none of them expressed personal animosity toward him or his company. *Id.* Ex. H. Also, the court can discern no pattern of discrimination in the evidence presented. Thus, despite Rob's Automotive's assertions that it should be permitted to present evidence of damages from the Board's "refusal to grant [it] the equal protection of the law" arising from the ongoing refusal to put it on the list, Rob's Automotive will not be entitled to damages from any actions by the Board except those related to its removal from the list.[FN9] Accordingly, the court will grant summary judgment in favor of Defendants on Rob's Automotive's equal protection claim.

> FN9. Defendants also argue that Plaintiffs' claims extending back to 1991 are barred because "the applicable statute of limitations, by reference to the closest analogous state cause of action, should be two years." *See* Defs.' Mot. for Summ. J at 25 (citing *Aitchison v. Raffiani,* 708 F.2d 96 (3d Cir.1983)). However, Defendants do not indicate what the closest analogous state cause of action is or cite any specific statute of limitations. Furthermore, the case cited by Defendants, *Aitchison,* applied New Jersey law, rather than Pennsylvania law, to determine whether a § 1983 claim was time-barred. *Aitchison,* 96 F.2d at 100-03. Because of the lack of clarity with which this argument is put forth, the court cannot rely on it as a basis to grant summary judgement in favor of Defendants.

**B.** *Contract Claims: Breach and Tortious Interference*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 111611 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 7

Rob's Automotive asserts that it offered to provide towing service to the Township for years, that in November 1999 the Township accepted its offer and a contract was entered into, the terms of which were outlined in the Township ordinance. (Pls.' Mot. for Summ. J. at 17.) According to Plaintiff, the removal of Rob's Automotive from the towing list without just cause and a hearing breached the contract. *Id.* Defendants assert that there was no contract. (Defs.' Resp. at 24.)

The court must address three factors in determining whether a contract exists under Pennsylvania law: (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration. *Atacs Corp. v. Trans World Comms., Inc.,* 155 F.3d 659, 666 (3d Cir.1998). Furthermore, to prevail on a tortious interference with contract claim, a plaintiff must show: (1) an existing contractual relationship between the plaintiff and a third-party; (2) that the defendant interfered with the contract by inducing a breach or otherwise causing the third-party not to perform; (3) that the interference was not privileged; (3) and that the plaintiff suffered actual harm or damage as a result of the defendant's actions. *AL Hamilton Contracting Co. v. Cowder,* 434 Pa.Super. 491, 644 A.2d 188, 191 (Pa.Super.1994). The element of threshold importance is intent to harm the plaintiff. *Prudential Ins. Co. of Am. v. Stella,* 994 F.Supp. 318, 322 (E.D.Pa.1998).

Rob's Automotive cites no authority in support of its argument that a contract is formed through a licensing procedure such as the one established by the Township. Furthermore, the court finds it unlikely that a Pennsylvania court would find that a contractual relationship existed between Rob's Automotive and the Township. For example, it does not appear that either party was "bound" to perform. The listed towers were not obligated to respond to calls, and the Township does not appear to have been obligated by anything but its own ordinance to call the towers on the list. Therefore there was no intent to be bound and no consideration. Rob's Automotive does not claim that there was any oral or written agreement between it

and the Township. (Defs.' Mot. for Summ. J. Ex. H.) Thus, the court concludes that no contract existed between the Township and Rob's Automotive. Accordingly, Defendant's motion will be granted to the extent that it seeks summary judgment on the contract and tortious interference with contract claims.

### C. *Defendants' Assertions of Immunity*

**\*7** The Supervisors assert that they are entitled (1) to absolute immunity because removal of Rob's Automotive was a legislative act; or at least (2) to qualified immunity because their conduct did not violate clearly established constitutional rights. The Township argues that sovereign immunity shields it from suit. Because summary judgment will be granted in favor of Defendants on the substantive due process, equal protection, breach of contract and tortious interference with contract claims, the court need only address immunity from suit on the procedural due process claim.

### 1. Absolute Immunity

It is generally understood that local government bodies are given a combination of proprietary, managerial and legislative powers. *Ryan v. Burlington County,* 889 F.2d 1286, 1290 (3d Cir.1989). However, members of such bodies enjoy absolute immunity only with respect to the legislative powers delegated to them by the state legislature. *Id.* (citing *Aitchison,* 708 F.2d 96; *Donivan v. Dallastown Borough,* 835 F.2d 486 (3d Cir.1987)).

For legislative immunity to apply, the relevant act must: (1) be legislative in character, i.e., an act involving a policy making decision of a general scope; and (2) accord with constitutionally accepted procedures of enacting legislation. *Id.* at 1290-91.

The act of removing Rob's Automotive from the towing list is clearly not legislative in nature. It did not affect any tower except for Rob's Automotive, and thus cannot be said to involve a policy making decision of general scope. *See id.* at 1291 (stating

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 8

Not Reported in F.Supp.2d, 2001 WL 111611 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

that "[w]here the decision affects a small number or a single individual, the legislative power is not implicated, and the act takes on the nature of administration"). Accordingly, the Supervisors are not entitled to absolute immunity.

### 2. Qualified Immunity

**\*8** Governmental officials performing discretionary functions are generally shielded from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Sherwood v. Mulvihill,* 113 F.3d 396, 398-99 (3d Cir.1997). Officials who reasonably but mistakenly conclude that their conduct comports with constitutional requirements are entitled to immunity. *Sharrar v. Felsing,* 128 F.3d 810, 826 (3d Cir.1997) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)).

The court concludes that the Supervisors cannot avail themselves of the defense of qualified immunity. In so holding, the court finds the reasoning of *Pritchett v. Alford* instructive. *Pritchett,* 973 F.2d 307. In *Pritchett,* the Fourth Circuit addressed the almost identical situation of a local governmental official removing a tower from a government towing list, and began its analysis of qualified immunity by stating that:

any competent official in his position should know that before state created property rights may be cut off by officials such as he, their owner must, to the extent possible, be given, at a minimum, notice and an opportunity to be heard why they should not be; that such property right can exist not only in land and personalty, but in government-provided benefits firmly enough grounded in law to constitute entitlements rather than mere expectations or desires; and that any such benefits having economic value may therefore constitute property rights subject to procedural due process protections.

*Id.* at 317. The court went on to reject the defendant's argument that even if the state-created benefit of being on the towing list is a protected

property right under these principles, that exact point was not established at the time of the due process violation. *Id.* (noting that soon after violation, at least two federal courts specifically recognized property right in being on state-prescribed wrecker service list). In doing so, it noted that a specific prior adjudication of a right is not necessary to make it "clearly established" for qualified immunity purposes. *Id.* Thus, the court stated that:any reasonably competent official in [the defendant's] position charged, as they would be, with knowing the general due process principles above outlined, must also be charged with making the obvious application of those principles to the facts of this case. That being on the list was a benefit having economic value was manifest.... That being on it by virtue of this state regulatory regime insured that it was a legally enforceable entitlement rather than a mere unilateral expectation was also manifest to any reasonably competent official charged with knowledge, as they must be, of the regulatory regime they were required to enforce.

*Id.* The court concluded, as a matter of law, that the defendant was not entitled to qualified immunity. *Id.* at 318.

**\*9** In the instant case, the Supervisors must also be charged with knowledge of these general due process principles and the ability to apply them to the circumstances surrounding the removal of Rob's Automotive from the towing list. Furthermore, at the time of the removal of Rob's Automotive from the list, a number of courts had specifically recognized that being on a towing list or "wrecker list" created pursuant to state or local law is a protected property right under established due process principles. *Crownhart,* 1992 WL 332298, at \*2-3; *Pritchett,* 973 F.2d at 317; *Abercrombie,* 896 F.2d at 1232; *Gregg,* 732 F.Supp. at 853; *Henson,* 559 N.Y.S.2d at 1066. Thus, Rob's Automotive's right to due procedures before removal from the towing list was a clearly established right of which any official in the position of the Supervisors would have known. Accordingly, the Supervisors are not entitled to qualified immunity.

### 3. Sovereign Immunity

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 9

Not Reported in F.Supp.2d, 2001 WL 111611 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

The Township asserts that the Pennsylvania Political Subdivision Tort Claims Act ("Tort Claims Act") provides no exception for the act complained of in this case. 42 Pa.C.S.A. § 8501 *et seq.* This argument has no merit if it is asserted as a defense to the due process claim.

Pennsylvania's Tort claims act is simply irrelevant to the Township's liability under § 1983. First, a municipal corporation cannot be immunized from § 1983 liability by state law. *Howlett v. Rose,* 496 U.S. 356, 376 & 383, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990). Second, a local government can be sued under § 1983 if the action that is alleged to be unconstitutional implements "a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The action of removing Rob's Automotive from the towing list clearly constitutes a decision officially adopted by the Township's officers. Accordingly, the Township is not entitled to sovereign immunity.

Summary judgment will be entered in favor of Rob's Automotive against the Township and the Supervisors on the procedural due process claim.

### D. *Punitive Damages*

Punitive and exemplary damages are not available under § 1983 against a municipality or against local officials in their official capacity. *City of Newport v. Fact Concerts,* 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Agresta v. Good,* 797 F.Supp. 399, 410 (E.D.Pa.1992). Thus, Defendants' motion will be granted to the extent that it seeks to preclude punitive damages against the Township and the Supervisors in their official capacity.

Punitive damages are available against a defendant in his individual capacity. *Agresta,* 797 F.Supp. at 410 (citing *Smith v. Wade,* 461 U.S. 30, 51, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)). However, punitive damages must be reserved for cases in which the defendant's conduct amounts to something more than a violation justifying compensatory damages or injunctive relief. *Keenan*

*v. Philadelphia,* 983 F.2d 459, 470 (3d Cir.1992); *Cochetti v. Desmond,* 572 F.2d 102, 106 (3d Cir.1973). Punitive damages are available in a § 1983 case only in special circumstances, such as when the defendant's conduct amounts to reckless or callous disregard of the federally guaranteed rights of others. *Savarese v. Agriss,* 883 F.2d 1194, 1203-05 (3d Cir.1989). It is not necessary that the conduct be intentional or motivated by an evil motive. *Id.* at 1204.

**\*10** Although it appears to the court that evidence weighs against an award of punitive damages, because it has been demonstrated that the Supervisor Defendants violated a clearly established constitutional right that reasonable officials in their position should have known, there is a genuine issue of material fact as to whether these defendants acted with reckless or callous disregard to the federally protected rights of Rob's Automotive. Accordingly, Defendants' motion will be denied to the extent that it seeks summary judgment on the issue of the Supervisors' individual liability for punitive damages.

### IV. *CONCLUSION*

For the reasons set forth above, summary judgment will be entered: (1) in favor of all Defendants on all claims asserted by plaintiff Leipziger; (2) in favor of defendant Bergman on all counts; (3) in favor of the Township and Supervisors and against Rob's Automotive on the substantive due process, equal protection, breach of contract and tortious interference with contract claims; (4) in favor of Rob's Automotive and against the Township and the Supervisors on the procedural due process claim; (5) in favor of the Township and against Rob's Automotive on the punitive damages claim; and (6) in favor of the Supervisors and against Rob's Automotive on the punitive damages claim to the extent that it is asserted against the Supervisors in their official capacity. Defendants' motion will be denied to the extent that it seeks summary judgment in favor of the Supervisors, in their individual capacities, on the punitive damages claim. The claims remaining to be litigated are an assessment of compensatory damages against the Township and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 10

Not Reported in F.Supp.2d, 2001 WL 111611 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

the Supervisors for the due process violation, and consideration of Rob's Automotive's punitive damages claim against the Supervisors.

An appropriate Order follows.

### ORDER

AND NOW, TO WIT, this 1st day of February, 2001, upon consideration of defendants the Township of Falls, *et al.*'s Motion to Dismiss Plaintiffs' Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) or, Alternatively, Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56; plaintiffs Robert Leipziger's and Rob's Automotive & Collision Center, Inc.'s Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56; the memoranda in support of said motions and the responses thereto, IT IS ORDERED that summary judgment is entered:

1. in favor of all defendants on all claims asserted by plaintiff Leipziger;

**\*11** 2. in favor of defendant Wayne Bergman on all counts;

3. in favor of defendants Township of Falls, Phillip A. Szupka, William Dayton, Richard Otto and James P. Rhein and against Rob's Automotive & Collision Center, Inc. on the substantive due process, equal protection, breach of contract and tortious interference with contract claims;

4. in favor of plaintiff Rob's Automotive and against defendants Township of Falls, Phillip A. Szupka, William Dayton, Richard Otto and James P. Rhein on the procedural due process claim; and

5. in favor of defendant Township of Falls and, to the extent that they are sued in their official capacities, defendants Szupka, Dayton, Otto and Rhein, and against plaintiff Rob's Automotive on the punitive damages claim.

IT IS FURTHER ORDERED that Defendants' motion is DENIED to the extent that it seeks

summary judgment in favor of defendants Szupka, Dayton, Otto and Rhein, in their individual capacities, on the punitive damages claim.

E.D.Pa.,2001.
Leipziger v. Township of Falls
Not Reported in F.Supp.2d, 2001 WL 111611 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:00CV01147 (Docket) (Mar. 03, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT S

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CORPORAL TRINIDAD NAVARRO,      :
                               :
            Plaintiff,          :        C.A. No. 05-565 GMS
                               :
        v.                     :        JURY TRIAL DEMANDED
                               :
CHRISTOPHER A. COONS,          :
individually and in his official capacity;  :
GUY H. SAPP, individually and in his        :
official capacity; and NEW CASTLE           :
COUNTY, a municipal corporation,            :
                               :
           Defendants.         :

## PLAINTIFF'S ANSWERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF TRINIDAD NAVARRO

Plaintiff, Trinidad Navarro, by and through his undersigned counsel, hereby propounds the following Answers to Defendant's First Set of Interrogatories, pursuant to Federal Rule of Civil Procedure 33.

## INTERROGATORIES

1.    Identify all persons who saw, heard or in any other matter perceived or witnessed any of the facts upon which you base your claims for liability or damages, and each person known to Plaintiff who has knowledge of any additional fact(s) (not otherwise addressed in the responses to the above) upon which Plaintiff will rely at trial or which otherwise pertain to this litigation and for each person identified state the person's full name and present or last-known address and telephone number; identify and describe with particularity the subject-matter about which the person has knowledge; identify all documents in the person's possession, custody or control which are known to

1

-Alison Levine-

9.    Describe in detail the conversation you had with Cris Barrish, a reporter for The News Journal, referred to in paragraph 18 of the Complaint, including, but not limited to the date and time of the call, where you received the call, the telephone number of the telephone on which you received the call, the context of the conversation, the length of the conversation, and state whether the conversation was recorded.

**ANSWER:**

**The conversation took place on June 26th or 27th in the morning. Cris Barrish called or paged Plaintiff. Plaintiff had the conversation in his office and it was not recorded. The call took place on the following telephone number 395-8005.  Cris wanted to talk about the initials "D.M" which were a question in the indictment. Cris called to say that he knew that the initials stood for "Dave McCallister" The conversation lasted less than five minutes.**

10.    Describe in detail all conversations you had with Allison Levine regarding any matters contained in the Complaint, including but not limited to the date, time and place of the conversation, if by telephone, the telephone number where you placed or received the call, the context of the conversation, the length of the conversation, and state whether the conversation was recorded.

**ANSWER:**

**On June 29, 2005 at 10:00 a.m., Plaintiff met with Allison Levine at the Dunkin Donuts Store on Route 13 in Wilmington.  They met to discuss his concerns**