# EXHIBIT A

1   retaliated against, that he was pushing for his promotion,
2   basically, for himself and a group of others.
3              Now, we believe we have a good defense as a
4   matter of law on that, that complaints at a union meeting
5   about your job position is not protected public speech.  And
6   in fact, we were maintaining that position even before
7   Garcetti, based upon other Supreme Court precedent.
8              But still, it is only prudent in the discovery
9   phase of the case -- the motion deadline is fast upon us --
10  but it's only prudent in the discovery phase of a case to
11  track down the plaintiff's version.  And it was particularly
12  remarkable here because of the five or six people who signed
13  the May memo, three of them got promoted.  Of the three
14  people who signed the July memo, one got promoted.
15             So I suppose the plaintiff is going to say and
16  we were expecting maybe the witnesses would say that, well,
17  he was especially outspoken.  He was exceptionally critical
18  of the administration.  So to try to figure that out, you
19  know, to get to the bottom of that, we put a subpoena out
20  for Sergeant Schlecker.  And at the deposition at Page
21  135-136, he says, You talked to Rob Schlecker?
22             And the answer was, Rob Schlecker -- now this is
23  the deponent -- is or was at the time vice president of the
24  FOP.  He and I spoke on several occasions during April, May,
25  June, sort of the July time period, about my dissatisfaction

```
 1    retaliated against me.  And I don't think it's fair that we
 2    would have to go to trial only accepting his version of
 3    those conversations.
 4              Now, we have got somebody who is a witness.  I
 5    read the passage from the deposition, at Page 135 and 36,
 6    where he said he spoke on several occasions to Schlecker
 7    during April, May, June and July about his dissatisfaction.
 8    And Schlecker opined that you were retaliated against.  So
 9    both because Schlecker is a witness and because he was
10    present -- this is the first I have heard he wasn't at the
11    first meeting.  But he was at the second meeting.  I think
12    he is a relevant witness.  We didn't create it this way.
13              If in every lawsuit -- and I don't represent the
14    County.  But if in every lawsuit one started to see that the
15    first move by the County Law Department was to put a
16    subpoena out for union officials to start looking through
17    their records, you know, then you would have something.  Or
18    then Mr. Stoner would have something and Your Honor could
19    tee off on that type of litigating pattern.
20              But this was at a deposition in late May.
21    Navarro said -- in his interrogatories, he identifies
22    Schlecker as one of the people he spoke with.  Following up
23    at the deposition in late May, he spoke several times with
24    Schlecker throughout the interval.  I think it is relevant
25    what he said -- bearing in mind, I don't want to argue so
```

```
 1    forcefully that I cloud the fact that under Garcetti I don't
 2    think any of this is public speech.  But if it is going to
 3    be what this case is tried about, I think we are entitled to
 4    get another point of view, another witness other than the
 5    plaintiff himself about those meetings.
 6              THE COURT:  Mr. Stoner, do you want to react to
 7    that?
 8              MR. STONER:  Yes, sir.
 9              As Mr. Goddess told you, Mr. Schlecker was one
10    of 80-some people that were identified by Mr. Navarro as
11    persons who might have knowledge of the incidents.  Reading
12    his deposition, many of those people he has identified as
13    people that he thinks might have information about it.  What
14    Mr. Schlecker would be probably only able to say is in the
15    context of what Mr. Navarro said in relation to asking for
16    an attorney, not in the sense of what he said that was
17    critical of the administration or somehow his free speech.
18    I just don't see any scenario where the FOP could be accused
19    of restricting his free speech.
20              If the issue is the speech that he made to the
21    FOP at the rules committee meeting was somehow transmitted
22    back to the administration and the administration used that,
23    that is not the allegation that is made by the plaintiff in
24    the complaint.
25              Mr. Martin is here on the line.  I don't know
```