IN THE UNITED STATES DISTIRCT COURT
FOR THE DISTRICT OF DELEWARE

| | |
|---|---|
| CORPORAL TRINIDAD NAVARRO, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CHRISTOPHER A. COONS, ) <br> Individually and in his official capacity; ) <br> GUY H. SAPP, individually and in his ) <br> official capacity; and NEW CASTLE ) <br> COUNTY, a municipal corporation, ) <br> ) <br> Defendant. ) | C.A. No. 05-565-(GMS) <br><br> JURY TRIAL DEMANDED |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION TO
<u>AMEND COMPLAINT</u>**

Plaintiff responds to Defendants' opposition to Plaintiff's motion for leave to amend his Complaint and renews his motion for leave to amend his Complaint for the following reasons:

1. In accordance with this Court's Scheduling Order of December 8, 2005, all motions to amend pleadings were to be filed on or before January 30, 2006. (Def. Mot. at Page1).

2. On May 30, 2006, the U.S. Supreme Court handed down its opinion in *Garcetti*, which First Amendment scholars agree unexpectedly upset a well-established area of the law: First Amendment jurisprudence. That landmark opinion occurred no less than four months after the date to amend had passed, thus making it impossible for undersigned counsel to respond in a timely manner.

3. *Garcetti* is a landmark opinion that created new legal arguments for Defendants that Plaintiff had no reason to anticipate. "Undeniably, *Garcetti* was significant to Defendants' motion." (Def. Mot. at Page 2).

4. Undersigned counsel agreed with defense counsel and with the Court's approval, thus the discovery deadline was moved from May 1, 2006 to July 1, 2006. The original deadline for dispositive motions of May 16, 2006 would have occurred *before* the *Garcetti* opinion. (Def. Mot. at Page 1). However, the discovery extension allowed Defendant to take advantage of the *then-pending Garcetti* opinion, which otherwise would not have been available at the time set for the filing of dispositive motions.

5. When undersigned counsel agreed to jointly seek an extension on April 11, 2006, he was unaware that the newly constituted U.S. Supreme Court was in the process of deciding *Garcetti* and had no reason to believe he would suffer any prejudice from this decision. He agreed to the extension willingly because he was convinced it was necessary in order to allow both parties to conduct proper discovery, and to facilitate a fair trial on the merits.

6. In support of their opposition to Plaintiff's motion for leave to amend, Defendants cite *Heyl & Patterson, Int'l Inc. v. F.D. Rich Housing of the Virgin Islands Inc.*, correctly asserting that "undue prejudice is the touchstone for denial of leave to amend." *Heyl & Patterson, Int'l Inc. v. F.D. Rich Housing of the Virgin Islands Inc.*, 663 F.2d 419, 425 (3d Cir. 1981)(quoting) *Cornell and Co., Inc. v. Occupational Safety and Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)). In *Heyl & Patterson, Int'l, Inc.*, the Appellate Court upheld the lower court decision to allow a party to amend his complaint at *trial* where they made legal arguments not contained in the complaint and no

formal request for leave to amend was ever made. *Heyl & Patterson, Int'l Inc.*, 663 F.2d 419 (3d Cir. 1981). In reaching its conclusion, the Court stated, "in the absence of substantial or undue prejudice denial of out of time leave to amend must be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure deficiency by amendment previously allowed or futility of amendment." *Id.* at 427. Undersigned counsel has not acted with bad faith or dilatory motives and the proposed amendment is readily explainable by the dramatic change that occurred in the law after the scheduled period to amend had concluded. Furthermore, undersigned counsel's proposed amendment sounding in political not private association as Defendants' analysis suggests, is not futile.

7. Even though Defendants freely admit the importance of *Garcetti* to their case, they contend that Plaintiff has provided no explanation for this delay in amending the Complaint. (Def. Mot. at Page 2).

8. In support of his motion for leave to amend, undersigned counsel cited *Teamsters Pension Trust Fund v. John Tinney Delivery Services Inc.*, 732 F.2d 319 (3d Cir. 1984), for the proposition that a change in the applicable law is grounds for a court to grant leave to amend. *Teamsters Pension* is factually different in that it involved a request for leave to amend at a later stage in the proceeding than the current matter, and the change in law created a remedy not available at the time of the pleadings. *Id.* The change in law at issue in this case is of much greater importance than in *Teamsters Pension*, in that it creates an additional burden for the moving party that, like the remedy at issue in *Teamsters Pension*, was not applicable at the time of filing. While there is no doubt that a claim sounding in political association was available to undersigned counsel

3

at the time of filing, his reason for delay in pleading it is readily explainable and not the product of undue delay, bad faith or dilatory motives as Defendants suggest. (Def. Mot. at Page 5). Undersigned counsel's initial decision to limit his Complaint to free speech was grounded in a good faith belief that this area of law was well-established and stable. As this Court is well aware, the U.S. Supreme Court's position had remained virtually unchanged from 1968 until recently. See *Pickering v. Board of Ed. Of Tp. High School Dist. 205, Will County, Illinois,* 391 U.S. 563 (1968). Based on the then-current climate of First Amendment jurisprudence, undersigned counsel believed that pleading in the alternative was not necessary in view of the stability of the First Amendment jurisprudence. However, in light of the change and uncertainty precipitated by *Garcetti,* combined with Defendants' reliance on *Garcetti* in their Summary Judgment Motion in this matter, undersigned counsel no longer believes that pleading in the alternative is unnecessary. To deny undersigned counsel's request for leave to amend would be to punish him for acting with respect for the limited resources of this Court and Defendants. Finally, this Court is not without precedent to suggest granting Plaintiff leave to amend his Complaint would not result in undue prejudice. In *Ryan v. Shawnee Mission Unified School District*, No. 05-2213-JWL, 2006 WL 1888326 (D. Kan. July 7, 2006), the Court held it would not be unduly prejudicial to grant plaintiff leave to amend her complaint to include relief she had not previously requested but had been available to her, where her case would otherwise be dismissed as a result of *Garcetti*.

9. Defendants incorrectly assert that Plaintiff's free speech claim would fail regardless of *Garcetti* because Plaintiff's speech does not address a matter of public concern. (Def. Mot. at Page 2). Plaintiff's speech at issue between him and Allison

4

Taylor Levine involved his profession of loyalty to his chief, a political rival of Defendants and his refusal to "assist her or the administration in doing any thing to ruin Dave McAllister's reputation." (Def. Sum. Jud. Mot. at Page 20). Speech that touches on a matter of public concern has been defined as any speech relating "to any matter of political, social or other concern to the community". *Feldman v. Philadelphia Housing Authorotiy*, 43 F.3d 823, 829 (3d Cir. 1994). Additionally "speech may involve a matter of public concern if it attempts to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials". See *Baldassare v. New Jersey*, 250 F.3d 188,194 (3d Cir. 2001). Plaintiff's speech falls within this definition for several reasons. The subject of the speech is the Defendants who are government officials and their plans to discredit a political rival, Chief McAllister, who was also a government official. The Defendants' intentions to use the power of their office to coerce cooperation from Plaintiff in their ultimate conspiracy against the chief is an *extraordinary* example of political wrongdoing which is a matter of great public concern.

10. Defendants contend that undersigned counsel did not act diligently in his preparation to respond to the *Garcetti* opinion. To support this proposition, Defendants contend that undersigned counsel was effectively put on notice as to the existence of and the Defendants intent to rely on *Garcetti* when the case was briefly mentioned by Defendants during the July 7, 2006 teleconference. The focus of the July 7, 2006 teleconference was a discovery issue which was not germane to Plaintiff's case and was not the proper forum to address this issue. Furthermore, to suggest that undersigned counsel was not diligent because he did not pick up on this obscure reference is indefensible.

11. Defendants further contend that undersigned counsel did not act diligently in conducting his research, and contend that he had sufficient time to respond to the *Garcetti* opinion. (Def. Mot. at Page5). *Garcetti* was handed down on May 30, 2006. In June, undersigned counsel was advised by Defendants' counsel that the Defendants may not file a Summary Judgment Motion. Defendants' motion for summary judgment was filed July 17, 2006, 48 days after the *Garcetti* opinion was published. Defendants are critical of undersigned counsel's ability to respond to *Garcetti*. Plaintiff's response was due July 31, 2006. On July 27, 2006, after researching the effect of the *Garcetti* opinion and Defendant's Motion for Summary Judgment, undersigned counsel contacted defense counsel regarding Plaintiff's prospective Motion for Leave to Amend Complaint. Plaintiff respectfully represents that he was not dilatory in response to the change in the law as a result of *Garcetti*.

12. Defendants have not met their burden of showing that they would be prejudiced if Plaintiff is granted leave to amend. *Heyl & Patterson, Int'l Inc., 663 F.2d 419*. Defendants must show that they would be "unfairly disadvantaged or deprived of an opportunity to present facts or evidence which [they] would have offered had amendments been timely." *Id. at 429*. Defendants argue that they will have to endure a delay and expense to conduct further discovery in order to respond to the amendment of the Complaint. (Def. Mot. at Page 5). Undersigned counsel concedes that discovery may have to be resumed. While this may be undesirable to Defendants, they will not be prevented from presenting *any* defense or argument they desire. Furthermore, any expense and delay pale in comparison to the rights of Plaintiff which are at stake. The

constitutional issues at stake in this proceeding weigh in favor of the Court's concern for a trial on the merits.

13. Defendants' argument that amendment of the Complaint would be futile is misguided. (Def. Mot. at Page 5). Defendants cite, B*oard of Directors of Rotary Int'l v. Rotary Club of Durarte,* 481 U.S. 537, 544 (1987), to support this proposition. This case does not involve political association, but the right of private association, which is significantly different from the right of political association as proposed by undersigned counsel. *Id.* Defendants' analysis of private association in this case is correct. However, undersigned counsel willingly concedes that Plaintiff did not have an intimate and personal relationship with his chief sufficient to create a constitutionally protected right of *private* association. (Def. Mot. at Page 6).

14. Accordingly, the U.S. Supreme Court has acknowledged the protections of the First Amendment as they apply to government employee rights to freedom of political association. See generally *Elrod etc., et al. v. Burns,* 427 U.S. 347 (1976). This Court relied on those same cases when it had occasion to address this issue holding "the Supreme Court's decision in *Elrod v. Burns* set forth the general rule that a public employer cannot terminate public employees for political reason because to do so would violate the first amendment." See *Scott v. Sills,* 134 F.Supp.2d 599 (D. Del. 2001) (*discussing Elrod,* 427 U.S. 347). While Plaintiff was not terminated as in *Scott* and *Elrod,* termination is not necessary to invoke this constitutional privilege. "Conditions on public benefits, in the form of jobs or otherwise, which dampen the exercise generally of First Amendment rights, however slight the inducement to the individual to forsake those rights are prohibited" *Elrod,* 427 U.S. at 353. Rather, Plaintiff need only show that his

7

receipt of a "public benefit" was "conditioned on his forsaking his political allegiance". *Id.* at 351. The "public benefit" at issue in the instance case is the promotion to sergeant for which Plaintiff was qualified. *Id.* He did not receive this benefit, however, because he did not abide by the "condition" imposed by Defendants "forsaking his political allegiance" to then Chief McAllister. *Id.* To meet his burden, Plaintiff need only show that his political association was "a substantial and motivating factor" in the denial of his receipt of a public benefit. *Id.* Plaintiff has met his burden by demonstrating that he was qualified for this position and additionally Defendants' threats to him suggest his political affiliation was a substantial and motivating factor in their decision to deny his promotion. While Defendants may rebut Plaintiff's case by showing that the denial of benefits would have occurred regardless of Plaintiff's political association or that his position was one where political affiliation was an important consideration, they have elected not to invoke these defenses. *Id.*

15. In conclusion, Plaintiff will suffer undue prejudice and hardship if leave to amend his Complaint is not granted. Doing so in this case would place the technicalities of pleadings above the more worthy goal of deciding the case on the merits. The constitutional issues at stake in this case are critical to Plaintiff and the citizens of New Castle County.

WHEREFORE, the Plaintiff respectfully requests leave of the Court to amend the Complaint in this matter.

MARGOLIS EDELSTEIN

/s/Jeffrey K. Martin
Jeffrey K. Martin, Esquire (#2407)
1509 Gilpin Avenue
Wilmington, Delaware 19806
(302) 777-4680 phone
(302) 777-4682 facsimile
jmartin@margolisedelstein.com

Attorney for Plaintiff

Dated: August 21, 2006