IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CORPORAL TRINIDAD NAVARRO, : | |
| : | |
| Plaintiff, : | C.A. No. 05-565 GMS |
| : | |
| v. : | JURY TRIAL DEMANDED |
| : | |
| CHRISTOPHER A. COONS, : | |
| individually and in his official capacity; : | |
| GUY H. SAPP, individually and in his : | |
| official capacity; and NEW CASTLE : | |
| COUNTY, a municipal corporation, : | |
| : | |
| Defendants. : | |

## JOINT PROPOSED FINAL PRETRIAL ORDER[1]

This matter having come before the court at a pretrial conference held pursuant to Fed.R.Civ.P. ("Rule") 16, and Jeffrey K. Martin, Esquire of Margolis Edelstein, 1509 Gilpin Avenue, Wilmington, DE, 19806, (302) 777-4680, having appeared as counsel for Plaintiff and Megan Sanfrancesco, Esquire, Michelle D. Allen, Esquire and Judith A. Hildick, Esquire 87 Reads Way, New Castle, DE, 19720, (302) 395-5130, having appeared as counsel for Defendant New Castle County, and Jeffrey Goddess, Esquire 919 Market Street, Suite 1401, Wilmington, DE, 19899, (302) 656-4433, having appeared as counsel for Defendants Christopher A. Coons and Guy H. Sapp, the following actions were taken:

(1)    **Plaintiff:** This is an action for violation of First Amendment rights as to freedom of speech and the freedom of political association.[2] Jurisdiction is founded on the existence of a

---

[1] Defendants reserve the right to supplement the Pretrial Order prior to and at the Pretrial Conference due to insufficient time to review and respond to Plaintiff's portion, which, although due on September 23, 2006, was not received until October 20, 2006 at 4:41 p.m.
[2] Defendants object to any references to Plaintiff's claims regarding political association as indicated in this Pretrial Order, as they are not part of the original claim and stem solely from Plaintiff's Motion to Amend the Complaint. That motion is currently pending decision.

question arising under federal statutes. This action arises under 42 U.S.C. §1983 and the First Amendment to the Constitution of the United States. The jurisdiction of this Court is evoked to secure protection and redress deprivation of rights secured by Federal law, which prohibits adverse action against employees for exercising their federally protected rights to freedom of speech and freedom of political association and on the basis of retaliation as a result of the exercise of federally protected rights.

**Defendants:** This is an action for First Amendment free speech retaliation. The jurisdiction of the court is involved under 42 U.S.C. § 1983. Jurisdiction is not disputed.

(2) The following stipulations and statements were submitted and are attached to and made a part of this Order.

(a) <u>Uncontested Facts</u>

**Plaintiff:** 1. Plaintiff began employment with NCC on or around September 30, 1991. He thereafter entered the Police Academy in or around January, 1992 and began working patrol in or around May, 1992. Plaintiff has been employed with NCC for approximately fourteen (14) years.

2. Plaintiff worked in patrol until October 1998 when he was selected for the Public Information Officer ("PIO") position. Plaintiff currently is the PIO for NCC's Police Department.

3. In the fall of 2004, Plaintiff tested for the position of police Sergeant with NCC. The testing process, administered by NCC's Human Resources Department, consists of a written examination, an oral board style interview and the addition of seniority points. The written test and oral interview each represent 47.5% of the overall score with seniority points

accounting for 5% of the overall score. The oral interview panel for the fall 2004 testing consisted of Lieutenant Wendy Hudson, Lieutenant Robert Schreiber, and Captain Elmer Setting.

4. At the completion of the testing process, a certified ranking list was established to rank each officer's overall score. Plaintiff received the rank of twelve (12), meaning eleven (11) officers scored higher than him and approximately seventy-five (75) officers scored lower than Plaintiff.

5. The NCC Police Directives state that the Chief of Police has the discretion to choose whomever he/she desires for promotion, as long as the officer is ranked as one (1) of the top five (5) candidates on the certified listing. On or about December 12, 2004, the Chief of Police, Colonel David F. McAllister, (hereinafter "McAllister") promoted the following officers from the certified list: Jamie Dolan, Michael Donovan, Dominique Gregory, Joseph Merriggi, Wayne Pennington, and Robert Schlecker. At that time, McAllister filled four vacant Sergeant positions and over-promoted two additional Sergeants to fulfill management needs.

6. As a result of McAllister filling the four (4) budgeted positions and the two (2) additional promotions, the NCC had a compliment of thirty-eight (38) Sergeants, two (2) more than the thirty-six (36) that were budgeted for by the New Castle County Council (hereinafter "Council") for fiscal year 2004. All of the officers who were promoted by McAllister were in the top five on the certified listing, but were not always in the first position.

7. In the spring of 2005, McAllister submitted the police budget to the Council and the County Executive. In the budget, McAllister requested two (2) additional Sergeant positions for fiscal year 2005 which began July 1, 2005. In May 2005, the budget was approved by Council and the County Executive authorizing a total of thirty-eight (38) Sergeant positions.

8. Since the last promotions in December 2004, three (3) Sergeants terminated their employment with the Defendant, making available three (3) vacant positions. In the beginning of May 2005.

9. On or about May 16, 2005, Plaintiff and the above-listed officers met with McAllister and Sapp. During the meeting, McAllister and Sapp indicated that the Police Department had only one vacant, budgeted Sergeant position. They indicated the position would not be filled until the new fiscal year due to a $500,000.00 operating deficit. McAllister further advised he sought two (2) additional Sergeant positions for the upcoming fiscal year. Sapp asked the Sergeant candidates to be patient and wait until the new fiscal year, at which time they would promote three (3) individuals to the rank of Sergeant.

10. On May 20, 2005, the FOP submitted a memorandum to McAllister requesting that one (1) Sergeant position be filled immediately. The memo further stated, "if the two Sergeant positions are approved for the next fiscal year, we ask that those positions be filled, without a Chief's interview."

11. On June 27, 2005, McAllister submitted a memorandum to Sapp formally requesting the three (3) positions be released to him so that he could exercise his authority to promote three (3) eligible officers to the rank of Sergeant.

12. Upon information and belief, McAllister met with Sapp on two separate occasions to discuss promotions. McAllister advised Sapp he intended to promote a black male, a Hispanic male, and a female from the current certified list. Plaintiff was the only Hispanic male on the certified list eligible for promotion.

13. On June 26th and/or June 27th, Plaintiff received an unpleasant telephone call from Ms. Allison Levine (hereinafter "Levine"), County Executive Director of

Communications. Levine angrily inquired about the telephone call from Barrish and reminded Plaintiff that he was required to contact her regarding any media inquiries relating to the pending Gordon and Freebery indictment. Plaintiff informed Levine that she was not in his chain of command, therefore he was not required to notify her of the telephone call. She informed Plaintiff that the incident was unacceptable and indicated that Plaintiff had several bosses who were above McAllister.

14. Also during the telephone conversation, Levine asked Plaintiff about an upcoming article featuring McAllister in the *Delaware Today* magazine. Plaintiff advised Levine that he, in fact, knew about the article and explained to her his limited involvement in the story.

15. On or about June 29, 2005, Plaintiff met with Levine. She candidly informed Plaintiff that he was perceived as a person who could not be trusted due to his loyalties to McAllister. She further stated that he [Plaintiff] was not liked by the County Executive or his administration. She stated that, Plaintiff was on the losing team and his career would be harmed if he [Plaintiff] continued to stay on the "McAllister team." Levine also stated that "[Plaintiff] would have a long and difficult seven years ahead of him assuming Executive Coons seeks re-election." Levine indicated she believed McAllister would soon be arrested for the alleged DELJIS violations and indicated if he went down, Plaintiff would go down with him.

16. Plaintiff told Levine that he was tired of the politics associated with his position and commented, "I want out of it". Levine's response was, "well, you still have six years until you can retire." Plaintiff then clarified, that he did not want to leave the police department, but possibly wanted out of the PIO position. Levine suggested that Plaintiff seek a job transfer to another job within the County rather than stay as the PIO to avoid being labeled as

"not on Chris' team." Plaintiff understood this suggestion to get away from McAllister and be loyal to Coons, not McAllister.

17.  Levine went on to say that she heard Plaintiff had been the PIO for so many years, because "you do as you are told to do." She then advised Plaintiff that she had heard rumors regarding Plaintiff's involvement in an investigation relating to a murder that occurred in Las Vegas, Nevada. Plaintiff advised Levine that she had gotten her rumors crossed and indicated Plaintiff did not personally know anyone involved in the murder investigation. The allegation was that Plaintiff flew to Las Vegas, Nevada to influence the investigation regarding Lisa D. Moseley. Plaintiff denied having done so.

18.  During this conversation with Levine, Plaintiff and she discussed his possible promotion to Sergeant. Plaintiff advised Levine that he had heard the requisition for Sergeants was going to be withheld by the administration essentially negating the possibility of Plaintiff's promotion. Levine replied, "well, that's how politics work." Plaintiff then told her, politics should not be involved in any promotional opportunity. Levine responded, "well, Chris [referring to County Executive Coons] butters the bread."

19.  At the end of the conversation, Levine stated she had several candid conversations with the County Executive and advised him, "Trini is one of the few people who I can depend on to get the job done." Levine indicated that she frequently commented to the County Executive about Plaintiff's performance as the PIO. Levine stated, "I think you [Plaintiff] do an excellent job with the media dating all the way back to the days when I was a reporter at the News Journal."

20.  Based upon information and belief, the statements made by Levine to Plaintiff during the conversations set forth herein reflect statements made by Coons to Levine.

21. Later in the day, on June 29, 2005, Sapp forwarded a memorandum to McAllister stating, "I have reviewed the police department's staff requirements and determined that the need to maintain patrol officer strength is more critical than the need for Sergeants. Therefore, at this time, I will not authorize the requisitions of two of the Sergeant positions requested in your memorandum." The memorandum was forwarded to the FOP Board of Directors and the top seven (7) officers on the list.

22. On June 30, 2005, John Treadwell was promoted to the rank of Sergeant after Sapp released only one requisition. On June 30 or July 1, 2005, Sapp met with the remaining six (6) officers and apologized for making a "mistake." He said he should not have promised to make the three promotions on July 1st. Sapp, who does not have the authority to withhold police promotions, went on to say he [Sapp] might not allow any further promotions due to the police officer staffing shortage. Sapp further stated that this was his and only his decision to withhold the promotions.

23. Plaintiff specifically asked Sapp if that meant he [Sapp] would simply allow the current certified list to expire if no additional officers were hired. Sapp replied that he could not make any decisions at the present time, but mentioned the lack of a current certified list for the rank of Lieutenant. He did, however, state that he was working on a fair promotional process with the assistance of an outside agency.

**Defendants:** See Schedule (2)(a) Defendants' Stipulation of all uncontested facts (Attached hereto)[3] and stated objections to Plaintiff's uncontested facts.

    (b)    <u>Contested Issues of Fact and Law</u>

---

[3] Attached Defense Schedules correspond to the item designated on the Pretrial Order. For example, the schedule for item 2(a) of the Pretrial Order is attached as "Schedule 2(a)."

**Plaintiff:**   1.   On or about June 29, 2005, Plaintiff met with Levine. She candidly informed Plaintiff that he was perceived as a person who could not be trusted due to his loyalties to McAllister. She further stated that he [Plaintiff] was not liked by the County Executive or his administration. She stated that, Plaintiff was on the losing team and his career would be harmed if he [Plaintiff] continued to stay on the "McAllister team." Levine also stated that "[Plaintiff] would have a long and difficult seven years ahead of him assuming Executive Coons seeks re-election." Levine indicated she believed McAllister would soon be arrested for the alleged DELJIS violations and indicated if he went down, Plaintiff would go down with him.

2.   Plaintiff told Levine that he was tired of the politics associated with his position and commented, "I want out of it". Levine's response was, "well, you still have six years until you can retire." Plaintiff then clarified, that he did not want to leave the police department, but possibly wanted out of the PIO position. Levine suggested that Plaintiff seek a job transfer to another job within the County rather than stay as the PIO to avoid being labeled as "not on Chris' team." Plaintiff understood this suggestion to get away from McAllister and be loyal to Coons, not McAllister.

3.   Levine went on to say that she heard Plaintiff had been the PIO for so many years, because "you do as you are told to do." She then advised Plaintiff that she had heard rumors regarding Plaintiff's involvement in an investigation relating to a murder that occurred in Las Vegas, Nevada. Plaintiff advised Levine that she had gotten her rumors crossed and indicated Plaintiff did not personally know anyone involved in the murder investigation. The allegation was that Plaintiff flew to Las Vegas, Nevada to influence the investigation regarding Lisa D. Moseley. Plaintiff denied having done so.

4. During this conversation with Levine, Plaintiff and she discussed his possible promotion to Sergeant. Plaintiff advised Levine that he had heard the requisition for Sergeants was going to be withheld by the administration essentially negating the possibility of Plaintiff's promotion. Levine replied, "well, that's how politics work." Plaintiff then told her, politics should not be involved in any promotional opportunity. Levine responded, "well, Chris [referring to County Executive Coons] butters the bread."

5. At the end of the conversation, Levine stated she had several candid conversations with the County Executive and advised him, "Trini is one of the few people who I can depend on to get the job done." Levine indicated that she frequently commented to the County Executive about Plaintiff's performance as the PIO. Levine stated, "I think you [Plaintiff] do an excellent job with the media dating all the way back to the days when I was a reporter at the News Journal."

6. Based upon information and belief, the statements made by Levine to Plaintiff during the conversations set forth herein reflect statements made by Coons to Levine.

*Aside from what is contained above, plaintiff has also attached "Schedule 2(b), Plaintiff's Contested Issues of Fact and Law." This schedule was received immediately prior to this electronic filing, thus providing no time for meaningful defense review or comment. Upon cursory review of this document, Defendants object to this document in its entirety as it was provided at the last minute, because as it fails to comport with the Court's directives regarding pretrial orders, and because it appears to contain jury instructions.*

**Defendants:** See Schedule (2)(b) Defendants' Contested Issues of Fact and Law (Attached hereto).

(c)  Exhibits*

**Plaintiff:** See Schedule (2)(c)(1) (Attached hereto)

Plaintiff reserves the right to utilize any and all of Defendant's documents.

**Defendants:** See Schedule (2)(c) Defendants' Exhibits (Attached hereto) *Defendants reserve the right to use any exhibits identified by Plaintiff.

   (d) <u>Witnesses*</u>

**Plaintiff:** The following Individuals are employed by New Castle County, a party to this instant litigation:

(1) Christopher Coons, New Castle County Executive, a party to this instant litigation
(2) Christy Gleason, served as Public Information Officer for Christopher Coons
(3) Tom Gordon, former New Castle County Executive
(4) Lynn Howard, employed by New Castle County
(5) Allison Taylor Levine, former Public Information Officer for New Castle County
(6) Guy Sapp, Public Safety Director, New Castle County
(7) David Singleton, C.A.O. for New Castle County

The following individuals are or were employed by the New Castle County Police Department;

(8) David McAllister, former Chief of Police, New Castle County Police Department
(9) James Hedrick, Major, New Castle County Police Department
(10) Wendy Hudson, Lieutenant, New Castle County Police Department
(11) Bob Larrimore, Sergeant, New Castle County Police Department
(12) Wm. Scott McLaren, current Acting Chief of Police, New Castle County Police Department
(13) Paul Neill, Sergeant, New Castle County Police Department
(14) Bruce Pinkett, Officer, New Castle County Police Department
(15) Robert Schreiber, Lieutenant, New Castle County Police Department
(16) Elmer Setting, Captain, New Castle County Police Department
(17) Stuart Snyder, Major, New Castle County Police Department
(18) Dan Yeager, Sergeant, New Castle County Police Department

***Defendants object to witnesses not designated as "may be called" or "shall be called" pursuant to the Court's directives. Defendants also object to Plaintiff's witnesses in numbers 2, 3, 4, 10, 11, 13, 14, 15, and 17 above pursuant to F.R.E. 401 and 402.***

**Defendants:** See Schedule (2)(d) Defendants' Potential Witnesses. *Defendants reserve the right to call any witnesses identified by Plaintiff.

   (e) <u>Expert Witnesses</u>

**Plaintiff:** Not applicable.

**Defendants:** Not applicable.

      (f)    <u>Depositions to be read into evidence</u>

**Plaintiff:**  Plaintiff reserved the right in accordance with the Federal Rules of Civil Procedure to use deposition testimony at trial if a witness is unavailable to testify at trial.

***Defendants object to the extent that Plaintiff must identify anyone he believes will be unavailable for trial at this time and as to the grounds for any unavailable witness.***

**Defendants:**  At this time, Defendants are not aware of any witnesses that will be unavailable at trial. Defendants reserve the right to supplement this response should a witness become unavailable. Furthermore, Defendants reserve the right to use deposition testimony for impeachment purposes and in accordance with Federal Rules of Civil Procedure.

      (g)    <u>Special Damages</u>

**Plaintiff:**  Enter a judgment against Defendants, for compensatory damages, including lost wages, back pay,($3,546.00 per annum) pension and other benefits, for future or front pay, loss of earning capacity, emotional distress, humiliation, embarrassment and injury to his reputation; Enter judgment against Defendants for punitive damages; Issue a mandatory injunction directing Defendants to promote Plaintiff to the rank of Sergeant in the NCC Police Department; Award front pay to Plaintiff until Plaintiff can be promoted; Issue a reparative injunction directing that upon retirement, Plaintiff's pension and other benefits be calculated as if he had been promoted to rank of Sergeant as of July 2005; Issue a mandatory injunction ending the continuing illegal actions of Defendants and barring them from considering protected speech <u>or political association</u> whenever considering the promotion of any uniformed officer of the NCC Police Department; Issue a reparative injunction directing that Defendants place a signed document in Plaintiff's personnel file indicating he was qualified to be promoted to the rank of Sergeant,

effective July 2005, and that but for illegal conduct by Defendants, he would have been promoted to that rank on at least one other occasion since that date, and apologizing to Plaintiff for violating his constitutional rights; Enjoining Defendants from retaliating against Plaintiff; Award Plaintiff attorney's fees, costs, pre- and post-judgment interest for this action; and Require such other and further relief as the Court deems just and proper under the circumstances.

**Defendants:** Not applicable. However, see Defendants' objections to alleged damages as contained in Schedule (2)(b) – Defendants' Statement of Contested Issues of Fact and Law.

    (h)    <u>Waivers of abandoned claims or defenses</u>

**Plaintiff:**    Not applicable.

**Defendants:** Plaintiff has waived any and all claims as addressed in Defendants' July 17, 2006 Motion for Summary Judgment, as Plaintiff has failed to respond to same. Furthermore, Plaintiff's counsel submits in his correspondence to the Court on July 28, 2006 that the Supreme Court's decision in *Garcetti v. Ceballos,* 126 S.Ct. 1951 (2006), may limit his client's exercise of free speech. Therefore, the defendants' take the position that any and all claims have been waived.

    (i)    <u>Jury trial matters</u>

        (i)    Trial Briefs (See Defendants' Schedule (2)i(i) Trial Brief – filed separately)

        (ii)    Proposed Jury Prayers, Verdict Forms & Special Interrogatories (See Defendants' Schedule (2)i(ii) (filed separately)

            Proposed Jury Instructions and Special Interrogatories (filed separetly)

        (iii)    Proposed Voir Dire

            See Plaintiff's Voir Dire and Defendants' Schedule (2)i(iii) – Defendants' Proposed Voir Dire (attached hereto).

(j)  Non jury trial matters (N/A)

(k)  Settlement negotiations

No settlement negotiations have taken place.

(l)  Discovery

The parties have completed discovery in this matter. However, if Plaintiff's Motion to Amend the Complaint is granted, Defendants will need to conduct further discovery and will seek postponement of the trial.

(m) Motions in Limine

**Plaintiff:**   Not applicable.

**Defendant:**   See Defendants' Schedule (2)(m) (Attached hereto).

(3)  Trial of this case is expected to take 5 days.* The jury trial for this matter shall begin at 9:00 a.m. on December 4, 2006. (*This depends on the Court's rulings on the outstanding Defense Motion for Summary Judgment and Plaintiff's Motion to Amend).

(4)  Jury   X   Non-jury

(5)  Jurors:

**Plaintiff:** Plaintiff recommends that 8 jurors be selected at the commencement of the trial.

**Defendant:** Defendants recommend that 12 jurors (8 jurors and 4 alternates) be selected at the commencement of trial.

(6)  This Order will control the course of the trial and may not be amended except by consent of the parties and the court, or by order of the court to prevent manifest injustice.

(7)  Possibility of settlement of this case was considered by the parties.

| | |
|---|---|
| /s/ *Jeffrey K. Martin* | /s/ *Michele D. Allen* |
| Jeffrey K. Martin, Esq. (#2407) | Michele D. Allen (#4359) |
| *Attorney for Plaintiff Trinidad Navarro* | Assistant County Attorney |
| Margolis Edelstein | Judith A. Hildick (#3244) |
| 1509 Gilpin Avenue, Wilmington, DE 19806 | First Assistant County Attorney |
| Telephone: (302)777-4680 | Megan Sanfrancesco (#3801) |
| | First Assistant County Attorney |
| | New Castle County Law Department |
| | 87 Reads Way, New Castle, DE 19720 |
| | Telephone: (302) 395-5130 |
| | *Attorneys for New Castle County and Christopher A. Coons and Guy H. Sapp in their Official Capacities* |

> /s/ Jeffrey S. Goddess
> Jeffrey S. Goddess, Esq.(#630)
> Rosenthal, Monhait & Goddess, P.A.
> 919 Market Street, Suite 1401
> P.O. Box 1070
> Wilmington, DE 19899
> (302) 656-4433
> *Attorney for Christopher A. Coons and Guy H. Sapp in their Individual Capacities*

APPROVED:

_____
Sleet, U.S.D.J.