Defendants' Schedule 2(i)(i)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CORPORAL TRINIDAD NAVARRO, | : |
| Plaintiff, | : C.A. No. 05-565 GMS |
| v. | : JURY TRIAL DEMANDED |
| CHRISTOPHER A. COONS, individually and in his official capacity; GUY H. SAPP, individually and in his official capacity; and NEW CASTLE COUNTY, a municipal corporation, | : |
| Defendants. | : |

## DEFENDANTS' TRIAL BRIEF[1]

I.  **Nature of the Case**

This is an alleged First Amendment retaliation case, in which the Plaintiff, Trinidad Navarro ("Plaintiff"), a corporal in the New Castle County Police Department, claims that he should have been promoted to the rank of sergeant in 2005. Although not clearly stated in the Complaint, plaintiff appears to contend that the defendants retaliated against him by withholding budgeted sergeant positions resulting in his failure to be promoted. The defendants named in Complaint are New Castle County (the "County"), County Executive Christopher A. Coons ("Coons") and Guy H. Sapp ("Sapp"), the former Director of Public Safety for New Castle County. The defendants submit that plaintiff did not engage in any protected activity and furthermore deny discriminating

---

[1] Defendants reserve the right to supplement this Trial Brief prior to trial insofar as at the time of the drafting of this brief, defendants had not been provided a copy of Plaintiff's Trial Brief outlining plaintiff's theory of the case.

against plaintiff. Defendants will put forth evidence to show that plaintiff cannot prove his allegations that budgeted sergeant positions were withheld. If not otherwise precluded, the defendants will prove that the promotions made subsequent to the time of the plaintiff's allegations of retaliation went to better qualified applicants.

## II.  Facts to be Established by the Defense

Plaintiff began his employment with the County on September 30, 1991. He currently holds the position of Public Information Officer ("PIO") for the County Police Department (the "Department"). He has held that position since October 28, 1998. Defendant Coons is the County Executive of New Castle County. He was sworn in as County Executive of New Castle County and his new administration began on January 4, 2005. His duties are prescribed by statute, 9 *Del. C.* §1116, as well as by various provisions of the County Code.

After a career which included service as Chief of Police for City of Wilmington Police Department and a Directorship with the State, Defendant Sapp was appointed Director of Public Safety for New Castle County and began employment with the County on April 18, 2005. His duties and responsibilities are also prescribed by statute, New Castle County Code Section 2.05.201.[2] When Sapp began his employment with the County, the Chief Administrative Officer ("CAO")[3], David Singleton ("Singleton"), delegated, in part, his authority and responsibilities with

---

[2] On November 30, 2005, County Council passed New Castle County Ordinance No. 05-123. This ordinance established that the Police Department would be placed under the management of the Director of Public Safety. The ordinance further provides that the Chief of Police shall be supervised by the Director of Public Safety.

[3] The CAO's duties are prescribed by statute, 9 *Del. C.* § 1121, as well as by various provisions of the County Code.

respect to the Department of Public Safety to Sapp. The CAO was to be kept apprised of significant events within Department.

Since 1996, plaintiff has taken the promotional exam for the position of sergeant seven times. However, only once had he scored well enough to be eligible for a promotion, and that was on the exam which was administered in the fall of 2004. The 2004 exam consisted of a written examination and an oral board interview. Each portion of the exam was weighted 47.5 percent and 5 percent was awarded based upon seniority. On December 1, 2004, the results of the 2004 Police Sergeant's Eligible List ("the eligible list") were certified by the Chief of Police and the Chief Human Resources Officer. The eligible list was effective and valid for one year. Plaintiff was ranked twelfth on the eligible list.

Directive 34 of the County Police Directives provides that the Chief of Police or his or her designee shall perform the function for promotions below the rank of captain and that all promotions shall be made from certified individuals on current promotional lists. Section 26.03.501 of the New Castle County Code provides that the filling of a vacancy requires a requisition signed by the Chief Human Resources Officer, the Chief Financial Officer and the Chief Administrative Officer. When a personnel requisition is received, Section § 26.03.505 provides that the Chief Human Resources Officer shall certify the top five (5) names from the promotional lists. When multiple vacancies are to be filled from the same list, an additional name in rank order from the top of the list will be added.

Plaintiff has alleged that he had a telephone conversation with Cris Barrish, a reporter for the News Journal, on or about June 26 or 27, 2005 and that in that

conversation Barrish made comments relative to the initials of David McAllister, former Chief of Police for New Castle County, in the federal indictment involving former County Executive Tom Gordon and former CAO Sherry Freebery. Plaintiff alleges that he notified McAllister of this inquiry, with the intent to advise him that the integrity of the Police Department was being questioned and asserts that McAllister thereafter notified Sapp, who, according to plaintiff, notified Coons.

Plaintiff has also alleged that conversations he engaged in with the Director of Communications for New Castle County, Allison Taylor Levine ("Levine"), resulted in retaliation against him. Levine had been appointed the Director of Communications in March, 2005, and as Director of Communications, was responsible for handling all media relations for the County as well as coordinating a communications strategy. In connection with her responsibilities, Levine expected plaintiff, as she expected all of the PIO's to tell her when they had interactions with the media. Additionally, she had requested that of plaintiff individually and as part of the group of PIO's, both verbally in person, and in writing.

Specifically, Plaintiff has alleged that on or about June 26 and/or 27, 2005, he received a telephone call from Levine in which she angrily inquired about the telephone call from Barrish, inquired about an upcoming *Delaware Today* article featuring Dave McAllister and reminded plaintiff that he was to advise her of all media communications relating to the Freebery/Gordon indictment. During this conversation, plaintiff alleges that he advised Levine that he would not disparage McAllister or assist in ruining his reputation. Plaintiff has also alleged that at a personal meeting with

Levine on June 29, 2005, she informed plaintiff that he was perceived as being a person who could not be trusted due to his allegiance to McAllister.

Although plaintiff alleges that he was retaliated against due to speaking out about his allegiance to McAllister, plaintiff failed to prove any discussions he had with anyone regarding his "allegiance" to McAllister and plaintiff agrees that neither Levine nor anyone in the Coons' Administration asked plaintiff to do anything to ruin McAllister's reputation.

In Fiscal Year 2005, running from July 1, 2004 until June 30, 2005, there were 36 recommended sergeant positions. In December 2004, McAllister promoted four people to the rank of sergeant for a total of 36 Sergeants, just prior to the changing of County administrations. Additionally, McAllister traded in police officer positions in order to over promote two sergeant positions, which were also filled in December. McAllister was able to do that because under the County system, the number of sergeant positions or any other ranked positions may be changed based upon staffing needs of the Department at any time without the approval of County Council as long as the funds to pay for all positions are within the Department's budget. Council, in adopting the budget, does not actually approve a specific number of positions, in any rank; rather, Council adopts an operating budget with a total number of authorized positions and a line item amount for salaries and wages. Therefore, the number of positions in any rank is not something voted on by Council and does not become part of the Annual Operating Budget for New Castle County. Moreover, the only fiscal control is that designated by the County Code and management by the executive branch.

For the next fiscal year (FY 2006, which began July 1, 2005) 38 sergeant positions were included in the budget. The need for two additional sergeants was questionable, however, based on the fact that the budget had reduced the number of patrol officers and it was unclear how many sergeant positions the new administration was going to fill. On May 3, 2005, Detective John Treadwell, Detective L. Rob Joseph, Officer Patricia Davies, Detective Joseph Trala, Corporal Trinidad Navarro, and Officer Wendi Feeser, all of whom would have been eligible for promotion if the two additional sergeant requisitions were released, sent a memorandum to the Fraternal Order of Police (FOP) seeking assistance in determining the number of sergeant promotional opportunities. As a result of the memo, a meeting was scheduled between the requesting officers, the President of the FOP, Marge Ellwein, McAllister, and Sapp on May 16, 2005. At the meeting, Sapp who had only been on the job a month, communicated his belief that there was one opening in the Fiscal Year 2005 budget and two openings in the Fiscal Year 2006 budget. However, at that time, there was concern about making any promotions due to a deficit in the police budget, a concern County-wide about cutting costs, and a concern for the authorized strength within each of the ranks in the Department. During the meeting, McAllister stated and Sapp concurred that they intended to promote three sergeants in Fiscal Year 2006.

After the May 16, 2005 meeting, Sapp continued to hear from both internal and external sources that the need in the Police Department was for patrol officers rather than supervisors. The general populace and senior County officials had also expressed concern about the need for patrol officers. Additionally, a study was commissioned to analyze, among other things, the authorized strength of the Department and the

strength within each of the ranks of the Department and the FOP had questioned the need for the two additional sergeant positions in their May 20, 2005 memorandum. The FOP suggested that the one vacant sergeant position be filled for a total of 36 sergeants and then determine the level of service being provided and whether or not there is a need for additional sergeants. In light of all this information, Sapp's original intention regarding sergeant staffing began to change.

On June 27, 2005, McAllister sent a memo to Sapp requesting that three requisitions be released for sergeant positions. In response to this request, Sapp met with Singleton on June 29, 2005, to discuss whether or not additional requisitions for sergeant should be released. During the meeting, Sapp recommended to Singleton that the requisitions not be released because there was a greater need for patrol officers on the street than additional supervisory sergeant positions and Singleton concurred with his recommendation. Later that day, Sapp sent a memo stating that the staffing requirements of the Police Department had been reviewed, and it was determined that the need to maintain patrol strength was more critical than the need for sergeants, and that therefore, the two requisitions for the sergeants positions would not be released. At the time this decision was made and the memorandum was authored, Sapp was unaware that Plaintiff was eligible to be promoted. Additionally, Coons was not involved in this decision.

On August 2, 2005, when one requisition was released McAllister promoted John Treadwell to sergeant. Treadwell is an African-American male who was ranked second on the eligible list. At the time of this promotion, plaintiff was not eligible to be promoted because he was not ranked high enough on the eligible list.

If not otherwise precluded based upon defendants' motion in limine, the defendants will prove that two promotions made in November, 2005, went to better qualified applicants.

### III. <u>Defense Theory of the Case</u>

Plaintiff cannot meet his prima facie case of proving retaliation under the First Amendment. A claim of First Amendment retaliation "is analyzed under a three-step process." *Green v. Phila. Housing Auth.*, 105 F.3d 882, 885 (3d Cir. 1997) (*citations omitted*). First, plaintiff must demonstrate that he engaged in protected activity, *i.e.*, exercised his constitutional right to free speech. *Shehee v. City of Wilmington*, 67 Fed. Appx. 692, 693 (3d Cir. 2003). Second, he "must show the protected activity was a substantial or motivating factor in the alleged retaliatory action." *Green*, 105 F.3d at 885 (*citing Swineford v. Snyder County Pa.*, 15 F.3d 1258, 1270 (3d Cir. 1994)). Lastly, Defendants may defeat plaintiff's claims "by showing that the same actions would have been taken even absent the protected conduct." *Shehee*, 67 Fed. Appx. at 693-94.

### Plaintiff did not Engage in Protected Activity

Speech is a protected activity only if it relates to a matter of public concern.[4] *Connick v. Myers*, 461 U.S. 138, 146–47 (1983) (holding that a matter of public concern is "any matter of political, social or other concern to the community").

"Speech by public employees may be characterized as not of 'public concern' when it is clear that such speech deals with individual personnel disputes and grievances

---

[4] To qualify as a protected activity, Plaintiff's speech must also satisfy the *Pickering* balancing test. *Green*, 105 F.3d at 885 (*citing Pickering*, 391 U.S. at 568). Thus, the speech must address a matter of public concern. *Id.* (*citing Watters*, 55 F.3d at 892). Also, the public interest favoring Plaintiff's expression "must not be outweighed by any injury the speech could cause to the interest of the [County] as an employer in promoting the efficiency of the public services it performs through its employees." *Id.* Defendants contend that plaintiff's speech did not play any role in any actions they may have taken.

and that the information would be of no relevance to the public's evaluation of the performance of governmental agencies." *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir.1983). In *Garcetti v. Ceballos*, 2006 WL 1458026 (U.S.), the Supreme Court clarified that the First Amendment does not protect public employees with respect to statements made pursuant to their official duties. In the instant case, plaintiff has asserted, but the defense will show that he has failed to prove, that he engaged in protected speech in connection with a communication he had with a reporter from the News Journal, in conversations he had with the Director of Communications for New Castle County, and his conversations regarding his allegiance to McAllister.

Plaintiff alleges that on June 26 or 27, 2005, he received a telephone call from News Journal Reporter Cris Barrish, on his office phone at the police department regarding the alleged initials of McAllister referred to in the federal indictment involving former County Executive Tom Gordon and former Chief Administrative Officer Sherry Freebery. At the conclusion of this five-minute conversation, plaintiff alleges that he notified McAllister of the inquiry from Barrish, with the intention to advise McAllister that the integrity of the Police Department and NCC was being questioned. Plaintiff alleges that McAllister thereafter notified Sapp, who, based upon Navarro's belief, notified Coons. Plaintiff claims that this conversation was a matter of public concern because of McAllister's position within the Police Department, and that anyone who would try to discredit McAllister or the police department without proof is a public concern. The defense will prove that plaintiff did not do or say anything to Barrish that would constitute speech that is protected by the First Amendment. Simply talking with

Barrish or telling him that he would not answer his questions does not amount to protected speech.

The defense will further prove that the plaintiff's claim also fails under the standard set forth in *Garcetti* because he was not speaking as a citizen for First Amendment purposes during his conversation with Barrish.

Even assuming that plaintiff can show that defendants knew about and somehow reacted to plaintiff's "speech" with Barrish, the defense will show that they were permitted to do so because any expressions set forth during that conversation would have been made pursuant to plaintiff's job duties as the police department's PIO.

**Defendants will show that plaintiff did not engage in protected speech during his conversations with Levine and he did not speak to Levine as a citizen for First Amendment purposes but that Levine was speaking to plaintiff as a manager concerning plaintiff's job responsibilities as PIO.**

Similarly, plaintiff has alleged that conversations he engaged in with the Director of Communications for New Castle County, Allison Taylor Levine, were protected speech under the First Amendment and that, as a result of these conversations, he was discriminated against and denied a promotion. Specifically, Plaintiff identified two particular conversations upon which he based his lawsuit: a telephone conversation with Levine on June 26 or 27, 2005 and a face-to-face meeting on June 29, 2005.

With respect to the June 26 or 27 conversation, Plaintiff alleges that he was retaliated against when he spoke out about his "allegiance to McAllister." Plaintiff also alleges that Defendants Coons and Sapp were aware of Plaintiff's speech, and that they withheld the already budgeted sergeant positions because of it. The defense will show that even if plaintiff made this statement to Levine, it does not address a matter of public concern, but rather that it addresses plaintiff's personal dissatisfaction and has no

relevance to the public's evaluation of the County's performance as a governmental agency. The defense will show that in reference to the conversation between plaintiff and Levine, it was clear that plaintiff spoke in his capacity as Public Information Officer for the New Castle County Department of Public Safety to Levine as the Director of Communications for New Castle County.

With respect to plaintiff's discussion with Levine on June 29, 2005, the defense will show that this speech dealt with an individual personnel dispute and plaintiff's duties as PIO and that any such information would be of no relevance to the public's evaluation of the performance of New Castle County as a governmental agency. Further, the defense will prove that there was no link between any statements made by Levine and County Executive Coons.

**Plaintiff's Speech Was Not A Motivating Factor In Any Alleged Retaliation**

In order for the plaintiff to prevail, he will have to prove that his alleged protected activity was a substantial or motivating factor in the alleged retaliatory action. The defense will prove that it was not. The defense will show that there was no evidence of any retaliatory animus on the part of defendants underlying the decision not to authorize requisitions that would increase the number of sergeant positions to 38.

Specifically, the defense will show that there is no evidence to prove that Sapp's recommendation regarding the requisitions was influenced by anything other than his concern for the budget in terms of the operating deficit, as well as the need for more patrol officers on the street versus the need for supervisors. Additionally, the defense will show that the County Executive did not take any action whatsoever with respect to the plaintiff.

### Defendants would have taken the same action absent plaintiff's allegedly protected conduct.

The defense will also show that the number of sergeant positions would have remained at 36 regardless of plaintiff's speech, protected or not, to Barrish or Levine, or his speech in favor of McAllister by proving that Sapp and Singleton determined after serious consideration and evaluation of staffing needs and budget deficits, that there was a greater need for patrol strength rather than supervisors.

### Defendants will prove that plaintiff failed to prove a case for Municipal Liability

Plaintiff's Complaint alleges that the County should be liable under 42 U.S.C. § 1983 for the alleged constitutional torts of its employees, Coons and Sapp. The defendants will show that plaintiff has failed to assert and cannot prove any official County policy or custom that caused any injury to Plaintiff.

### Qualified Immunity

Defendants have asserted qualified immunity in their pending motion for summary judgment and will adduce facts at trial in support of qualified immunity that even if the actions taken by Coons and Sapp are found to be retaliatory against plaintiff, defendants are entitled to the defense of qualified immunity for governmental officials.

As enunciated by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001), there is a two-part test for qualified immunity. First, a court must determine whether the facts, when taken in a light most favorable to the plaintiff, are sufficient to show that the individual defendant violated a constitutional right; second, even if a constitutional violation can be made out, nonetheless the immunity still protects individual defendants unless the right allegedly violated was "clearly established" at the time the defendant acted, such that a reasonable official would have known it.

Defendants will show that plaintiff's claim fails the first part of the *Saucier* test. As discussed *supra*, the Plaintiff has neither pled nor developed a *prima facie* case that the individual defendants violated his constitutional rights. Additionally, defendants will show that qualified immunity must be granted because there was insufficient precedent at the time of the alleged retaliatory actions by Coons and Sapp to put them on notice that their alleged conduct was constitutionally prohibited. In fact, at the time of the alleged retaliatory action by Coons and Sapp, the *Garcetti* case was pending a decision before the Supreme Court so the contours of the right were not clearly established.

### Punitive Damages

To the extent that plaintiff seeks punitive damages against the County for alleged violations of § 1983, a municipality cannot be held liable for a claim for punitive damages brought under § 1983. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1982); *Marchese v. Ulmstead*, 110 F.Supp.2d 361, 373 (E.D.Pa. 2000). Similarly, punitive damages are not available against municipal officials in their official capacities under § 1983. *See Leipziger v. Township of Falls,* 2001 WL 111611, at *9 (E.D.Pa.). Accordingly, Plaintiff's claims for punitive damages against the County and Defendants Coons and Sapp in their official capacities must be dismissed at trial as a matter of law.

Similarly, the defense will show that there is no evidence that Coons acted at all with respect to the conduct complained of, or that Coons or Sapp acted with any reckless or evil motive or intent sufficient to enable a jury to award punitive damages.

### IV.  Damages

The plaintiff is not entitled to a promotion to sergeant, and therefore cannot claim increased compensation, benefits, or pension. There are no grounds for compensatory or punitive damages.

V.     **Motions**

The defendants have filed a Motion for Summary Judgment that is unopposed and is pending decision. If the Motion is not granted prior to trial, the defense anticipates renewing all arguments contained therein in a motion for judgment as a matter of law pursuant to Rule 50, for the reasons set forth in the Motion for Summary Judgment.

Respectfully submitted,

/s/ Michele D. Allen
Michele D. Allen, Assistant County Attorney (#4359)
Judith A. Hildick, First Assistant County Attorney (#3244)
Megan Sanfrancesco, First Asst. County Attorney (#3801)
New Castle County Law Department
87 Reads Way
New Castle, DE 19720
(302) 395-5130
*Attorneys for New Castle County and Christopher A. Coons and Guy H. Sapp in their Official Capacities*

and

/s/ Jeffrey S. Goddess
Jeffrey S. Goddess, Esq.(#630)
Rosenthal, Monhait & Goddess, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899
*Attorney for Christopher A. Coons and Guy H. Sapp in their Individual Capacities*