# EXHIBIT I

Not Reported in F.Supp., 1997 WL 732463 (E.D.Pa.)

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
Mary WHITFIELD
v.
PENNSYLVANIA GAS WORKS, et al.
No. CIV. A. 96-7313.
Nov. 25, 1997.

*MEMORANDUM AND ORDER*

BECHTLE, J.
*1 Presently before the court is defendants Philadelphia Gas Works ("PGW"), Philadelphia Facilities Management Corporation ("PFMC") and Phoenix Management Services, Inc.'s ("Phoenix") (collectively "Defendants") motion for partial summary judgment and plaintiff Mary Whitfield's ("Whitfield") response thereto. For the reasons set forth below, Defendants' motion will be granted.

I. *BACKGROUND*

This is an action alleging race and sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* and political discrimination under 42 U.S.C. § 1983.FN1 PGW is a municipally-owned supplier of natural gas to residential and non-residential customers in Philadelphia. In December 1994, the City of Philadelphia hired Phoenix, a management turnaround specialist, to reorganize and restructure PGW. In September 1995, PGW notified twenty-seven employees that it would eliminate their jobs in thirty days. These employees were given the opportunity to apply for posted jobs within PGW that were opened through attrition or job creation. At the end of this process, ten employees were unable to obtain new jobs within PGW and were laid off.

    FN1. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

Plaintiff Mary Whitfield was one of the ten laid off employees. Whitfield concedes that the elimination of her job in the finance department was not racially, sexually or politically motivated. However, on October 29, 1996, Whitfield filed a complaint alleging that she was laid off and not hired for a new position at PGW based upon her sex and race, in violation of Title VII. Additionally, in Count VI of her complaint, Whitfield claims that her lay off was based on her lack of political affiliation with the City of Philadelphia's Democratic administration in violation of the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. Defendants filed this motion for summary judgment on Count VI of the complaint alleging discrimination based on political affiliation.FN2

    FN2. Defendants have not moved to dismiss the Title VII claims of sex and race discrimination.

II. *STANDARD FOR SUMMARY JUDGMENT*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Whether a genuine issue of material fact is presented will be determined by asking if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986). "A factual dispute is 'material' only if it might affect the outcome of the suit governing the law." *Wilson v. Pennsylvania State Police Dept.,* 964 F.Supp. 898 (E.D.Pa.1997)(citing *Anderson,* 477 U.S. at 248). When considering a motion for summary judgment, "all of the facts must be viewed in the light most favorable to the non-moving party." *Christy v. Pennsylvania Turnpike Comm'n,* 904 F.Supp. 427 (E.D.Pa.1995)(citing *Anderson,* 477 U.S. at 256). Additionally, " 'the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.' " *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.,* 90 F.3d 737 (3d Cir.1996)(quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**\*2** If the party opposing summary judgment "bears the burden of proof at trial, the moving party is entitled to summary judgment by showing 'there is an absence of evidence to support the nonmoving party's case.' " *Raniero v. Antun,* 943 F.Supp. 413, 420 (D.N.J.1996), aff'd, 118 F.3d 1577 (3d Cir.1997)(quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The party opposing summary judgment "must set forth specific facts showing a genuine issue for trial and may not rest upon mere allegations, general denials, or ... vague statements." *Quiroga v. Hasbro, Inc.,* 934 F.2d 497 (3d Cir.1991).

### III. DISCUSSION

To establish a claim of employment discrimination based on political affiliation, or lack of political affiliation, the plaintiff must show: (1) she was a public employee; (2) she was engaged in constitutionally protected conduct; and (3) her protected conduct was a substantial factor or motivating factor in the employment decision. *Robertson v. Fiore,* 62 F.3d 596, 599 (3d Cir.1995); *Christy v. Pennsylvania Turnpike Comm'n,* 904 F.Supp. 427, 429 (E.D.Pa.1995); *Raniero,* 943 F.Supp. at 422 (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). If the plaintiff presents a factual basis to establish these elements, "the burden shifts to the employer to show that it would have made the same employment decision" regardless of the plaintiff's political affiliation. *Christy,* 904 F.Supp. at 430.

Whitfield has satisfied the first two elements necessary to establish a claim of political discrimination. First, as an employee of PGW, Whitfield was a public employee.[FN3] Secondly, Whitfield states that she has no political affiliation and the defendants do not contest this assertion. Whitfield alleges that she was laid off because she did not have political ties to the local Democratic administration. Employment decisions based on a "failure to affiliate with or support" a particular political party infringe upon the First Amendment rights of public employees. *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 76, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). "The right not to politically associate is as protected as the right to associate." *Christy,* 904 F.Supp. at 430. Because Whitfield's non-affiliation is protected under the First Amendment, the second element is present in this case.

> FN3. Defendants do not challenge Whitfield's status as a public employee. *See* Defs.' Mot. for Summ. J.

The question the court must resolve, in the summary judgment context, is whether there is sufficient evidence from which a jury could reasonably find that Whitfield's engagement in constitutionally protected conduct was a substantial or motivating factor in the decision not to place her in a new position at PGW after the initial lay off announcement. Defendants assert that Whitfield has not and cannot produce evidence demonstrating that her lack of political affiliation was a substantial or motivating factor in her lay off. Instead, they assert that she was not selected for open jobs within PGW due to her poor performance as an employee.

**\*3** Whitfield presents two depositions containing statements that at least two other PGW employees, who were on the original lay off list, were not laid off because of their political affiliation. However, these statements are hearsay and the court cannot consider evidence that would not be admissible at trial when evaluating the facts for summary judgment purposes. Fed.R.Civ.P. 56(e). Whitfield's first offer is in the deposition of Audrey Dean ("Dean"), who stated that Ann Land ("Land"), a PGW employee who was on the original lay off list, specifically told her that Land was able to obtain another position within PGW through her political affiliations. (Dean Dep. at 53). Additionally, Linda Baker ("Baker"), in her deposition, states that she heard rumors that Karin Morris ("Morris"), a PGW employee, also on the original lay off list, received a new

position with PGW because of her political contacts. (Baker Dep. at 32). Both of these statements are plainly hearsay.

On January 23, 1997, the court issued a Fed. Rule of Civ. P. 16 Pretrial Memorandum Order which, *inter alia,* ordered that all discovery for this case shall proceed forthwith and was to be completed by April 21, 1997. The court granted two extensions to the discovery period. Despite these two extensions, the discovery period has ended without Whitfield taking the deposition of either Land or Morris. Additionally, Land does not appear on either party's list of witnesses to be presented at trial. Land's out-of-court statement would therefore not be "capable of being admissible at trial" and cannot be considered for summary judgment purposes. *Stelwagon Mfr. Co. v. Tarmac Roofing,* 63 F.3d 1267, 1275 n. 17 (3d Cir.1995).

Morris' name is on the list of individuals that PGW reserves the right to call as witnesses at trial. However, unlike the statement attributed to Land in Dean's deposition, there is no out-of-court statement attributed to Morris that is capable of becoming admissible at trial. In Baker's deposition, she merely states she heard rumors that Morris received her new position at PGW because of her political affiliation. Therefore, Baker's hearsay statements cannot be considered by the court in deciding the summary judgment motion.

Whitfield also points to the fact that Land, who is the subject of the hearsay in Dean's deposition, was on the list of incumbents whose jobs were being eliminated. One of Whitfield's exhibits purports to show that Land did receive a new position at PGW. However, that position was not posted and Land apparently was not required to compete for this job with the other incumbents whose jobs were eliminated. Whitfield argues that this evidences favorable treatment and that this treatment was the result of Land's political affiliation. Whitfield adds that PGW precluded her from applying for the position that Land received because the job was not posted.

Defendants respond that, without admitting such, even if Land was retained because of her political ties that Whitfield was not injured because Whitfield did not apply for that job. Defendants add that the job Land received, Manager-City Affairs, was an executive staff position, a type of position that is not posted and is filled by appointment only. Additionally, at oral argument, Defendants' counsel argued that as a former city council member Land was "uniquely qualified" for this position which involves direct interaction with city officials. Defendants also contend that through interrogatories they asked Whitfield to identify the positions she would have received in the absence of the alleged discrimination. In response, Whitfield identified five positions. She did not identify Land's Manager-City Affairs position as one that she would have received but for the alleged political discrimination. Therefore, Defendants argue, Whitfield cannot show that any nexus existed between PGW's decision to retain Land and its decision to lay off Whitfield.

**\*4** Whitfield also focuses on a meeting that was held between Rotan Lee, PFMC president, and certain employees. Whitfield believes that certain employees "had a meeting with Mr. Lee and other city officials in which it was promised that their jobs would be secured." Defs.' Mot. for Summ. J., Ex. E ¶ 33. Whitfield further claims that "as a result of these meetings, each of these individuals were given other positions within PGW because of their political affiliation." *Id.* Defendants acknowledge that a meeting between Rotan Lee and certain employees took place around September of 1995. However, Rosemary Tomkus ("Tomkus"), an employee who attended the meeting, testified at her deposition that all the employees who attended the meeting had twenty years or more of service at PGW and that they were not seeking special favors. Defs.' Mot. for Summ. J., Ex. G at 9.

Whitfield also alleges that Tomkus, despite being on the original lay off list, retained a position at PGW because she had political connections to Philadelphia's Democratic administration. Whitfield submitted the deposition of Mary Smith-Drake ("Smith-Drake") in support of this allegation. In her deposition, Smith-Drake states that Tomkus "informed me personally that she spoke to her Senator at one point about what to do about her situation in hopes of him intervening somehow to help her." (Smith-Drake Dep. at 20). This statement is hearsay and would not be admissible at trial. However, because Tomkus is on Defendants' proposed witness list it is possible that this testimony could be elicited in a form that would be admissible. *See Stelwagon,* 63 F.3d at 1275 n. 17. Nevertheless, other facts diminish the merit of the allegation that Tomkus retained her position because she had ties to the Philadelphia Democratic administration. First, Tomkus is a Republican. Secondly, she does not reside in the city of Philadelphia. Additionally, Defendants point out that Whitfield's counsel deposed Tomkus. In that deposition Tomkus stated that she had no political ties in the City of Philadelphia and that she had no friends or relatives involved in Philadelphia politics.

(Tomkus Dep. at 23-24).

The court concludes, based on the record presented, that Whitfield has not produced sufficient evidence from which a reasonable jury could find that her lack of political affiliation with the City of Philadelphia's Democratic administration was a substantial or motivating factor in her failure to obtain a new position at PGW. Because Whitfield has not made "a sufficient showing regarding an essential element of her case upon which [she would] bear the ultimate burden of proof at trial, all other facts are necessarily immaterial and summary judgment must be granted." Raniero, 943 F.Supp. at 421 (citing Celotex, 477 U.S. at 321).

Even if Whitfield presented evidence that her lack of political affiliation was a substantial or motivating factor in the decision to not place her in a new position, granting summary judgment in Defendants' favor would still be appropriate. If a plaintiff demonstrates the three elements necessary to establish a political discrimination claim "the burden shifts to the employer to show that it would have made the same employment decision anyway." Christy, 904 F.Supp. at 430.

**\*5** Defendants justify the decision not to retain Whitfield on her poor performance at PGW. After the original lay off list was circulated, Whitfield interviewed for five posted positions within PGW. Defendants contend that Whitfield's poor performance as a supervisor in the Treasury Department at PGW was the reason she did not receive any of the posted positions. Defendants cite memoranda in Whitfield's personnel file as support for its position. A memorandum from then Treasury Manager, Darryl Jones, to Whitfield's personnel folder contains, *inter alia,* reports that "Whitfield has demonstrated that on several occasions she did not use good sound judgment in resolving matters that were very important." Defs.' Mot. for Summ. J., Ex. C. Additionally, a memorandum to Whitfield's personnel file from Joseph Golden indicates that at a meeting attended by himself, Whitfield and Ed Morris, then Chief Financial Officer at PGW, Morris stated that "he had no problem in terminating [Whitfield] ... after repeated updates of poor performance." Defs.' Mot. for Summ. J., Ex. D. Whitfield does not present any evidence challenging the veracity or validity of these records contained in her personnel file. These records demonstrate that the employment decision would have been made anyway even if political discrimination was a substantial or motivating factor.

In summary, Whitfield alleges that individuals who were not laid off at PGW had "strong political affiliations with the [Philadelphia] Democratic administration." (Compl.¶ 116). Whitfield's complaint further states that she "believe[s] and therefore aver[s] that [she was] laid-off because of [her] lack of political affiliation with the present Democratic administration." (Compl.¶ 118). Whitfield has not provided sufficient support for these conclusions to defeat this summary judgment motion. The court finds that there are no genuine issues of material fact and that Defendants are entitled to judgment on the claim of political discrimination as a matter of law. Accordingly, Defendants' motion for summary judgment on Count VI of Whitfield's complaint alleging political discrimination is GRANTED. An appropriate order follows.

ORDER

AND NOW, TO WIT, this ___th day of November, 1997, upon consideration of Philadelphia Gas Works, Philadelphia Facilities Management Corporation and Phoenix Management Services, Inc.'s motion for partial summary judgment, plaintiff Mary Whitfield's response thereto and oral argument on the motion, IT IS ORDERED that said motion for partial summary judgment on Count VI of plaintiff's complaint alleging political discrimination is GRANTED.

E.D.Pa.,1997.
Whitfield v. Pennsylvania Gas Works
Not Reported in F.Supp., 1997 WL 732463 (E.D.Pa.)


Motions, Pleadings and Filings (Back to top)

• 2:96cv07313 (Docket) (Oct. 29, 1996)
END OF DOCUMENT