**Defendants' Schedule 2(i)(i)**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORPORAL TRINIDAD NAVARRO, | : | |
| | : | |
| Plaintiff, | : | C.A. No. 05-565 GMS |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| CHRISTOPHER A. COONS, | : | |
| individually and in his official capacity; | : | |
| GUY H. SAPP, individually and in his | : | |
| official capacity; and NEW CASTLE | : | |
| COUNTY, a municipal corporation, | : | |
| | : | |
| Defendants. | : | |

## DEFENDANTS' TRIAL BRIEF[1]

**I.**   **Nature of the Case**

This is an alleged First Amendment freedom of political association/retaliation case, in which the Plaintiff, Trinidad Navarro ("Plaintiff"), a corporal in the New Castle County Police Department, claims that he should have been promoted to the rank of sergeant in 2005. Although not clearly stated in the Amended Complaint, Plaintiff appears to contend that Defendants failed to promote him in retaliation for his political association with the "McAllister Team." Plaintiff also appears to allege that the retaliatory action occurred when Defendants allegedly withheld budgeted sergeant positions which resulted in Plaintiff not receiving a promotion. Plaintiff claims that the "McAllister Team" and its members were a rival political group, and that his decision to

---

[1] Defendants reserve the right to supplement this Trial Brief prior to trial insofar as at the time of the drafting of this brief, defendants had not been provided a copy of Plaintiff's Trial Brief outlining plaintiff's theory of the case.

remain on the "McAllister Team" and be loyal to his then chief was an act of political association protected by the First Amendment.

The defendants named in Complaint are New Castle County (the "County"), County Executive Christopher A. Coons ("Coons") and Guy H. Sapp ("Sapp"), the former Director of Public Safety for New Castle County. Guy H. Sapp resigned from New Castle County on July 14, 2006.[2] The defendants submit that plaintiff did not engage in any protected activity and furthermore deny discriminating against plaintiff. Defendants are hopeful that their Motion for Summary Judgment will be granted on this point. However, in the event that Defendants must proceed to trial, they will put forth evidence to show that plaintiff cannot prove his allegations that budgeted sergeant positions were withheld in connection with political activity that he may have engaged in. The defendants will further prove that the promotions made subsequent to the time of the plaintiff's allegations of retaliation went to better qualified applicants.

## II.     Facts to be Established by the Defense

Plaintiff began his employment with the County on September 30, 1991. He currently holds the position of Public Information Officer ("PIO") for the County Police Department (the "Department"). He has held that position since October 28, 1998. Defendant Coons is the County Executive of New Castle County. He was sworn in as County Executive of New Castle County and his new administration began on January 4, 2005. His duties and responsibilities are prescribed by statute, 9 *Del. C.* §1116, as well as by various provisions of the County Code.

---

[2] Pursuant to Fed. R. Civ. P. 25(d)(1), E. Ronald Frazier, Mr. Sapp's successor, shall be automatically substituted as a party.

After a career which included service as Chief of Police for City of Wilmington Police Department and a Directorship with the State, Defendant Sapp was appointed Director of Public Safety for New Castle County and began employment with the County on April 18, 2005. Guy H. Sapp resigned from New Castle County on July 14, 2006, and was succeeded by E. Ronald Frazier. The duties and responsibilities of the Director of Public Safety are prescribed by statute, New Castle County Code Section 2.05.201.[3] When Sapp began his employment with the County, former Chief Administrative Officer ("CAO")[4], David Singleton ("Singleton"), delegated, in part, his authority and responsibilities with respect to the Department of Public Safety to Sapp. The CAO was to be kept apprised of significant events within Department.

From 1996 until the inception of this lawsuit, plaintiff has taken the promotional exam for the position of sergeant seven times. However, only once did he score well enough to be eligible for a promotion, and that was on the exam which was administered in the fall of 2004. The 2004 exam consisted of a written examination and an oral board interview. Each portion of the exam was weighted 47.5 percent and 5 percent was awarded based upon seniority. On December 1, 2004, the results of the 2004 Police Sergeant's Eligible List ("the eligible list") were certified by the Chief of Police and the Chief Human Resources Officer. The eligible list was effective and valid for one year. Plaintiff was ranked twelfth on the eligible list.

---

[3] On November 30, 2005, County Council passed New Castle County Ordinance No. 05-123. This ordinance established that the Police Department would be placed under the management of the Director of Public Safety. The ordinance further provides that the Chief of Police shall be supervised by the Director of Public Safety.

[4] The CAO's duties are prescribed by statute, 9 *Del. C.* § 1121, as well as by various provisions of the County Code.

Directive 34 of the County Police Directives provides that the Chief of Police or his or her designee shall perform the function for promotions below the rank of captain and that all promotions shall be made from certified individuals on current promotional lists. Section 26.03.501 of the New Castle County Code provides that the filling of a vacancy requires a requisition signed by the Chief Human Resources Officer, the Chief Financial Officer and the Chief Administrative Officer. When a personnel requisition is received, Section § 26.03.505 provides that the Chief Human Resources Officer shall certify the top five (5) names from the promotional lists. When multiple vacancies are to be filled from the same list, an additional name in rank order from the top of the list will be added.

In his Amended Complaint, plaintiff alleges that his decision to remain on the "McAllister Team" and be loyal to his chief was an act of political association protected by the First Amendment. *Amended Complaint ¶ 42.* In support of these allegations, plaintiff relies solely on the facts he initially pled in his original Complaint. However, all of the facts plead in the original Complaint relate to plaintiff's prior freedom of speech claim, which he withdrew. Therefore, plaintiff has not offered any specific facts to support his freedom of association claim, other than a blanket statement that he was on the "McAllister Team."

In Fiscal Year 2005, running from July 1, 2004 until June 30, 2005, there were 36 recommended sergeant positions. In December 2004, McAllister promoted four people to the rank of sergeant for a total of 36 Sergeants, just prior to the changing of County administrations. Additionally, McAllister "traded in" police officer positions in order to "over promote" two sergeant positions, which were also filled in

December. McAllister was able to do that because under the County system, the number of sergeant positions or any other ranked positions may be changed based upon staffing needs of the Department at any time without the approval of County Council as long as the funds to pay for all positions are within the Department's budget. Council, in adopting the budget, does not actually approve a specific number of positions, in any rank; rather, Council adopts an operating budget with a total number of authorized positions and a line item amount for salaries and wages. Therefore, the number of positions in any rank is not something voted on by Council and does not become part of the Annual Operating Budget for New Castle County. Moreover, the only fiscal control is that designated by the County Code and management by the executive branch.

For the next fiscal year (FY 2006, which began July 1, 2005) 38 sergeant positions were included in the budget. The need for two additional sergeants was questionable, however, based on the fact that the budget had reduced the number of patrol officers and it was unclear how many sergeant positions the new administration was going to fill. On May 3, 2005, Detective John Treadwell, Detective L. Rob Joseph, Officer Patricia Davies, Detective Joseph Trala, Corporal Trinidad Navarro, and Officer Wendi Feeser, all of whom would have been eligible for promotion if the two additional sergeant requisitions were released, sent a memorandum to the Fraternal Order of Police (FOP) seeking assistance in determining the number of sergeant promotional opportunities. As a result of the memo, a meeting was scheduled between the requesting officers, the President of the FOP, Marge Ellwein, McAllister, and Sapp on May 16, 2005. At the meeting, Sapp who had only been on the job a

month, communicated his belief that there was one opening in the Fiscal Year 2005 budget and two openings in the Fiscal Year 2006 budget. However, at that time, there was concern about making any promotions due to a deficit in the police budget, a concern County-wide about cutting costs, and a concern for the authorized strength within each of the ranks in the Department. During the meeting, McAllister stated and Sapp concurred that they intended to promote three sergeants in Fiscal Year 2006.

After the May 16, 2005 meeting, Sapp continued to hear from both internal and external sources that the need in the Police Department was for patrol officers rather than supervisors. The general populace and senior County officials had also expressed concern about the need for patrol officers. Additionally, a study was commissioned to analyze, among other things, the authorized strength of the Department and the strength within each of the ranks of the Department and the FOP had questioned the need for the two additional sergeant positions in their May 20, 2005 memorandum. The FOP suggested that the one vacant sergeant position be filled for a total of 36 sergeants and then determine the level of service being provided and whether or not there is a need for additional sergeants. In light of all this information, Sapp's original intention regarding sergeant staffing began to change.

On June 27, 2005, McAllister sent a memo to Sapp requesting that three requisitions be released for sergeant positions. In response to this request, Sapp met with Singleton on June 29, 2005, to discuss whether or not additional requisitions for sergeant should be released. During the meeting, Sapp recommended to Singleton that the requisitions not be released because there was a greater need for patrol officers on the street than additional supervisory sergeant positions and Singleton concurred with

his recommendation. Later that day, Sapp sent a memo stating that the staffing requirements of the Police Department had been reviewed, and it was determined that the need to maintain patrol strength was more critical than the need for sergeants, and that therefore, the two requisitions for the sergeants positions would not be released. At the time this decision was made and the memorandum was authored, Sapp was unaware that Plaintiff was eligible to be promoted. Additionally, Coons was not involved in this decision.

On August 2, 2005, when one requisition was released McAllister promoted John Treadwell to sergeant. Treadwell is an African-American male who stood first on the eligible list.[5] At the time of this promotion, plaintiff was not eligible to be promoted because he was not ranked high enough on the eligible list.

If not otherwise precluded based upon defendants' motion in limine, the defendants will prove that two promotions made in November, 2005, went to better qualified applicants.

### III.    Defense Theory of the Case

Plaintiff cannot meet his prima facie case of proving retaliation under the First Amendment. To make out a prima facie case of political discrimination, a plaintiff must first show that he worked for a public agency in a position that does not require a political affiliation. *See Robertson v. Fiore*, 62 F.3d 596, 599 (3d Cir.1995). (This issue is not contested here). Second, he must show that he engaged in constitutionally protected conduct. *Id.* Lastly, plaintiff must prove that his conduct was a substantial or motivating

---

[5] John Treadwell had scored second on the list when it was first presented to McAllister. However, in exercising his discretion in making six promotions in December 2004, McAllister selected the candidate who scored first but also five others who scored below Treadwell (including those who had scored seventh through tenth). Hence, as of June 2005, Treadwell had been standing first for many months.

factor in the government's employment decision. Once plaintiff has satisfied the foregoing criteria, defendants may defeat plaintiff's claim by proving, by a preponderance of the evidence, that the same employment action would have been taken even in the absence of the protected activity. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

### Plaintiff did not Engage in Constitutionally Protected Activity

Plaintiff claims that his membership on the "McAllister Team," a so-called rival political group, and his loyalty to McAllister, warrant First Amendment protection. *Amended Complaint at ¶* 42-43. Plaintiff's purported acts of loyalty to McAllister consisted of following McAllister's orders to withhold media information from Allison Taylor Levine (hereinafter "Levine"), the former Communications Director for Coons, even though plaintiff had been asked several times to keep Levine informed of certain media releases. *Navarro Depo.* 287, 290. In his Answering Brief to Defendants' Motion for Summary Judgment, plaintiff, for the first time, claimed that, in addition to his relationship with McAllister, it was his "support of" former County Executive Thomas Gordon ("Gordon") and former Chief Administrative Officer and County Executive-candidate Sherry Freebery ("Freebery"), that led to Defendants' alleged retaliation.

As decision on this issue is a matter of law, Defendants expect this claim to be dismissed at summary judgment since neither Plaintiff's membership on the "McAllister Team" nor his loyalty to McAllister are activities that are protected by the First Amendment. Moreover, Plaintiff's eleventh-hour political association claim with respect to his "support of" Gordon and Freebery should be time barred. In the event that this claim is not barred, Plaintiff's own actions are fatal to this claim relative to Freebery, as

his testimony actually illustrates his lack of support for her candidacy. Similarly, his friendship with Gordon is not enough to warrant protection under the First Amendment. However, in the event that this claim is not dismissed, Defendants will defeat plaintiff's claim as indicated below.

### If The Court Were To Hold That Plaintiff Engaged In Protected Activity, Plaintiff Still Cannot Show that Such Activity Was A Motivating Factor In Any Alleged Retaliation

In order for the plaintiff to prevail, he will have to prove that his alleged protected activity was a substantial or motivating factor in the alleged retaliatory action. The defense will prove that it was not. The defense will show that there was no evidence of any retaliatory animus on the part of defendants underlying the decision not to authorize requisitions that would increase the number of sergeant positions to 38.

Specifically, the defense will show that there is no evidence to prove that Sapp's recommendation regarding the requisitions was influenced by anything other than his concern for the budget in terms of the operating deficit, as well as the need for more patrol officers on the street versus the need for supervisors. Additionally, the defense will show that the County Executive did not take any action whatsoever with respect to the plaintiff and his hoped-for promotion.

### Defendants would have taken the same action absent Plaintiff's allegedly protected conduct

Defendants will also show that they would have reached the same decision even in the absence of plaintiff's allegedly protected conduct. This will be shown through evidence that the number of sergeant positions would have remained at 36 regardless of Plaintiff's association with the "McAllister Team." The defense will show that Sapp and Singleton determined after serious consideration and evaluation of staffing needs and

budget deficits, that there was a greater need for patrol strength rather than supervisors and therefore they would not release the requisitions for the two additional sergeant positions in the 2006 fiscal year.

**Defendants will prove that plaintiff failed to prove a case for Municipal Liability**

Plaintiff's Complaint alleges that the County should be liable under 42 U.S.C. § 1983 for the alleged constitutional torts of its employees, Coons and Sapp. The defendants will show that plaintiff has failed to assert and cannot prove any official County policy or custom that caused any injury to Plaintiff.

**Coons and Sapp are entitled to the defense of qualified immunity**

Defendants Coons and Sapp have moved for summary judgment on their qualified immunity defense, along with the other, more central summary judgment arguments which go to the core of plaintiff's claim. With respect, defendants would expect that their motion will be granted, since nothing which they did and nothing suggested by pertinent case law should warrant that they face individual liability exposure here. However, if their motion is denied, whether in whole or in part, these defendants will evaluate whether legal or factual matters were found to be in dispute and, if factual, they will provide evidence to resolve any lingering factual uncertainty. To briefly paraphrase from their summary judgment briefing, Coons was not involved at all in Navarro's promotional situation. While Sapp was involved, he was focused on the staffing needs and budgetary imperatives of the department he had just taken over, and wasn't focused on Navarro. Lastly, if Sapp, or anyone, gave thought to Navarro in that context, it was not as a political activist. Indeed, before plaintiff switched his theory in this case from "speech" to "political retaliation," he denied any political activism.

**Punitive Damages**

To the extent that plaintiff seeks punitive damages against the County for alleged violations of § 1983, a municipality cannot be held liable for a claim for punitive damages brought under § 1983. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1982); *Marchese v. Ulmstead*, 110 F.Supp.2d 361, 373 (E.D.Pa. 2000). Similarly, punitive damages are not available against municipal officials in their official capacities under § 1983. *See Leipziger v. Township of Falls,* 2001 WL 111611, at *9 (E.D.Pa.). Accordingly, Plaintiff's claims for punitive damages against the County and Defendants Coons and Sapp in their official capacities, if not dismissed at summary judgment, must be dismissed at trial as a matter of law.

Similarly, the defense will show that there is no evidence that Coons acted at all with respect to the conduct complained of, or that Coons or Sapp acted with any reckless or evil motive or intent sufficient to enable a jury to award punitive damages.

**IV.    Damages**

The plaintiff is not entitled to a promotion to sergeant, and therefore cannot claim increased compensation, benefits, or pension. There is no evidence to support a claim for emotional distress. Overall, then, are no grounds for compensatory or punitive damages.

**V.    Motions**

The defendants have filed a Motion for Summary Judgment that is pending decision.

Respectfully submitted,

/s/ *Megan Sanfrancesco*
Judith A. Hildick, First Assistant County Attorney (#3244)
Megan Sanfrancesco, First Asst. County Attorney (#3801)
New Castle County Law Department
87 Reads Way
New Castle, DE 19720
(302) 395-5130
*Attorneys for New Castle County and Christopher A. Coons and Guy H. Sapp/E. Ronald Frazier in their Official Capacities*

and

/s/ *Jeffrey S. Goddess*
Jeffrey S. Goddess, Esq.(#630)
Rosenthal, Monhait & Goddess, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899
*Attorney for Christopher A. Coons and Guy H. Sapp in their Individual Capacities*